# PEACE CORPS
## INDIVIDUAL FORMAL DISCRIMINATION COMPLAINT FORM
### AMENDED (4/23/2004)

Based on

Race, Color, Religion, Sex, Sexual Orientation, National Origin, Age, Physical/Mental Disability, or Retaliation

**PLEASE NOTE:** IF YOU HAVE NOT CONSULTED AN EO COUNSELOR, CONTACT PEACE CORPS' AMERICAN DIVERSITY OFFICE FOR ASSIGNMENT OF AN EO COUNSELOR. INFORMAL PRECOMPLAINT EO COUNSELING IS A REQUIREMENT AND NO FORMAL COMPLAINT CAN BE ACCEPTED UNTIL INFORMAL COUNSELING IS COMPLETED.

PLEASE TYPE OR PRINT

Complainant's Name
**Rachel L. Perry**

Complainant's Representative
**Leizer Goldsmith**

Home Address Street, Rd, P. O. Box
**65 Harry S. Truman Drive, Apt. 12**

Business Address
**The Goldsmith Law Firm, LLC, 1900 L, Street N.W., Suite 614**

| City | State | Zip Code |
|---|---|---|
| **Largo, MD 20774** | | |

| City | State | Zip Code |
|---|---|---|
| **Washington, DC 20036** | | |

Home Phone: (301) 499-0894
Business Phone: (202) 692-2138

Business Phone ( 202) 775-0040

4 What organization, office, or unit of the agency do you believe discriminated or retaliated against you.
**U.S. Peace Corps, EEO Specialist, FP-4.**

Organization, Title, Grade, Series
**260**

**Office of the Director, U.S. Peace Corps & Human Resource Management**

Social Security Number
**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**

5 What is the date you received the final counseling interview?
**April 7, 2004**

6 What is the last or most recent date of the alleged discrimination/retaliatory event or incident covered in counseling?
**March 15, 2004**

7 Check the basis or bases on which you think you were discriminated or retaliated against. *YOU MUST SPECIFY

| | |
|---|---|
| Age | National Origin |
| Race | Religion |
| Color | Sex |
| XX Disability (Mental) | Sexual Harassment |
| Sexual Orientation | XX Retaliation/Reprisal |

FOR AGE, YOU MUST HAVE BEEN AT LEAST 40 YEARS OLD (STAFF) OR 18 YEARS OLD (VOLUNTEER) WHEN THE ISSUE OCCURRED. *PLEASE SPECIFY YOUR COLOR, PHYSICAL/MENTAL DISABILITY, NATIONAL ORIGIN, SEX, RACE OR RELIGION IF YOU CHECK THESES BASES.

8   Please choose all that apply to this complaint.

| | | |
|---|---|---|
| XX Duty Assignment | XX Awards | XX Duty Hours |
| XX Pay | | |
| | XX Promotion | |
| XX Reasonable Accommodation | XX Reprimand | |
| | XX Working Conditions | |
| XX Time/Leave/Attendance | XX Training | XX Other: See Attach. |

9 State your complaint. Identify the specific acts, incidents or events, involved persons and the dates on which the alleged discriminatory events occurred. State the remedial or corrective action that will resolve the complaint. (Use extra sheets, if necessary.)

**PLEASE SEE 11-PAGE ATTACHMENT CITING 106 INSTANCES OF DISCRIMINATION.**

| Complainant's Signature | Date |
|---|---|
| [signature] | 4/23/2004 |

I am alleging discrimination based on my disability and reprisal and retaliation for my opposition to unlawful employment practices in violation of the Civil Rights Act of 1964 and my involvement in the EEO process as an aggrieved employee when on:

1. May, 8 2003: ADP/OGC (Shirley Everest & Francis Sheed) after reviewing the Stanley Lemons case, I questioned and strongly opposed to the delay in time in for processing his complaint and the blatant discrimination against him by management. I pointed out possible systematic discrimination in the Chicago Office and the fact that the member of management accused of discrimination settled a case on the same bases by another African American less than twelve months earlier. General Counsel informed me "she makes a good witness", I never saw the settlement agreement I turned over to Shirley after that and it was not made part of the ROI or turned over to his Counsel.

2. September 4, 2003: ADP (Shirley Everest) I questioned and opposed to the content of an e-mail transmitted by Tyler Posey and forwarded to me by Shirley Everest with the subject: OIG Report on VDS in regard to rejecting Volunteers and Volunteer applicants without efforts to make accommodations for handicapped and disabled applicants. I strongly opposed to the e-mail and cited the Rehabilitation Act and the fact that it applies to Volunteers and what Tyler was doing may be illegal. I was told I was "overreacting" and too emotional.

3. On a continuous basis, I have cited the fact that we are non-compliant with our pre-complaint processing, (Lane, Lemons, Cowell, Moran, Capehart, Dolan). The integrity and intention of

the EEO process is violated every time an aggrieved employee attempts to seek a counselor and its deterred by the EEO Manager, Shirley Everest. This is a direct violation of MD-110 and CFR 1614. I was advised by several EEO Counselors that at Ms. Everest's initial meeting with them, she informed them, under her watch, there would be NO EEO complaints.

4.    October 7, 2003: ADP/OGC (Shirley Everest & Tyler Posey) I strongly opposed to Office of General Counsel interfering with the EEO process when Tyler Posey sent a Memorandum for the Director of Pending Litigation against Peace Corps involving EEO cases and erroneously reported their status in the process.

5.    November 13, 2003: HRM I cited Gil Smith and Janet Brown of HRM for non-compliance of 44 items our Agency is required to have in it's HRM program that pertain to Federal Equal Opportunity Reporting Requirements.

6.    From 11-2003 thru 4-2004; ADP (Shirley Everest) I have questioned the Peace Corps Congressional Budget Justification and why our Office is not allocated any funds by program operation.

7.    In December of 2003, I questioned Cathy Pearson's statement in regard to not hiring Eugene Lane for employment although she stated he was the most qualified candidate for positions to which he applied. When I asked why she just doesn't hire him? I was told he would not be hired here. I was later also told be her, that in a staff meeting, Janet Brown instructed all staff, Eugene Lane was not to be hired because of his EEO complaint.

8. I opposed and did not attend meetings OGC and HRM scheduled with Shirley to discuss non-discriminatory reasons to not hire Eugene Lane after Cathy Pearson stated, "we're running of reasons to not hire him".

9. January 13, 2004: ADP (Shirley Everest) rescinded previously granted accommodation and reprised for raising opposition to unlawful employment practices and violation of the Civil Rights of 1964.

10. January 13, 2004: ADP (Shirley Everest) denied my request to attend February's EEO Counselor Training needed to manage the EEO Counselors. I was advised we could not afford to send me but she sent Girlyn Arganza and Diego Rivera our Temporary Program Assistant in February to the cost of $2400 not including the cost to the Agency for time missed from work for the weeklong training.

11. January 13, 2004: Harassment in regard to working conditions and assignments (1st Instance).

12. January 13, 2004; January 13, 2004: Harassment in regard to working conditions and assignments (2nd Instance).

13. January 13, 2004: Failed to refer me for EAP assistance according to Policy.

14. January 13, 2004: ADP (Shirley Everest) asked me to forego activities, events, meetings, and overall participation with the

Special Emphasis Programs Planning Committees. I later determined I. was not even allowed to participate during my lunch hour (see excerpt regarding Women's History Month)

15. January 27, 2004: HRM (Janet Brown) violated the Rehabilitation Act by disclosing to her staff in a forwarded e-mail that I am an individual with a serious health condition who requires daily medication and monthly visits to my specialist.

16. January 27, 2004: ADP (Shirley Everest) I reported prohibited personnel practices and violation of the Rehabilitation Act.

17. January 28, 2004: ADP (Shirley Everest) I reported prohibited personnel practices and violation of the Rehabilitation Act.

18. January 28, 2004: OGC (Francis Sheed) I reported prohibited personnel practices and violation of the Rehabilitation Act.

19. January 28, 2004: HRM refused to provide information regarding my healthcare coverage.

20. January 28, 2004: ADP (Shirley Everest) solicited information from HRM regarding my medical and healthcare without notifying me.

