## MEMORANDUM

From: Shirley Everest, ADP Manager *[signature: Shirley Everest]*

To: Rachel Perry, EEO Specialist, ADP

Date: May 21, 2004

Re: Notice of Proposed Termination

---

Pursuant to Peace Corps Manual Section 652, I am proposing your termination from employment with the Peace Corps for the efficiency of the service based on severe and repeated breaches of confidentiality and actions that have fundamentally undermined the integrity of the Agency's EEO process, and for violations of the Agency's standards of ethical conduct. Your actions have not only caused harm to the EEO office and to the Agency, but you have undermined your ability to perform the functions of your position, which require a high degree of integrity and trust.

**Facts:**

You were hired on April 20, 2003 to perform the duties of an EEO Specialist at an FP-4 level. After several months on the job, you raised certain concerns with me about your conditions of employment. The main two items of concern that you raised were, first, that you felt that you should have been hired at the FP-3 level rather than the FP-4 level; and second, that you were not happy with the fact that during your first several months of employment health insurance premiums had not been deducted from your paycheck, resulting in your having to repay the Agency for those premiums and in your not having health coverage for a brief period of time. Upon becoming aware of those concerns, I worked closely with you, and with other departments within the Agency, most notably the Department of Human Resources Management, to resolve these issues. However, when we were not able to resolve these issues to your satisfaction as quickly as you had hoped, you began to engage in highly belligerent and unprofessional behavior toward me and toward HRM staff who were working with me to resolve your concerns. This was especially trying and disruptive to the Office of American Diversity since you had fully and knowingly accepted employment at the FP-4 level, and the failure to withhold insurance premiums was obviously merely a clerical error by HRM and could not possibly be construed as an act of discrimination. You also spoke about a variety of confidential matters I had shared with you with others in the Agency who had no need or right to know this information. As a result, on February 6, 2004, I issued you a non-disciplinary Letter of Counseling instructing you to refrain from this kind of belligerent and unprofessional behavior, and offering to work with you in a professional and constructive manner to resolve your employment concerns. See Attachment A (Letter of Counseling).

1

You subsequently filed an EEO Complaint against me and others in the Agency, as is your right. Because you named me in the Complaint, I asked that I be recused from handling your case – which would be my responsibility as the EEO Manager in the normal course of business – and the Agency instead assigned Acting Deputy Chief of Staff Jennifer Owens to carry out this responsibility for purposes of your case. In addition, after you initially contacted an internal EEO Counselor to your case, who then requested the assistance of an additional Counselor due to the number of issues raised in your case, the Agency ultimately determined that its internal EEO Counselors – who would normally provide counseling during the informal stage of a complaint filed by an employee – would all be recused from serving as counselors in your case because of their working relationships with you and me, both of whom are involved in the case. Accordingly, Ms. Owens hired Renee Chandler, an outside party who had no connections with anyone at the Agency, to handle the counseling function.

As EEO Counselor, Ms. Chandler first interviewed you, then set up a telephone interview with me, as the first-named responsible Agency official. On March 18, 2004, Ms. Chandler conducted an extensive telephone interview with me, lasting approximately one and a half hours, during which we discussed the full range of issues raised in your complaint behind closed doors.

The following day I became aware that you had sent e-mails to Director Gaddi Vasquez and Jennifer Owens, and a voice mail message to Chief of Employee Relations Phnesha Barnes stating that you had listened to the entirety of my conversation with Ms. Chandler and detailing some of the specific issues discussed in that conversation, as well as noting that you had taken written notes of what was said. I was extremely concerned by the fact that you not only had deliberately listened to a lengthy conversation that you knew was part of the EEO process and therefore confidential, but that you had then reported the details of this conversation to others, particularly the Director of the Agency, who could be the final decision maker in your EEO case. I would have been concerned by this behavior regardless of your position; I was especially concerned because you are employed as an EEO Specialist and it is your job to be intimately familiar with the EEO process and to take every measure to ensure the integrity of that process, whether it pertains to your complaint or to someone else's.

Based on the fact that your behavior breached confidentiality and undermined the integrity of the EEO process, I recommended discipline. In addition to this incident, I recommended discipline for two instances in which I received complaints from senior-level supervisors, including Associate Director for Management Gil Smith, concerning your unprofessional demeanor in your communications with them. Based on these incidents taken together, on April 6, 2004, I recommended a five-day suspension. That notice of proposed suspension has been pending before Deputy Director Jody Olsen. See Attachment B.