21. February 2, 2004: HRM doctored an SF-52 dated by management in January 2004.

22. February 2, 2004: HRM I advised them, they breached my confidentiality.

23.  February 2, 2004: OGC (Francis Sheed) refused to answer
     questions pertaining to my confidentiality rights under the
     Health Insurance Privacy Protection Act.

24.  February 3, 2004: ADP (Shirley Everest) scheduled a Mid-Cycle
     Performance Review for me to attend when I wasn't due to
     receive one until March 15, 2004.

25.  February 6, 2004: ADP (Shirley Everest) failed to accept my
     request to enter EEO process.

26.  February 6, 2004: ADP (Shirley Everest) failed to accept my
     request to enter EEO process.

27.  February 6, 2004: ADP (Shirley Everest) advised me we would be
     meeting based on my request to discuss my personnel issues and
     medical condition but instead issued me a Letter of Counseling
     and admonishment.

28.  February 6, 2004: ADP (Shirley Everest) denied me the right to
     representation for my EEO issues and my Letter of Counseling
     (which subsequently led to a proposed five-day suspension).

29.  February 9, 2004: ADP (Shirley Everest) Shirley departed the
     office for out-of-country assignment and delegated authority to
     our Temporary Program Assistant, Diego Rivera although in the
     past I have had delegated authority to act on her behalf in her
     absence and he has no EEO experience.

30. **February 9, 2004: Request to meet with Director Vasquez regarding violations of the Civil Rights Act of 1964, the Rehabilitation Act, and prohibited employment practices. DENIED.**

31. **February 12, 2004: (Marie Wheat) Failed to process request to enter EEO process.**

32. **February 12, 2004: (Marie Wheat) Official Action on Request for Leave not approved.**

33. **February 13, 2004: Denied request to exercise chain-of-command and meet with Lloyd Pierson in regard to violation of the Civil Rights Act of 1964 and my opposition to unlawful employment practices.**

34. **February 19, 2004: (Marie Wheat) Failed to process request to enter EEO process.**

35. **February 20, 2004: (Marie Wheat) Official Action on Request for Leave not approved for 2/23-2/24.**

36. **February 20, 2004: (Marie Wheat) Official Action on Request for Leave not approved for 2/25.**

37. **February 20, 2004: (Marie Wheat) Official Action on Request for Leave not approved for 2/11.**

38. **February 20, 2004: (Marie Wheat) Official Action on Request for Leave not approved for 2/13.**

39.  **February 20:** ADP (Shirley Everest) I raised my EEO complaint.

40.  **February 20, 2004:** HRM (Gilbert Smith) denied me my original signed SF-52 and SF-50.

41.  **February 20, 2004:** HRM (Cathy Pearson) denied "Official Grievance"

42.  **February 24, 2004:** ADP (Shirley Everest) denied right to enter EEO process and stated she was not aware of an EEO complaint filed by me. (Because she refused to acknowledge or process any).

43.  **February 26, 2004:** ADP (Shirley Everest) Shirley attempted to "set-me-up" for discipline in the same manner she used with my health insurance by attempting to question me about the theft of my Purchase Card on February 15, 2004. She advised me she was not aware of what had happened and acted extremely concerned by my loss. I later discovered, three days before (February 23, 2004 at 5:48 p.m.), Shirley Everest made the Program Assistant, Diego Rivera return from EEO Counselor's Training to do a Memorandum for Record in regard to my attendance and loss of my purse.

44.  **February 26, 2004:** Harassment regarding entering EEO process.

45.  **February 26, 2004:** Request to exercise my chain-of-command and meet with the Agency Head (Gaddi Vasquez) regarding

46. February 27, 2004: ADP (Shirley Everest) requested to be relinquished of the Purchase Card responsibilities; they were taking up too much of my time and effecting my work assignments.

47. February 27, 2004: ADP (Shirley Everest) Harassment + other regarding my involvement in the EEO process.

48. March 1, 2004: OGC (Tyler Posey) Request denied once again to meet with Director in regard to violations of the Civil Rights Act of 1964 and opposition to unlawful employment practices.

49. March 3, 2004: ADP (Shirley Everest) Harassment in regard to working conditions, excessive assignments, and sudden change in assignments.

50. March 3, 2004: ADP (Shirley Everest) denied my request for "free" Computer Electronic/Technical Assistance Training needed to implement and write policy in regard to our Agency's Reasonable Accommodation Program that was due to EEOC in 2002. (We are currently in violation for not having this in place and I have raised this issue of non-compliance several times.)

51. March 4, 2004: ADP (Shirley Everest) (Instance 1) Harassment in regard to working conditions, excessive assignments, and sudden change in assignments.

violation of the Civil Rights Act of 1964 and my opposition to unlawful employment practices was denied.

52. March 4, 2004: ADP (Shirley Everest) (Instance 2) Harassment in regard to working conditions, excessive assignments, and sudden change in assignments.

53. March 4, 2004: ADP (Shirley Everest) (Instance 3) Harassment in regard to working conditions, excessive assignments, and sudden change in assignments.

54. March 4, 2004: ADP (Shirley Everest) (Instance 4) Harassment in regard to working conditions, excessive assignments, and sudden change in assignments. Her e-mail requesting to meet with me was sent after my hours of work for first thing the next morning, rescheduled from 3:30 pm the next day.

55. March 4, 2004: HRM (Sylvia Lavelle) failed to conduct promised position assessment.

56. March 4, 2004: ADP (Shirley Everest) Denied EEO Counselor contact for initial interview meeting.

57. March 4, 2004: ADP (Shirley Everest) I strongly opposed via e-mail to a mandatory training Shirley gave to the staff of Management Services where she advised them of the EEO process incorrectly and advised them of an EEO process that violated MD-110 and CFR 1614.

58. March 4, 2004: OGC (ALL Staff) I was notified that members of OGC, specifically, Tyler Posey and Francis Sheed were interfering in the EEO process through intimidation, coercion and restraint of

Crystal Scott, EEO Counselor assigned to process my counseling in regard to their attempts to process my complaint.

59.    March 5, 2004: Jennifer Owens advised the Counselors they were to meet with her every week to discuss my case until the pre-complaint process had ended.

60.    March 5, 2004: ADP (Shirley Everest) I requested again to have the Purchase Card responsibilities transferred to our Program Assistant and was denied citing my job description and being advised Management of the Procurement of Our office falls under "all other duties as assigned".

61.    March 5, 2004: ADP/OGC/Director's Office (Francis Sheed, Shirley Everest, Tyler Posey, Jennifer Owens) The Collateral Duty EEO Counselors that were supposed to be conducting my counseling recused themselves from my case explaining to me that because of the interference, coercion, and intimidation they received while attempting to conduct the counseling, they believed the Agency would be forced to comply with regulation if a Counselor from another Agency conducted the pre-complaint process.

62.    Both Counselors subsequently resigned as Collateral Duty EEO Counselors after serving a combined total of 14 years as counselors. I further understood that both counselors during a previous EEO process were instructed by Shirley Everest to change their Counselor's Report, which they refused to do. I further discovered that another Counselor who recently resigned had also been asked by Shirley to change her Counselor's Report.

This is another example of jeopardizing the integrity of the EEO process.

63.    March 5, 2004: Reported hostile work environment to Director Vasquez, e-mail received but no assistance rendered.

64.    March 5, 2004: ADP (Shirley Everest) modified my work hours and took my credit hours from my timesheet.

65.    March 8, 2004: Director's Office (Fabiola Francisco) failed to approve purchases made on my Agency Visa Card.

66.    March 8, 2004: ADP (Shirley Everest) Acknowledged and inferred in official correspondence that violation of the Rehabilitation Act is normal course of business for the Agency.

67.    March 8, 2004: In the above meeting Shirley stated three times in front of Pheneshia Barnes that she had no knowledge of any SF-52 for me and none had been processed. On March 23, 2004, I received a copy of what appeared to be a doctored SF-52 with Shirley Everest's signature on it and dated by her January 26, 2004.

68.    March 10, 2004: ADP (Shirley Everest) Attempted to solicit information from HRM in regard to my healthcare after I advised her I did not want her involved in my healthcare coverage or medical benefits because the last time I requested her assistance and identified as person with a "serious health condition", I was disciplined.