Following the March 18 incident, you ended the EEO counseling process and subsequently, on April 26, 2004, the Agency received a formal complaint filed by you

through your attorney, Leizer Goldsmith. See Attachment C. Leizer Goldsmith is the attorney for a complainant, Eugene Lane, who has brought numerous claims of employment discrimination against the Peace Corps for Peace Corps' failure to hire him, which are currently pending. You then enumerate 108 alleged "instances of discrimination" that form the basis for your complaint. Included among these "instances of discrimination" are two allegations concerning the Lane case. First, in allegation 7, you state:

> In December of 2003, I questioned Cathy Pearson's statement in regard to not hiring Eugene Lane for employment although she stated he was the most qualified candidate for positions to which he applied. When I asked why she just doesn't hire him? I was told he would not be hired here. I was later also told be [sic] her, that in a staff meeting, Janet Brown instructed all staff, Eugene Lane was not to be hired because of his EEO Complaint.

Attachment C, page 2.

Then, in allegation 8, you state:

> I opposed and did not attend meetings OGC and HRM scheduled with Shirley to discuss non-discriminatory reasons to not hire Eugene Lane after Cathy Pearson stated, "we're running out of reasons to not hire him."

Attachment C, page 3.

Whether or not these allegations are accurate (to my knowledge they are not), your knowledge of facts concerning the Lane case came to you entirely through your professional position as an EEO Specialist.

**Grounds for Termination:**

**1.  Breach of Confidentiality and Undermining the Integrity of the EEO Process**

As an EEO Specialist, one of your core responsibilities is to assist in processing EEO complaints from Peace Corps employees and Volunteers. A critical aspect of that process is maintaining the confidentiality of information that you obtain in connection with processing such complaints.

I have expressed to you the importance of confidentiality and integrity to your success as an EEO Specialist numerous times since you were hired. I have emphasized to you the importance of being, and being viewed as, an impartial professional who ensures that issues coming through the EEO office are handled according to the established procedures, which includes ensuring that you are not an advocate for either party to a

3

complaint, and that you do not share confidential information that you receive in the course of processing complaints. Despite my admonitions, I have had serious concerns in the past about you inappropriately sharing confidential information. I first formally raised my concerns about this in my February 6 Letter of Counseling to you. That letter was not a disciplinary action, but was intended to clarify for you the importance of confidentiality and professional behavior to the successful performance of your job.

  Despite this, on March 18, you very seriously breached the confidentiality and integrity of the EEO process when you not only deliberately listened in on a lengthy phone interview that you knew to be private and confidential as part of the EEO complaint process, but you then informed the Director of the Agency, as well as Jennifer Owens and Phnesha Barnes, about the contents of that interview. I proposed a five-day suspension based on this as well as on your unprofessional behavior in communicating with two of the Agency's senior managers. In that proposed suspension, I explained that it seriously undermined the integrity of the EEO process for you to listen in on a confidential interview, but more than that, for you to inform the Director of the Agency, who could be the ultimate decision maker in your case, about the contents of that interview.

  You have continued to exhibit a pattern of conduct that shows an inability to maintain the necessary confidentiality and integrity of your position and of the EEO process to the point where I have concluded that you are no longer fit to continue in your position as an EEO Specialist. You have knowingly hired as your attorney the attorney who represents complainant Eugene Lane in his complaint against the Agency, and have provided him with confidential information, which you purport to be true, about the Lane case which you have learned through your position as EEO Specialist. Along with your earlier breaches of confidentiality, this highly inappropriate action demonstrates to me that you are no longer fit to perform the basic functions of your job, which include learning confidential information in connection with EEO matters and maintaining its confidentiality. I no longer have confidence in your ability to maintain your impartiality in processing EEO complaints inasmuch as you have taken confidential information that you have learned in your role as EEO Specialist and provided that information to the complainant's attorney, thereby in essence assisting and advocating for the complainant in a manner that is entirely inappropriate and inconsistent with your responsibilities as an EEO Specialist.

  These breaches of confidentiality are of such an extreme nature that it fundamentally undermines your ability to continue in your position as an EEO Specialist. A key reason why employees in an EEO office are expected to maintain confidentiality concerning EEO matters is so that agency employees will continue to feel comfortable discussing such matters with an understanding that the EEO specialists with whom they have these discussions will maintain impartiality and confidentiality. Based on your actions, it would be difficult for any agency employee to feel comfortable divulging confidential information to you, nor can I as the EEO Manager feel comfortable including you in the handling of EEO cases, knowing that you are likely to divulge such information to others.