69.    March 10, 2004 HRM (Janet Brown) failed to respond to request
       for assistance.

70.    March 10, 2004: HRM did not respond to requests to assist in
       regard to repaying my premiums.

71.    March 10, 2004: ADP (Shirley Everest) engaged in contact with
       my contacted EEO counselor in regard to processing the bid
       contract and referred and referred to me as "over-emotional".

72.    March 11, 2004: Jennifer Owens engaged in inappropriate
       contact with the EEO Counselor in regard to my case.

73.    March 15, 2004 ADP (Shirley Everest) threatened to give a bad
       reference to any prospective employers that contact her
       regarding my work performance stating "I will tell them
       whatever they ask", And further stated to me I have not been
       moved to the higher grade, "because you filed a complaint"
       during a monitored telephone conversation where I contacted
       her to advise I would not be in for the day,

74.    March 15, 2004: HRM (Gilbert Smith) Failed to process request or
       referral for personnel assistance in regard to healthcare benefits.

75.    March 16, 2004: (Jennifer Owens) I requested a non-
       discriminatory reason as to Shirley had not been promoted to GS-
       12 equivalent since I had served over 12-months in my GS-11
       equivalent grade.

76.  March 16, 2004: (Jennifer Owens) I may reinstate my EEO
complaint against Shirley Everest and request a Counselor be
assigned to my pre-complaint process.

77.  March 17, 2004: HRM (Gilbert Smith) blatantly lied to me when
he sent me an e-mail stating that Peace Corps "we do not have a
specific service official at OPM".

78.  March 18, 2004: Jennifer Owens stated to me that the contact
between the EEO Counselor and Shirley was that of a witness or
named employee. Shirley hadn't been named as either as my
March 16th and 17th e-mails reveal and in my initial Interview,
Marie Wheat was named as the Agency Witness. Shirley at the
time of her conversation was not in any capacity in the EEO
process and Jennifer, Shirley, and the Counselor were well aware
of that.

79.  March 18, 2004: E-mailed Director Vasquez and Jennifer Owens
regarding Shirley's interference. Subsequently received proposed
discipline for reporting violations.

80.  March 18, 2004: ADP (Shirley Everest) advised me after Women's
History Month event rehearsal that I had to use my lunch break
to attend that I was not allowed to participate in the event. She
stated that it was because of the perception others may have
because of my involvement in the EEO Office but I conveyed to
her that had already been considered by the Committee and
Chair prior to asking my participation and they decided it would
not be a problem. She still asked me to recuse myself without
giving any further justification.

81. March 18, 2004: ADP (Shirley Everest) Breach of my confidentiality in the EEO process, slander, defamation of character, violation of the Civil Rights Act of 1964, Management Directive 110, and Code of Federal Regulations 1614, Standards of Conduct. Engaged in an inappropriate conversation with EEO Counselor assigned to my case through a Government contact. Faxed documents in regard to me to Counselor. Disclosed personal information in regard to my familial status and circumstances and medical condition. Engaged in conversation to facilitate my removal. Advised counselor that any documents I pertained relating to the Civil Rights violation of the Agency as well as prohibited personnel practices (will never leave this building".

82. March 18, 2004: Put Director Vasquez who on notice that the Agency EEO Manager was violating the Civil Rights Act of 1964, Management Directive 110, and Code of Federal Regulations 1614.

83. March 18, 2004: Put Jennifer Owens on notice that the Agency EEO Manager was violating the Civil Rights Act of 1964, Management Directive 110, and Code of Federal Regulations 1614.

84. March 18, 2004: Put Tyler Posey on notice that the Agency EEO Manager was violating the Civil Rights Act of 1964, Management Directive 110, and Code of Federal Regulations 1614.

85.   March 18, 2004: HRM (Gilbert Smith) Denied request for original
      SF-52.

86.   March 19, 2004: Director's Office: I sent an e-mail to the
      contracted counselor requesting a "Right to File Formal" (I never
      terminated her as Shirley asserted in my April 2004 proposal for
      discipline.)

87.   March 19, 2004: OGC (Tyler Posey) sent me a cease and desist e-
      mail in regard to informing the Director of matter related to
      prohibited employment practices to which I opposed and
      violations of the Civil Rights Act of 1964. In a November 4, 2003
      letter sent to me from Shirley that originated from Director
      Vasquez, the Director states: "...I take equal employment
      opportunity issues very seriously..." per the Director, I was
      informed by Tyler, my EEO claims "are a distraction and
      disruptive to the management of the agency by senior managers
      such as the Director", Tyler continued to advise me that if I failed
      to abide by his direction, disciplinary action against me may
      result, Mr. Posey further stated to me that I telephoned the
      Director on February 27, 2004 which I did not, and stated that
      contacting the Director (in regard to EEO) is undue.

88.   March 21, 2004; ADP (Shirley Everest) I requested during the
      Mid-Performance Review that I attend the April 2004, EEO
      Counselor's Training, I was informed because of the budget, she
      could not afford to send me. She sent Ann McDonald the week of
      April 5, 2004, Anna has nothing to do with the EEO process or
      program.

89.    March 22, 2004: HRM (Gilbert Smith) Blatantly lied in regard to correspondence he stated was under my door. I still have his voicemail message and a witness.

90.    March 23, 2004: Failed to promote as promised or provide a timely performance evaluation.

91.    March 25, 2004: ADP (Shirley Everest) Exhibited hostility and anger in regard to a Maxi-Flex work schedule that I was already on and denied me the schedule although I was currently on it. I construed this as attempted reprisal and harassment.

92.    March 25, 2004: HRM (Gilbert Smith)Harassment via e-mail. I received an e-mail that was unwarranted and distracted me from my duties, I responded to him using the same language verbatim that Tyler Posey used when advising me about e-mails to Senior Staff that were distracting. I received a proposal for discipline when I responded to Gil the same Tyler responded to me. At the time I responded to Gil, he was not a Senior Level Manager but my equal as Deputy in his position. The only difference which would have been between us is is race and sex.

93.    March 30, 2004: (Jennifer Owens) Reported prohibited employment practices regarding my health condition and requested assistance.

94.    April 1, 2004: Director Vasquez deleted my request for EEO assistance sent on 2/27/2004.

95. April 9, 2004: ADP (Shirley Everest) Denied request for Training in regard to my position. (She stated we had no funding to send me although, she spent a total of $3200. sending Anna McDonald, Diego Rivera, and Girlyn Arganza to EEO Counselor's training when we do not have enough counseling requests to utilize the people we already have that are counselors. Additionally, through the USDA-Graduate School, they could have taken EEO Counselor Training for $150 and enrolled at anytime.)

96. April 12, 2004: I requested a reasonable accommodation under the Rehabilitation Act.

97. April 15, 2004: OGC (Suzanne Glasgow) I questioned and raised concern to the new Tele-Work Policy that no one can use, not even people requesting a reasonable accommodation.

98. April 15, 2004: ADP (Shirley Everest) Harassment by asking for assignments that had been submitted to her last year.

99. April 16, 2004: ADP (Shirley Everest) I was directed to certify to hours I had not yet worked for April 16, 2004.

100. April 16, 2004: ADP (Shirley Everest) advised me I would not receive credit hours for time over my work hours I worked and ordered me to only record my work hours and not hours I actually worked. To the best of my knowledge I am the only one in the Director's Office required to do this. Shirley has also advised me, that I am no longer allowed to accrue credit hours.

101. April 16, 2004: OGC (Suzanne Glasgow) I requested information in regard to the Tele-Work Policy for my reasonable accommodation she read my e-mail but failed to respond.

102. April 16, 2004: Jennifer Owens, I requested once more to be removed from Shirley's supervision because of the harassment and hostile work environment, my request was denied and no other relief was offered as resolution.

103. April 20, 2004: ADP (Shirley Everest) my first year of service with the Peace Corps ended and I was not promoted to the career ladder equivalent of GS-12 and not provided explanation as to why except for Shirley's March 15, 2004 statement that it is because "you filed a complaint".

104. April 21, 2004: Director's Office (Jennifer Owens) denied me access to EEO counseling although her justification for denial is based on CFR 1614.107 that is not even applicable until one enters the formal complaint process.