## 2. Unethical Use of Confidential Information Obtained Through Federal Employment for Private Purposes

The Office of Government Ethics Standards of Conduct are set forth in 5 CFR 2635. Section 2635.703 sets forth the standards governing the "use of nonpublic information." Paragraph (a) of that section provides:

> An employee shall not engage in a financial transaction using nonpublic information, nor allow the improper use of nonpublic information <u>to further his own private interest or that of another</u>, whether through advice or recommendation, or by knowing unauthorized disclosure. (Emphasis added.)

Paragraph (b) of that section goes on to define "nonpublic information" as:

> . . . information that the employee gains by reason of Federal employment and that he knows or reasonably should know has not been made available to the general public.

One of the categories of information that is classified as "nonpublic" is information exempted from disclosure by the Freedom of Information Act, 5 U.S.C. 552, including information covered by Exemption 5 (privileged information, including deliberative process privilege).

You provided confidential information concerning the Lane case to Lane's attorney for use in your own EEO case, and presumably for use in Lane's EEO case as well. This information was part of the Agency's deliberative process in responding to Mr. Lane's EEO claims, as well as making hiring decisions for positions to which he had applied. As such, this is clearly "nonpublic information" as defined above, and it was improper for you to offer this nonpublic information to the attorney for a complainant against the government, who has an interest in attempting to use this information against the government's interests.

Moreover, it is clear that you have divulged this information to benefit yourself, specifically, to use it in your EEO complaint for the purpose of attempting to bolster your own EEO case. While there are statutes that protect employees who come forward with information about alleged wrongdoing within the government for the purpose of improving the government ("whistleblowers"), this is not such a case. Likewise, the law protects employees who engage in protected EEO activity from retaliation for such activities; however, you have not engaged in any protected EEO activity with respect to Mr. Lane. Your actions are fundamentally inconsistent with your position as an EEO Specialist in which you are required, on a daily basis, to handle sensitive information that is part of the Agency's deliberative processes in an impartial and confidential manner, not to provide such information to counsel who are actively suing the Agency.

For the foregoing reasons, I am withdrawing your proposed suspension and proposing your termination from employment with the Peace Corps. In determining the severity of the proposed action, I have considered the reasons provided above. I have also considered aggravating factors such as the nature and seriousness of the offenses and your important position in the office as the EEO Specialist. I have further considered the effect of your action on the office and the Agency as well as upon my confidence in your ability to perform your job functions in the future.

In addition, I have considered the fact that I have counseled you numerous times concerning the importance of maintaining high standards of confidentiality and integrity in performing your duties, and that I have provided you with a Letter of Counseling and a Notice of Proposed Suspension based on the same types of concerns that are the basis for this action. I have also considered whether this proposed penalty is consistent with those imposed on others for similar offenses.

Based upon the above, I conclude that it is appropriate to propose your termination from the Peace Corps for just cause and to promote the efficiency of the Agency.

You have fourteen (14) calendar days to respond to the proposed termination letter. Please address your response to Jody Olsen, Deputy Director, 1111 20th Street, N.W. Washington, D.C. 20526. You have the right to respond to this action orally and/or in writing, and to submit affidavits, documents or other statements in your defense of this proposed action. You have the right to review any and all evidence that was considered in preparing this proposal. I am attaching to this addendum all documents which I relied upon in proposing your removal.

You have the right to be represented in this matter by anyone of your choice, including a representative or an attorney. The cost of such representation, if any, must be borne by you. Both you and your representative (if an Agency employee) may have a reasonable amount of official time (time off without charge to leave) to review the evidence and to prepare your defense to this action.

While your duty status has not changed, you will shortly receive a memorandum advising you of any changes to your duty status during the notice period of this proposal.

Should you choose to make an oral response, you may contact Ms. Olsen by calling Frank Sheed at (202) 692-2163. He will arrange an appropriate time for you to make the response to Ms. Olsen. Ms. Olsen will carefully and fully consider whatever written and/or oral response is made prior to rendering her decision. A reasonable extension of time will be granted for good cause upon submission of a written request prior to the expiration of the fourteen-day reply period.

You will receive a written decision from Ms. Olsen as soon as practicable following receipt of your reply, if any, or upon expiration of the time provided for such response. Ms. Olsen's decision letter will state specifically whether or not the charges

were supported; and, if so, the action to be taken and any further right of appeal or grievance to which you may be entitled.

If you have questions about procedures regarding this proposal, you may contact Phnesha Barnes, Chief of Employee Relations, at 202-692-1207.

I would request that you acknowledge receipt of this memorandum by signing and dating the record copy. Acknowledgment of receipt does not signify agreement with the contents of this letter.

Attachments:

---

ACKNOWLEDGMENT OF RECEIPT

Employee's Signature:_____

Dated: May ___, 2004

---