105. April 22, 2004, Harassment, after the Agency received my EEO Complaint on April 21, 2004, via e-mail, Shirley Everest delivered a letter under my office door, stating she was responding to my request for reasonable accommodation although she had already denied it on April 15, 2004. Although Management denied me the right to enter the counseling process for Shirley's denial of my request to accommodate, Shirley is now stating, she was not aware I had a condition. Because my accommodation was denied and my request to enter the EEO process denied, I construe this as additional harassment.

**106. April 23, 2004, Shirley Everest, I discovered today that Ms. Everest on or about March 29, 2004, intentionally moved, deleted, and/or modified files, folders, and correspondence located within ADP's Shared Database Folder used by me to perform my duties.**

## HISTORICAL BACKGROUND

- My initial contact with the American Diversity Program Manager; Shirley A. Everest was on or about December 4, 2003 after a meeting with Human Resource Management where I began experiencing a panic attack and abruptly ran out of the room slamming the door. I met Shirley back in her office and explained what had happened and she appeared non-concerned and didn't ask me if I needed any type of accommodation for it.

On January 13, 2004 after my Mid-Performance Appraisal. I received "Meets or Exceeds" in all element areas of my performance and Ms. Everest expressed an interest in granting me participation in previously requested EEO Counselor Training, necessary to train and manage the collateral duty EEO Counselors, Alternative Dispute Resolution Training (ADR), necessary to implement and train Managers and Supervisors on the new ADR program and policy I completed in October-2003, Computer/Electronic Technical Assistance Program (CAP) training, necessary to develop, implement, and train managers and supervisors on ADA reasonable accommodations in Compliance with 13164, and Public Speaking, because of anxiety attacks,(I tried to attend a public speaking/presentation course annually). My training requests were presented in the above order and Shirley advised that when I located a business that offered the above course, to notify her and my request would be approved. I was further advised, she was

extremely happy with my management of the ADP Office in her absence and bereavement and conveyed to me, many individuals to include Marie Wheat, Deputy Chief of Staff, complimented me on my performance during her (Shirley's) absence. At this point, Shirley asked if I had any concerns or questions? Because Shirley e-mailed me in advance and suggested I prepare material I would like to discuss at our meeting, I documented the items of concern I planned to speak with her about.

I brought up the fact that I was greatly concerned with my Health Insurance and that it had not yet been processed although I was informed on or about October 24, 2003 everything was corrected, I notified her of my concerns with her promise of a pay increase after my initial trial period and because she failed to place me under job elements and Human Resources failed to provide me with a position description after numerous requests and I now had to go to an additional six months before receiving a final appraisal. I further informed her that because the Agency had so many issues such as not having an Affirmative Employment Program; ADR Program; Reasonable Accommodation Program, Policy or Procedure; Personnel Data Collection System; outdated EEO and Sexual Harassment Policy; etc (Item 9) I felt the work I was doing to resolve our non-compliance warranted a higher grade than what she brought me in at. I reminded her that on April 11, 2003, she left a voicemail message on my digital answering machine promising me that if I came to work with her, she would move me to GS-12 equivalent in October 2003; and that would be a $10,000 pay increase for me. After raising my concerns with Ms. Everest, she became extremely angry and hostile and informed me that I had used allot of sick leave recently as well as unauthorized absences, I asked for specific instances of using unauthorized leave and she was unable to provide any instance. I apologized to her if my leave posed a problem but stated she had never seemed concerned by it before and approved all leave. I did not know where she was going with her statement because she was not concerned about my time away from the office

before and accommodated me (Item 8). I explained to her my recent use of sick leave was a result of stress aggravating my health condition, low morale, depression, and no energy. I further communicated, to her, I was not looking to get rich off the Peace Corps, or for a handout, I just wanted my worth and what I was promised before I agreed to come to work for her. I explained to Ms. Everest as diplomatically as I could that it was nothing personal, I simply could not afford to raise three children in the Washington, DC-metro area on a base salary of $47K a year. I expressed to her that if I stayed at NASA-HQ, in my permanent position, I would be near eligibility for my grade increase and the only reason I came to Peace Corps was because I believed her. I went on to advise Ms. Everest further of the financial hardship I was faced with as a result of believing her, I explained that my home had been broken into January 1, 2004 and burglarized, someone had recently been murdered in my apartment complex and there were several armed robberies, my children were having difficulty in school, my son slipped and fell on ice in front of our building and lost his front tooth. I wrapped up my summary of my circumstances by telling Ms. Everest that my move to my current residence was temporary at the time and because of her false promises, I was faced with having to sign another year's lease with a rent increase of $300 (more than ½ month's rent) and faced with eviction because I would be unable to afford the new rent amount. I attempted to explain that I've made due for the past several months with the assistance of family and friends but the reality was, at the end of the month, because of my current salary, I was in the negative with bills'. After conveying my issues to Ms. Everest, asking for her assistance (Item 12), her stern statement to me was "maybe you should look for another job".' I was so shocked and dismayed by her cruel and heartless attitude and statement that I sobbingly agreed with her to perhaps begin seeking employment elsewhere. She asked me when I would be leaving (Peace Corps) and I told her I was unsure, I asked when my final evaluation would be and she stated to me March 15, 2004, I told her I would possibly know something then and she dismissed me from her office.

After leaving Ms. Everest's office, she sent two of three e-mails to me advising she wanted to begin weekly meetings (every Tuesday) with me to go over my assignments and weekly staff meetings (her, our Temporary Assistant, and me), to go over my assignments. The third e-mail was sent to Sylvia Lavelle, Personnel Specialist requesting a meeting to discuss my pay grade issues. I believed Shirley was going to attempt to resolve my grade because she sent me another e-mail January 14, 2004 advising me to be prepared for the January 16, 2004 meeting in regard to my grade concerns. (Item 10 and 11)

On or about January 15, 2004 Ms. Everest sent me an e-mail instructing me to "forego" my participation in all activities, events, and meeting dealing with the Special Emphasis Programs, she knew this was a passion of mine and I was extremely active in and out of work in participation of events that promoted education and awareness of other cultures and races. The past summer I volunteered as a facilitator for Peace Camp and since my employment have attempted to enter Agency participation with the Inter-governmental Committee for the Holocaust Remembrance Observance. In May of 2003 Ms. Everest assured me we could participate in 2004 but in March I was told we could not. (Item 13)

Prior to meeting with Ms. Lavelle I did the research Shirley suggested and discovered after requesting the certified hiring roster, that I in fact qualified and was certified as a, FP-3, not an FP-4 and should have been hired in as a GS-13 equivalent. We met with Sylvia Lavelle on or about January 16, and she denied everything that she had stated to Shirley.. as well as me in conversations surrounding my hire and her justification for bring me in at the grade she did. Ms. Lavelle stated it was Shirley who requested to hire me at the lower grade and not her. Shirley denied Sylvia's allegations and promised me that day, she would resolve the matter and correct my grade as appropriate to reflect the FP-3 level. I once again believed Shirley when she stated to me she was e-mailing Marie Wheat that evening before she left for vacation and advising her of the change and generating the SF-52 Proposal for Personnel Action (Item 20).

Shirley also sent me an e-mail delegating me to act in her absence as well as an update to her voicemail delegating me as the Program contact person in her absence. I was confident the matter had been resolved and I would receive my retroactive grade and pay to my start date.  Shirley e-mailed Marie Wheat and began the process to correct my grade before she left for vacation, Sylvia Lavelle confirmed this on a voicemail message left on my phone. Phenesha Barnes also stated to me it was confirmed by Fabiola Francisco to be in the Director's Office.

On or about January 22, 2004, I attempted to schedule an appointment with my specialist because I was out of my panic disorder medication. (as a result of the meeting with Shirley on or about January 13, 2004, the frequency of my episodes increased up through our meeting on January 16, 2004 and I was having to take more medication). I was advised I could not schedule an appointment to meet with her because claims that had been previously filed were not paid and returned by the insurance carrier for non-coverage. I e-mailed HRM Staff on or about January 22, 2004 and requested immediate assistance on the update of my insurance coverage, although everyone I e-mailed received, opened, and read my mail, no one responded.

When Shirley returned to the office, I advised her of my insurance problems and she advised me to e-mail Janet. I sent Janet a "High Importance/ Confidential" e-mail and copied Shirley. In the e-mail, I identified as an individual with a "serious health condition" that caused me to have to take medication daily and see a specialist once a month. I believed by conveying the reason for my urgency in resolving the matter, Janet would personally inquire into why it had taken three months and my insurance had still not been processed. Director Brown, responded by informing me, although I sent my e-mail Confidential, she took the liberty of forwarding my e-mail to the rest of her staff to include Sylvia Lavelle who was not on any of the other e-mails asking them to assist me. (Item 14)

I contacted Shirley immediately and asked her to request Janet rescind that e-mail, I did not want all of HRM to know I had serious health condition and had to take medication daily. Shirley left and returned shortly from HRM where she stated to me that Janet had apologized for forwarding the e-mail but since everyone had read it, it couldn't be rescinded. (Item 15)

As a result of my self-identification and the current administration's view of the disabled, I knew I would have a tough road ahead.

Shirley insisted she meet with me throughout the week of January 27, 2004 to discuss my healthcare issues, I believed her sudden interest in my healthcare initially from concern in resolving the matter because I advised her of the need for medical service but later interpreted her actions as suspicious as I tried to solicit information about my medical claims and coverage that I was not knowledgeable about, requesting specific dates of service and denial. I maintained to her I did not have my bills in front of me and she was asking me to recollect almost a year's worth of claims for myself and three children but she insisted on having the answer then and there and for questions I did not know, she accused me of providing misleading information or withholding information. What concerned me most was that she was having meetings with General Counsel and HRM staff about my healthcare and I was not asked to attend these meetings. The meeting that I did attend with her and Francis Sheed on or about January 28, 2004, I reported violations of my rights under the Rehabilitation Act and other prohibited personnel practices in regard to HRM personnel matters. (Items 16 and 17). Although the healthcare issues began in October of 2003, with my two-year old with a temperature of 103 degrees was denied emergency care referral because the insurance company stated I did not have coverage, Shirley showed no interest or concern until now. Further, although HRM seemed to not have a problem advising Shirley of my healthcare or medical coverage (Item 19), when I requested information, I was denied. (Item 18)

On or about February 2, 2004, I sent HRM e-mail in regard to breaching my confidentiality (Item 21) and Francis Sheed an e-mail asking for information on my Health Insurance Privacy Protection Act (HIPPA) rights because I wanted to file a complaint against HRM (Item 22). Frank replied to my e-mail asking, "why do you need to know?" After advising Frank I did not need his assistance anymore, he continued his inquest by sending me another e-mail asking, "why do you need to know?"

On or about February 3, 2004, Shirley sent me an e-mail requesting to meet with me for another performance appraisal; I sent a tentative declination requesting why she wanted to appraise me when I wasn't due an appraisal until March 15, 2004. (Item 23)

On February 5, 2004, I sent e-mail to Shirley explaining that I believed because of raising my concerns with her on January 13, 2004 and based on her reaction to my concerns, my employment was now in jeopardy. (Item 24) I requested to meet with her to discuss her reaction and to try to "clear the air". She read the e-mail the same day it was sent but did not respond until the next day, advising we would meet shortly because she was in the process of attempting to resolve some of my issues.

After communicating back and forth with Shirley verbally and via e-mail, she finally agreed to meet with me on February 6, 2004 when I asked Shirley that morning if we would be meeting today to discuss my concerns, she advised me we would be meeting at 2:00 p.m. At 1:45 p.m. I received a pop-up reminder notice on my calendar stating that a meeting was taking place at 2:00 p.m. with Shirley, Phnesha Barnes, and I. I went to Shirley's office and asked her why Phnesha Barnes was going to be at the meeting and she declined to tell me. I further asked if the meeting was disciplinary and she advised me that it was not. I asked if the meeting could lead to discipline and she advised me it could, at that point, I requested Counsel be present at the meeting to represent me. Shirley informed me twice I was not allowed Counsel. (Item 27)

The meeting that I requested two days prior, turned into a meeting where my concerns were not discussed, instead, I was issued a "Letter of Counseling" for my behavior dating back to my second day of employment. (Item 26) I expressed to Ms. Everest that I requested her assistance and accommodation on January 13, 2004 and instead of assisting me, she is now disciplining me? I requested at that point an ADA accommodation and to file an EEO complaint and meet with the Chief of Staff, Lloyd Pierson. (Item 25) I further stated to both Phenisha and Shirley, I could not believe I was being disciplined because I did not have health insurance coverage for nearly a year and when I requested assistance and identified as a person with a "serious health condition" that warranted me having to take medication daily, my "High-Importance/Confidential" e-mail was forwarded to several people in the office. Shirley once again brought up my behavior. The only time my behavior is raised or questioned by Shirley is when I dispute personnel practices I believe to be illegal such as the Lane, Lemons, Doland, Moran, and Cowell case (Item 3), or question Policy or Procedure gives the inference of discrimination (Items 2,6,7). Whenever I've raised issues dealing with what I perceived as prohibited personnel practices, violations of the Civil Rights Act of 1964, interference by General Counsel with the EEO process (Items 1,2,4,5,7) or disparate treatment in regard to employees by race (Item 1,7), I have been referred to by Shirley as an employee that's "overemotional", "behavioral problem", "disruptive".

Phenisha then discussed the Employee Assistance Program (EAP) and told me should provide me information on using it and said I would consider her referral (because of my condition, I began seeing my specialist on a regular basis and did not see the need at that time to seek EAP). Even after Phenisha's suggestion, Shirley mad no mention of proposing or supporting an EAP referral.

The same day of the meeting, February 6, 2004, Shirley sent e-mail to Marie Wheat advising that I requested to meet with, Lloyd Pierson but she determined I meet with Marie and her (Shirley) instead. After Shirley's request, she left the country for two weeks to visit volunteers and delegated the

Temporary Office Assistant who has no EEO experience authority to respond to requests for assistance. (Item 28)

For two weeks, I sent e-mails throughout the Director's Office requesting assistance in regard to my issues and EEO complaint and was denied meeting with the Director and the Chief-of-Staff, Lloyd Pierson (Item 29, 32, 33). I was refused meetings with Marie Wheat in regard to discuss EEO issues (Item 30) and met with her in regard to my non-EEO issues but nothing was resolved, it was apparent management was stalling until Shirley returned. It became more apparent management was stalling all my requests when on February 12 and 20, 2004 all "Official Action on Request" for leave submitted to Marie were signed but not approved (Items 31, 34, 35, 36, 37)

On February 20, 2004, Gil Smith, Acting Director for Management Services refused to provide me with my original signed SF-50 which I never received from the Agency or the SF-52 I was advised was pending in the Director's Office (Item 39). Shirley returned to the Office that evening and read another e-mail request from me to enter the EEO process and did not respond. (Item 38) The same day, Cathy Pearson, Acting Director for Human Resource Management, who reports to Gilbert Smith, denied me the right to enter the Employee Grievance Process because as she acknowledged in her e-mail, I failed to use the word "grievance" (Item 40)

On February 24, 2004, I received a letter from Shirley, advising me she was not aware of any of my eight past documented requests to enter the EEO process (Item 41).

On February 26, 2004, Shirley, well aware of the fact that my Pocket Book which contained my Purchase Card had been stolen on February 15, 2004 and reported to the police department, Citibank, Diego Rivera, Program Assistant and the Procurement Office (Hopeton Brown and Gloria Benning), attempted to plot reprisal by engaging in conversation with me about my pocketbook under the guise of she had no knowledge of the incident and was sincerely concerned with my personal belongings such as my children's Social Security Cards, Birth

Rachel L. Perry                    Formal EEO Complaint                    27

Certificates, money and other personal items that were stolen. Her line of questioning was similar to the tactics she used during the week of January 27, 2004 where she subsequently accused me of giving her mid-leading information or withholding information. As her notes always seem to reflect her interpretation of a conversation to her advantage, I later discovered, three days before her conversation with me, on February 23, 2004 at 5:48 p.m., she ordered our temporary Program Assistant Diego Rivera to return from his out-of-the office EEO Counseling and type a Memorandum for Record in regard to not only in the manner of me reporting my pocketbook and purchase card theft, but also as to my attendance on the day of contact. (Item 42)

On February 26, 2004, because of Ms. Everest's continued harassment (Item 43), I sent an e-mail to Director Vasquez once more requesting his assistance and putting him on notice in regard to the prohibited personnel practices and violations of the Civil Rights Act of 1964 (Item 44). The Director received my e-mail but did not respond.

On February 27, 2004, I request that Ms. Everest relinquish the duties of the Purchase Card to the Program Assistant, Diego Rivera as he was the one responsible for arranging purchases for the office and it made sense that he would be responsible for the card. I additionally felt because of Ms. Everest's previous reprisal attempt, she was attempting further reprisal and I did not feel comfortable with the card. Additionally, management of procurement and expenditures for our office to include two separate financial system databases I was required to maintain in regard to my additional EEO duties, was effecting my assignments because of the time involved. (Item 45) Ms. Everest denied my request advising me that Diego was a temporary employee and could not handle the card. She followed up her response with an additional e-mail in regard to assignments with deadline requirements. (Item 46)

On March 1, 2004, Tyler Posey, Chief of General Counsel advised me via e-mail that I would not be allowed to me with the Director (Item 47) and advised me, to file a complaint I would have to go through an Agency EEO Counselor. I

sought assistance through Crystal Scott, Collateral Duty EEO Counselor and Sharon Jenkins, Sr. Collateral Duty EEO Counselor. I informed Jennifer Owens, who was acting in Marie Wheat's position as Deputy Chief of Staff that I would be meeting with the Counselors on March 4, 2004 at 2:00 p.m. for my initial interview. The same day I sent the e-mail advising Crystal and Sharon were processing my complaint, Francis Sheed and Tyler Posey from the Office of General Counsel, called Mrs. Scott's office and advised her not to take my complaint. Mrs. Scott informed them she would process my complaint, when she advised them she would carry out her duties as a Counselor, Francis Sheed went to her office and advised her she was not to process my complaint, she once again informed him she would carry out her duties as a counselor (Item 60).

On March 3, 2004, I informed Shirley Everest I would be meeting with the Counselors and I may be a little late to the EEO Training she was presenting to the Office of Management-Administrative Services Department. She has not required me to attend EEO training she has presented in the past and I did not see this as a problem, additionally, I did not even know about this training until the beginning of the week. Shirley gave the okay for the counseling and I notified Crystal and Sharon I was cleared for time. Shirley sent me e-mail that same day changing my assignments. (Item 48) The same day my assignments trained I received information in regard to "Free Computer Electronic/Technical Assistance Program (CAP) Training" the Department of Defense would be holding that month and requested to attend per our discussion at my evaluation on January 13, 2004. I also advised we needed a Policy to be in compliance with Presidential Executive Order 13164. I was advised because of the location she could not afford to send me (she never asked the cost for a flight). I replied to Ms. Everest that the round-trip airfare was minimal ($248) and it was worth it. She denied my request for CAP training. Three weeks earlier she sent the Temporary Office Program Assistant to EEO Counselor's Training for $800 with a week a pay at approximately $800 or more and a member of the Policy, Program, and Analysis Staff to EEO Counselor's Training for $800 and a weeks

pay equivalent to over $1000 for the week. She spent approximately $3,400 sending non-EEO personnel to EEO training but denied my January request to attend EEO Counselor's Training in February where my responsibility is to manage and train the EEO Counselors and denied my request to spend approximately $248 on Southwest to attend a training that would allow me to prepare a Policy and Program mandated by the EEOC that we were already in non-compliance for not having. At the time, no other CAP programs in the area to my knowledge were being offered. (Item 49)

On March 4, 2004, I was harassed on four separate instances by Ms. Everest during the course of the day and after work hours (Item 53) all in connection with my pre-complaint counseling. (Items 50,51,52). Shirley advised me I was not to attend my EEO counseling and I must attend the EEO training, it was mandatory! I reminded Shirley she had already approved "official time" for the counseling and she then, gave me a "direct order" to attend the training and reschedule the counseling. (Item 55). After the training I advised Shirley, the training she gave me a "direct order" to attend did not even meet the mandatory EEO annual training requirements and I could not understand her insistence that I attend such a training. I further noted my fear that employees were provided inaccurate information in regard to their access to the EEO process and cited CFR 1614 and MD-110. (Item 56) The same day, Sylvia Lavelle refused my request for position assessment the same day. (Item 54)

On March 4, 2004, because of management's interference, coercion, intimidation, and restraint in my attempts to receive counseling and the counselor's attempts to provide counseling (Item 57), the counselors had to resort to conducting the Initial Interview via phone during my lunch break. After I signed my Rights and Responsibilities, I informed Jennifer Owens, who was acting in the capacity of Agency EEO Manager (she has no EEO experience), and she contacted the counselors and advised them she would be acting in place of

the EEO Manager in processing my complaint and wanted to meet with them to discuss my complaint and case.

On March 5, 2005, the Counselors met with Ms. Owens and discussed my case, at the end of the meeting, Ms. Owens advised the counselors they were to meet with her on a weekly basis until the pre-complaint process was over.(Item 58) As a result of the egregious interference with the pre-complaint EEO process, the Collateral duty EEO Counselors recused themselves as counselors and subsequently resigned as EEO Counselors after serving a combined total of 14 years as Collateral Duty EEO Counselors.(Item 61) They conveyed to me that; by management being forced to contract out for my counseling, my complaint would not be interfered with. (Item 60) On the advice of Attorney-of-the-Week, Lori Grant the counselors instructed management to assign a counselor from another Federal Agency to conduct counseling and in an e-mail sent by Ms. Owens, she advised the Agency would seek an EEO Counselor from another Federal Agency.

On March 5, 2004, I requested once again that Ms. Everest relinquish the duties of the Purchase Card to our office assistant and this time her response was that procurement of the office falls under my "other duties as assigned" on my job description (although it's nowhere on my performance standards.) (Item 59) In addition to declining to relieve me of the card responsibility, Ms. Everest modified my worked hours on my timesheet and took all but .41 of my credit hours. (Item 63)

On March 5, 2004, I e-mailed Director Vasquez again in regard to the escalating hostile situation in the office and the EEO concerns I had and he rendered no assistance and no resolution. (Item 62)

March 8, 2004, Shirley responded to my grievance in regard to my privacy violation and Rehabilitation Act violation by inferring these types of practices are a normal course of business in the Agency and in her opinion, nothing was violated. (Item 65) During the meeting that took place where I was presented with Ms. Everest's response, we discussed my SF-52 and promotion and she

stated three separate times through the discussion when asked directly, she had no knowledge and knew nothing of any SF-52 for me for ANYTHING. This conversation took place in front of Phenesha Barnes, Chief Employee Relations Officer. (Item 66) On March 23, 2004, I later discovered after finally receiving a copy of an SF-52 generated two business days after Shirley would have requested it bore her signature with the date of January 26, 2004, the day she returned to the office from vacation that commenced on January 19, 2004 and ended on January 23, 2004.

March 10, 2004, I sent HRM an e-mail in regard to my healthcare premium repayment and they failed to respond although they read my e-mail (Item 69). I sent the Director of HRM an e-mail requesting assistance with my healthcare matters, as they still were not resolved (Item 68). I did not receive a response but that afternoon, I discovered Shirley had called a meeting in her office between Cathy Pearson, Rubina Jamison, Phenesha Barnes and herself to discuss my healthcare coverage. After meeting with them, she called me in to ask me questions about my healthcare and I declined her assistance and advised I did not feel comfortable dealing with her in regard to my personnel or medical issues because the last time I requested her assistance, I received a Letter of Counseling and admonishment. (Item 67)

The same day, in an e-mail from Ms. Owens, I was informed a business named Lee Kramer and Associates was assigned to my complaint and a counselor would be contacting me in the near future. The same day, a Rene Chandler called and identified herself as my assigned counselor via a voicemail message on my office phone. Before I could return her call, Shirley walked into my office and announced she was on the phone with the counselor preparing the contract for work asked when my 30-day deadline for counseling would be? I informed her it had past on March 6, 2004 but if she was using the day I met with the counselors it would be the end of March. (Item 70) Shirley went back to her office and I immediately e-mailed Ms. Owens questioning Ms. Everest's

involvement ion my complaint and contact with my Counselor, Ms. Owens assured me, neither her or Shirley were having contact with Ms. Chandler. (Item 71)

Ms. Chandler called me numerous times March 10, 2004 and because of my sudden workload increase, I was unable to return her call until the next day, after work. During our March 11, 2004 phone conversation, I advised her that she would be able to secure all my forms from my previous EEO Counselors who were also prepared to brief Ms. Chandler in regard to my case. Ms. Chandler advised me she would not be contacting the counselors. She attempted to solicit as much information as she could about my case although I informed her, I was out of the office, in my car, on my cell phone, and unable to go over my case with her. I scheduled to meet with her on March 15, 2004 at 10:00 a.m. I was hesitant about dealing with Ms. Chandler, she seemed too anxious to get documentation and not focused on attempted resolution. During our initial conversation, she was mostly interested in what I had and whom I was accusing, not resolution. I was also concerned with any inappropriate contact Shirley may have had in regard to my case because it appeared Ms. Chandler was retained before a contract was processed. I gave Ms. Chandler benefit of my doubt and went with my faith in the system and the EEO process.

I ended up meeting with Ms. Chandler later than 10:00 a.m. because of the numerous amounts of documentation I had to sift through at her request to bring with me. I met with Ms. Chandler at 12:30 p.m. in Columbia, MD with a witness. During the first hour of our two-hour meeting, Ms. Chandler and I discussed her background and my background to include my second interview I attended the day she called me and how fearful I was of Shirley finding out where I was leaving Peace Corps to work because of my conversation with her that morning. The second hour of the interview, we discussed my case and I advised Ms. Chandler, Shirley Everest is not a witness in my case because she may be named in my complaint. I advised Ms. Chandler that if Shirley is named in my complaint, I will request anonymity because I was opposing to unlawful

employment practices that violate the Civil Rights Act of 1964 she has conducted and she has already retaliated against me to the point where I was under so much stress, I couldn't function. I informed Ms. Chandler about my earlier conversation with Shirley when I called to advise her I was not going to be in at all for the day because of the rescheduling of the counseling. I asked Shirley about my career ladder pay grade increase and specifically asked who initiated it? She stated she did, when I asked her why she hasn't since my years as a GS-11 equivalent was in February 24, 2003, she advised me, "I'm not because you filed an EEO complaint". After a short silence on the phone because I couldn't believe her response, I advised her that out of professional courtesy, should anyone contact her as my current supervisor for an employment reference, I would appreciate she limit her responses to my performance. She stated to me angrily, "I will tell them anything I want". I advised Ms. Chandler I was extremely fearful of Ms. Everest intentionally giving me a bad reference and because of this (Item 72), I did not reveal to Ms. Everest, the place I conducted my second interview. Because Ms. Chandler spent the first hour discussing my background as well as her own, we did not have time to conduct a full interview and she advised me she had to be somewhere at 3:00 p.m. and had to leave. Because of the time constraints, and her having to leave, I agreed to sign an extension to the counseling if we could meet again to finalize the Initial Interview because I did not believe she accurately captured the bases, acts, incidents, or events that gave rise to my complaint of discrimination because she only seemed to take notes when I talked about documents I possessed relating to the complaint and not the cusp of the complaint. Ms. Chandler agreed to my request and a few days later, we departed with the understanding that the Initial Interview was not yet complete. A few days later, I received a call they decided not to select me and did not give me a reason as to why.

On March 16, 2004, Gilbert Smith who would assist me with my personnel matters, failed to process or refer me for assistance to OPM in regard to questions I had about my healthcare benefits. (Item 73)

The same day (March 16, 2004), I advised Ms. Owens of my conversation with Shirley and asked her for a non-discriminatory reason for not promoting me to my higher grade (if in fact it was not due to my EEO complaint) and she failed to respond although she read my e-mail less than two minutes after it was sent. (Item 74) Because Ms. Owens failed to respond I advised her that a may be reinstating my EEO complaint against Ms. Everest and requested a counselor be assigned. (Item 75)

March 17, 2004, Gilbert Smith deliberately lied to me when he sent an e-mail finally responding to my request for OPM assistance by stating to me that Peace Corps "does not have a specific service official at OPM". I later determined that (1) there is a "specific service official" for Peace Corps located in the Small Agency Section and (2) there is an actual healthcare benefits section that could've responded directly to my questions regarding my non-coverage. (Item 76)

March 18, 2004, I requested from Gilbert Smith the original signed SF-52 (as I believed the copy I received was doctored because the dates and HRM time stamp did not coincide) and to date, one has not been produced for review. (Item 84)

On March 18, 2004, I contacted Ms. Chandler and advised her I wanted my complaints to be filed as separate because I wanted to file against Shirley as anonymous. Ms. Chandler stated to me that I couldn't file another complaint and her contract only covers counseling for one complaint. I contacted the EEOC for verification and spoke with the Attorney-of-the-Week Bridgett, who advised me, up until the Final Interview, all complaints can be consolidated as long as there were against the same Agency. I was further advised that Ms. Chandler could not prevent me from filing as many complaints as I wanted. I called Ms. Chandler back and advised her I spoke with the EEOC and wanted to go ahead and discuss filing a complaint against Shirley and to please call me back as soon as possible to review the allegations since they were not discussed at the Initial

Rachel L. Perry                                                Formal EEO Complaint

Interview. I made three phone calls to Ms. Chandler on March 17th and 18th, 2004.

March 18, 2004, Shirley Everest breached my confidentiality in the EEO process, slandered, and defamed my character, violated the Civil Rights Act of 1964, Management Directive 110, and Code of Federal Regulations 1614, Standards of Conduct, and my entitlement to due process when she, engaged in an inappropriate conversation with EEO Counselor assigned to my case through a Government contact. Faxed documents in regard to me to Counselor. Disclosed personal information in regard to my familial status and circumstances and medical condition. Engaged in conversation to facilitate my removal. Advised counselor that any documents I pertained relating to the Civil Rights violation of the Agency as well as prohibited personnel practices (will never leave this building" and that I was "haranguing" my complaint throughout the building. (Item 80)

I officially put Director Vasquez, Tyler Posey, Phenesha Barnes, and Jennifer Owens who was acting EEO Manager during my complaint process (Item 81 & 82, 83) that this illegal conversation was taking place and called for immediate disciplinary action not only management fail to immediately correct the prohibited violation, I am presently pending discipline for reporting it. The pending discipline acknowledges the law was broken in regard to my own process because someone so angry, they could not as she stated in a previous meeting "take me out and choke me", decided to reprise me by interfering with my right to process under the law. (Item 86)

Jennifer Owens responded to my e-mail by advising; the contact between the EEO Counselor and Shirley was that of a witness or named employee. Shirley hadn't been named as either my March 16th and 17th e-mails reveal and in my Initial Interview, Marie Wheat was named as the Agency Witness. Shirley at the time of her conversation was not in any capacity in the EEO process and Jennifer, Shirley, and the Counselor were well aware of that. (Item 77)

March 18, 2004 I subsequently informed the counselor after my anxiety attack that I no longer needed her services because she breached my confidentiality and the confidentiality of the EEO process and requested the Right to File a Formal Complaint (Item 85).

The same day, Shirley Everest advised me after Women's History Month event rehearsal that I had to use my lunch break to attend that I was not allowed to participate in the event. She stated that it was because of the perception others may have because of my involvement in the EEO Office but I conveyed to her that it had already been considered by the Committee and Chair prior to asking my participation and they decided it would not be a problem. She still asked me to recuse myself without giving any further justification. (Item 79)

March 19, 2004, I followed up my telephone conversation with the Counselor via e-mail requesting a Right to File Formal (Item 85).

The same day, one day after reporting Shirley's breach of the EEO process, Tyler Posey on behalf of the Director, sent me a cease and desist e-mail in regard to informing the Director of matter related to prohibited employment practices to which I opposed and violations of the Civil Rights Act of 1964. In a November 4, 2003 letter sent to me from Shirley that originated from Director Vasquez, the Director states: "... I take equal employment opportunity issues very seriously..." per the Director, I was informed by Tyler, my EEO claims "are a distraction and disruptive to the management of the agency by senior managers such as the Director". Tyler continued to advise me that if I failed to abide by his direction, disciplinary action against me may result. Mr. Posey further stated to me that I telephoned the Director on February 27, 2004, which I did not, and stated that contacting the Director (in regard to EEO) is undue. (Item 86)

March 21, 2004 I reminded Shirley of my interest in attending the April EEO Counselor's Training that she told me in January I could attend after denying me attendance at the February course. I was informed once again because of the budget (that we don't seem to have), she could not afford to send me. On April 5, 2004 I was instructed by Ms. Everest to immediately send

through authorization for Anna McDonald, an employee in another department of the Agency that has nothing to do with EEO Counselor's Training which cost $800 not including her paid time from work which totaled approximately $1300. (Item 87)

On March 22, 2004 I contacted Gilbert Smith by phone to inquire into my SF-52 and he advised because of the move there was a delay but he was in the process of completing my request and I would have my SF-52 in a few days. His voicemail message stated the same. The next day, I received an e-mail totally contradictory to his message and phone conversation that was sent at the end of the day advising when he spoke with me earlier my form was already under my office door and that he didn't approve to me stating I left him a recorded message. I'm not sure how else I was supposed to leave a message for him on his voicemail other then by recordation but I was later proposed discipline as a result of this. (Item 88)

March 23, 2004, Shirley failed to provide me with my performance evaluation or promote me to my next pay-grade. (Item 89) In our conversation regarding my performance and pay grade, Shirley stated to me, she could've promoted me at anytime after my initial six months but offered no reason as to why she failed to do so. She closed the door to her office and her tone toward me became increasingly hostile to a point where she stated she wished she could "take me outside and choke me". Although I did not believe she would carryout her wishes and was speaking from frustration that I would not drop my complaint against her, the fact that she knew she could convey these types of things to me without fear of discipline really gave me a clear picture of the types of power "senior-level" management can exercise to subordinate, minority employees. (Item 89)

March 25, 2004, Shirley was still hostile toward me and demonstrated her hostility in an e-mail in regard to a work schedule I was presently on that she was not knowledgeable of (Item 90)

March 25, 2004, Gilbert Smith, after clearly demonstrating to him that he was dishonest in a previous e-mail regarding his voicemail message and his e-mail the evening of the 22nd, sent me an e-mail not responding to any request I made but purely to harass me. I responded to him in the same context of the e-mail that Tyler Posey sent to me in regard to "undue e-mails". I actually cut and pasted Tyler's statement to Gilbert and I am now faced with a proposed five-day suspension for responding to Gilbert who at the time was my equal in the same manner Tyler responded to me. This leads me to believe the perception of disrespect according to management is based on sex and/or race and not applied equally. (Item 91)

March 30, 2004, I reported to Jennifer Owens the continued escalation of Shirley Everest's hostility, which was aggravating my panic attacks and requested again to be removed from her supervision. My request was denied. (Item 92)

April 1, 2004, my request to Director Vasquez for assistance in regard to my EEO issues with Shirley as well as reporting Violations of the law was deleted without even being read. (Item 93)

April 9, 2004, My request to attend Mediation training in regard to my position and implementation of the ADR Policy and Program that had just been approved by the EEOC was denied. I was told because of funding, she couldn't afford to send me. By this time, the Agency since February had spent approximately $5000 for three employees not involved in the EEO program or process to attend EEO training. (Item 94)

April 12, 2004, Shirley's harassment was to a point where my doctor increased my medication because of my attacks and placed me on an anti-depressant because of lack of energy, loss of enjoyment and depression in regard to what I was enduring at work. I was informed Office of General Counsel just released a Tele-work Policy for employees and suggested it when requesting a reasonable accommodation because management refused to remove me from Shirley's supervision. (Item 95)

April 15, 2004, Shirley's harassment continued when she requested I submit documents to her that she received last year in regard to reporting requirements. After I provided her with the information she inundated me with more work and called me to a meeting to discuss a scheduled item topic but asked me questions about another matter we were not required to meet on until the next day. She insisted I provide her information on the EEO brochure progress and I stated that because I did not have the brochures in front of me, I was unable to speak on them as I was advised the mandatory EEOC assignments take precedence. She attempted to infer I was not prepared for the meeting and further admonished me for not having the required information. (Item 97)

April 16, 2004, my harassment continued as I was given direct orders for almost everything she presented me with from changing my timesheet to submitting my time that was not due until noon but she insisted it took her three hours to review staff of twos time. (Item 98, 99) When I questioned her, she advised I was no longer allowed to accrue credit hours although I am well aware everyone else in the Director's Office is allowed to do this.

My reasonable accommodation was denied and no attempt was made to accommodate me at all. During our meeting she stated that she would need to see my medical records and I asked if she was serious? I told her, I am not required to turn over my medical records to you. She advised I would have to provide her with medical documentation. I asked her what what it was exactly that she wanted to accommodate my work-at-home request and she stated I could not work at home but offered no alternative. I reported her to the EEOC (Rita Hurst-OFO-ADA Coordinator).

On April 16, 2004, I requested Jennifer Owens address my requests and also to remove me from under Ms. Everest's supervision as a reasonable accommodation. My request was denied and no other relief was offered to accommodate me. (Item 102)

April 16, 2004 because of the retaliation and denial of my request for a reasonable accommodation, I requested Ms. Owens enter me into the EEO process because I was advised a Counselor would have to be contracted out. Ms. Owens sent me an e-mail stating she would take care of it Monday.

April 19-20, Ms. Owens stated she was preparing a contract for a counselor to be assigned to my counseling.

April 20, 2004 commenced my first year of service with the Peace Corps, On March 23, 2004, I received a performance evaluation of meets and/or exceeds in all areas, in my current position  I developed EEO approved program and policy, completed reports for other departments, maintained and managed the Agency's EEO Complaint Program, submitted all EEO mandatory reports in a timely manner, was the first of four Agency's to submit Form 462 to the EEOC in December 2003, one of the first Agency's to comply with the reporting requirements of the NO FEAR ACT, conducted training and education of the EEO Counselors, prepared NO FEAR ACT presentation for senior-level managers, re-designed the Agency's New Employee Orientation, EEO program, attended a week long EEOC training, attended three-day long EEOC Final Agency Decision training, assumed management of the Computer/Electronic Accommodation Program (CAP), performed over three hundred and thirty-eight hours of research into the Civil Rights Law, Policies, and Programs in regard to the Federal Government, Title VI and Title VII. Met with representatives from other agency's for instruction and guidance in bringing Agency into EEOC compliance, prepared case briefs and position papers, designed EEO and Sexual Harassment brochures, drafted an Agency Affirmative Employment Program, developed Agency MD-715 guidance, provided expert advice to managers and staff, proposed disability program and policy, previously served on committees and participated in events.

April 21, 2004, upon entering my office, I received a letter from Ms. Owens stating to me I was denied the right to counseling because of filing a formal complaint. I did not file a formal EEO Complaint until today. Therefore,

Rachel L. Perry    Formal EEO Complaint    42

my rights have once again been violated and I have been retaliated against. (Item 104).

April 23, 2004, upon entering my office, I received a letter from Shirley Everest responding to my request for reasonable accommodation although she had already denied it on April 15, 2004. Although Management denied me the right to enter the counseling process for Shirley's denial of my request to accommodate, Shirley is now stating, she was not aware I had a condition. Because my accommodation was denied and my request to enter the EEO process denied, I construe her letter as harassment and sent her an e-mail to that effect advising her all correspondence in regard to my complaint should go through my attorney which she failed to do.

April 24, 2004, I attempted to locate a presentation in the American Diversity Program folder on the Agency database and discovered documents I used and worked with had been moved, deleted, and modified. I questioned our Program Assistant in regard to these items needed for me to perform my work and was advised the Information Technology people must have done this during the "refresh". I contacted the IT department and spoke with the individuals responsible for the "refresh" who informed me they did no such thing and for the "refresh", they simply copied our exact folder onto the new network database. I was further informed that any moving, deleting, or modification of folder or files had to have taken place by someone with access to our folder. I have reason to believe Shirley Everest met with Armando Diego Rivera who was our assigned "refresh" representative and assisted Ms. Everest in deliberately moving, deleting, and modifying documents and folders needed by me to perform my duties as EEO Specialist for the Agency. (Item 106)

WITNESSES TO MY COMPLAINT

Crystal Scott

Sharon Jenkins

Kelly Jareux

Mary Saucier

Rene Chandler

Paul Zimmerman

Janet Brown