UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERMAN EUGENE LANE, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Civil Action No. 05-0414 (EGS) |
| UNITED STATES PEACE CORPS, | ) |
| | ) |
| Defendant. | ) |

REPLY

PRELIMINARY STATEMENT

Defendant, the United States Peace Corps, submits this reply memorandum in further support of its motion to dismiss portions of Counts I and II of plaintiff Lane's portion of the complaint and Count IV of plaintiff Perry's complaint in its entirety for failure to exhaust administrative remedies by virtue of plaintiffs' failure to contact an Equal Employment Opportunity ("EEO") Counselor within the prescribed 45-day time limit for a Title VII action pursuant to F.R.C.P. 12(b)(6) and to sever the claims of plaintiff Lane and Perry pursuant to F.R.C.P. 20 and 21.

ARGUMENT

I.   **Failure to Exhaust Administrative Remedies**

   **Lane's Letter to Peace Corps Director**

   In plaintiffs' Opposition to Defendant's Motion for Partial Dismissal and to Sever Claims ("Opposition"), plaintiff Lane concedes that he does not have actionable claims relating to 12 of

1

the 13 positions for which defendant sought dismissal for failure to exhaust administrative remedies; plaintiff stated that his intent was not to litigate each position as an actionable adverse action.  *See* Opposition at 7-9.  However, plaintiff Lane identified one non-selection-- for PC2-133, Assistant Director of Human Resources-- as a claim for which he argues he did exhaust his administrative remedies.  *Id* at 8-10.

In the Opposition, plaintiff Lane states that on June 21, 2002, he applied for the position of Assistant Director of Human Resources (PC2-133), was interviewed for this position on September 20, 2002 and received a letter that he had not been selected for this position two days later, on September 22, 2002.  Opposition at p. 8.

Plaintiff Lane acknowledges that he did not contact the Peace Corps' American Diversity Programs ("ADP") office until 5½ months later, on March 5, 2003, to pursue even a general complaint of unlawful discriminatory non-selection with the Peace Corps ADP office and did not communicate anything about not being selected for the PC2-133 position until March 24, 2003, 6 months after receiving notification that he had not been selected for the position.  *Id*. at p. 9.

Plaintiff Lane, however, claims that he exhausted his administrative remedies by writing a letter to the Peace Corps Director on November 5, 2002, in which he stated that he "had difficulty being considered for jobs" with the Peace Corps, that he had applied for numerous jobs, and did "not feel that he had ever received serious consideration," and that he believed he was "being discriminated against because [he was] a Republican, white, male, of Southern Anglo-Saxon ancestry, and older than the typical Peace Corps employee."  See Opposition at p. 9 and Exhibit 2.  However, it is not disputed that this letter, sent only to the Peace Corps Director, did not request that any allegations be forwarded to the Peace Corps's ADP or EEO office.  Indeed, the letter

asked that the Director "be cautious" with whom [he should] share this letter," and did not request that the Peace Corps investigate or process an EEO complaint. *Id.*

In support of his position that the letter to the Director was sufficient, plaintiff only cites to *Lloyd v. Chao*, 240 Fupp 2d 1 (D.D.C. 2002) for the proposition that "an employee's contact with management officials is tantamount to initiating contact with an EEO counselor." Opposition at 10. The *Lloyd* decision has been rejected by the one Judge in this District with reported decisions addressing Lloyd. *Carter v. Greenspan*, 304 F.Supp.2d 13, 23-24 and fn 10 (D.D.C.2004)(" that case [*Lloyd*] is not binding on this Court, and it is contrary to the weight of authority on this issue." Thus the Court found that engaging in an internal dispute resolution procedure with supervisors and a human resources representative "cannot replace the required initial contact with an EEO Counselor within 45 days of the allegedly offensive incident." ); *Velikonja v. Mueller*, 315 F.Supp.2d 66, 73 (D.D.C.2004)(same); and *see Cox v. Rumsfeld* L 21691044, *6 -7 (W.D.Wis.,2003) (discussing *Lloyd*, among other cases, and relevant EEOC regulation and concluding that: "[T]he question is whether plaintiff expressed his intent to begin the EEO process to an individual who was sufficiently related to that process."). Similarly, the Court in *Carroll v. England* held that a communication outside the EEO counseling process would not be sufficient to exhaust administrative remedies where there was no indication that the receiving party considered the communication to be a "formal initiation of EEO counseling," and where subsequently plaintiff did initiate formal EEO counseling. *Carroll v. England*, 321 F. Supp. 2d 58, 66-67 (D.D.C. 2004.) In *Carroll*, the Court dismissed plaintiff's complaint for failure to exhaust administrative remedies where it found that an e-mail communication to the Agency's EEO Counselor alleging discrimination could not have been considered to be a "formal initiation

of EEO counseling" particularly in light of the fact that plaintiff properly and formally initiated EEO Counseling at a later date. *Id*. at 67.

Plaintiff Lane's November 5, 2002 letter to the Director clearly was not an expression of intent to begin the EEO process, and was not directed to a person sufficiently related to the EEO process. Additionally, any contention that the letter was then contemplated to be the initial contact with the EEOC is belied by plaintiff Lane's subsequent "initial" contact with the EEO office some 5 months later in April, 2003. Defendant's Motion to Dismiss at Exhibit 2.   Therefore, the letter to the Director did not exhaust plaintiff Lane's administrative remedy as to the non-selection for PC2-133.

**Specificity of EEO Claim**

The D.C. Circuit has held that the "administrative charge requirement serves the important purposes of giving the charged party notice of the claim and 'narrowing the issues for prompt adjudication and decision.'" *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), *citing, Laffey v. Northwest Airlines, Inc*., 567 F.2d 429, 472 (D.C. Cir. 1976).  Moreover, the D.C. Circuit admonished in *Park* that "the requirement of some specificity in a charge is not a 'mere technicality'" and a "Court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d 904 at 907, *citing Rush v. McDonald's Corp*., 966 F.2d 1104, 1111 (7th Cir. 1992).   In *Park*, the D.C. Circuit found that where the particulars of a charge are not provided, a plaintiff cannot be said to have exhausted her administrative remedies.

In *Mianegaz v. Hyatt Corp*., 319 F. Supp. 2d 13 (D.D.C. 2002), plaintiff filed an EEO complaint challenging two suspensions imposed on him, alleging disparate and discriminatory

treatment. He then brought suit in Court asserting claims relating to the suspensions, but also adding a claim of discriminatory termination. The Court dismissed the termination claim on the ground that it failed to meet the exhaustion requirement because his EEO complaint "was silent with respect to any allegation that the plaintiff was discharged." *Id*. at 18, *citing, Johnson v. Quin River Agency for Cmty. Action, Inc*., 140 F. Supp. 2d 657, 663 (E.D.Va. 2001.) Similarly, in *Kidane v. Northwest Airlines, Inc*., 41 F. Supp. 2d 12, 16 (D.D.C. 1999), this Court found that general allegations in an EEO complaint alleging harassment and discriminatory behavior were not sufficient to encompass a discriminatory demotion or discharge claim, finding that the "goals behind the requirement of prior resort to administrative relief would be frustrated if the filing of a general charge with the EEOC would open up the possibility of judicial challenges to any related conduct that took place in connection with the employment relationship," *citing Park, supra*, 71 F.3d at 908.

    Even the decision cited by plaintiffs in their opposition brief for the proposition that plaintiffs' communications were sufficient to exhaust their administrative remedies, supports dismissal of plaintiffs' claims. In *Marshall v. Federal Express*, 130 F.3d 1095 (D.C. Cir. 1997), plaintiff filed a complaint with the EEOC alleging discriminatory denial of an opportunity to apply for a particular position, and then filed suit in federal court claiming discriminatory denial as well as unlawful termination. The D.C. Circuit dismissed plaintiff's wrongful termination claim on the basis that plaintiff's charge "made no mention of her termination," finding that "[a] vague or circumscribed charge will not satisfy the exhaustion requirement for claims it does not fairly embrace" and "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well

as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.* at 1098, *citing, Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989).

In this case, both plaintiff Lane and Perry have failed to exhaust their administrative remedies through lack of specificity. Plaintiff Lane's only communication with the Peace Corps within 45 days of plaintiff becoming aware of alleged discriminatory non-selection for position no. PC2-133 was a letter from plaintiff Lane to the Director of the Peace Corps containing vague and general allegations that he "had difficulty being considered for jobs", and that he was "being discriminated against on the basis that he was a Republican, white, male, of Southern Anglo-Saxon ancestry and older than the typical Peace Corps employee." Opposition at Ex 2. The letter did not mention the PC2-133 Assistant Director of Human Resources position, or any particular position for which Lane was not selected. Accordingly, such a "vague" and "general" charge could not be sufficient to encompass a specific claim of discriminatory non-selection in connection with PC2-133, particularly, in light of this Circuit's admonishment in *Park, supra*, 71 F.3d 904 at 907, that "the requirement of some specificity in a charge is not a mere technicality."

The weight of authority would similarly mandate dismissal of plaintiff Perry's claims as alleged in Count IV of the complaint. Although plaintiff Perry claims in the opposition brief that it was the indefinite suspension that constituted the actionable adverse action, the plain fact remains that plaintiff Perry's complaint did not mention indefinite suspension, but only referenced her proposed termination which was pending a decision from the Foreign Service Grievance Board. As in *Marshall, supra* and *Mianegaz, supra*, where an EEOC complaint made no mention of a particular claim or action, such complaint would deprive the charged party of notice of the

particular claim, and thus, not be considered sufficient to result in the exhaustion of administrative remedies.  Moreover, as per this Circuit's admonishment in *Park, supra*, 71 F.3d 904 at 907, that the requirement of specificity in a charge is not a "mere technicality, " plaintiff Perry's August 11, 2004 complaint, drafted with the assistance of counsel, which alleged discrimination in connection with her proposed termination from the Peace Corps, but made no mention whatsoever of indefinite suspension, cannot be said to have exhausted her administrative requirements with respect to her claim of retaliatory indefinite suspension.

Similarly, plaintiff Perry's August 2004 complaint alleging only "[t]ermination from Agency pending review by the Foreign Service Grievance Board" cannot be said to encompass plaintiff Perry's claim that she was **constructively** terminated when she resigned from the Peace Corps in February 2005.  As in *Mianegaz, supra*, 319 F. Supp. 2d 13 at 18, "it would be curious, if not clairvoyant" for Perry to "actually reference" her resignation, given the fact that she filed her EEO complaint in August and resigned some six months later, the following February.  *See also Marshall, supra*, 130 F.3d 1095 at 1098 (noting the significance of the fact the plaintiff "never filed a second charge", or "amend[ed] her original charge" or otherwise brought the later action to anyone's attention.)

Finally, contrary to plaintiff's assertion that she was "effectively fired," the proposed termination was not a final action.  The proposal stated

> In conclusion, I conclude that you should be terminated from the Agency.  This is the Agency's final **recommendation**, and it is subject to review by the Foreign Service Grievance Board. . .unless you waive your right to such review in writing.

Defendant's Motion to Dismiss at Ex 4, pp3-4.  The applicable statute, provides

> (2)(A) Except as provided in subparagraph (B), whenever the Secretary decides under paragraph (1) to separate, on the basis of misconduct, any member of the service . . .who either
>
> (i) is serving under a career appointment, or
>
> (ii) is serving under a limited appointment, the member **may not be separated from the Service until the member receives a hearing before the Foreign Service Grievance Board and the Board decides that cause for separation has been established,** unless the member waives, in writing, the right to such a hearing, or the member's appointment has expired, whichever is sooner.

22 U.S.C.A. § 4010, and *see generally Salleh v. Christopher,* 85 F.3d 689 (D.C.Cir.1996)(final decision on whether to separate lies with the Board). Thus, no final decision to terminate plaintiff was made. Moreover, the statute requires

> (4) Notwithstanding the hearing required by paragraph (2), at the time that the Secretary decides to separate a member of the Service for cause, the member shall be placed on leave without pay. If the member does not waive the right to a hearing, and the Board decides that cause for separation has not been established, the member shall be reinstated with back pay.

22 U.S.C.A. § 4010. Thus, while the decision to recommend separation for cause is an action or recommendation of the agency, placing her on leave without pay pending the outcome of the hearing was not subject to agency discretion, but was required by law. Additionally, there also had been no final determination of whether plaintiff would receive pay for the period during which she was on administrative leave, since the back pay would be reimbursed if the Board found no basis for the termination recommendation.

Plaintiff Perry's requested amendments to her EEO complaint cited at Instance 2 reprisal on May 21, 2004 when she "was issued a proposed termination and was placed on administrative leave." Defendant's Motion to Dismiss at Ex 5. In instance 3 she alleged reprisal on "July 2,

2004, Termination from Agency pending review from the Foreign Service Grievance Board." *Id.* For the reasons discussed above, and compared with the specificity of Instance 2, Instance 3 can not be said to have put the agency on notice that plaintiff was alleging retaliation in placing her on unpaid administrative leave, particularly when the unpaid leave was subject to reimbursement should the Board in its final decision concerning termination order reimbursement of back pay.

**II.    PLAINTIFFS' CLAIMS SHOULD BE SEVERED INTO TWO SEPARATE ACTIONS**

In plaintiffs' opposition brief, plaintiffs Lane and Perry attempt to allege facts that would relate the claims asserted by plaintiff Lane in the complaint to the allegations made by plaintiff Perry. However, these facts were not actually pled in the complaint, and even if such facts were pled, they would not establish a legal basis for joinder of these two distinct and dissimilar sets of allegations.

In plaintiffs' opposition brief, plaintiffs set forth a new theory of their case, that the Director and senior officials of the Peace Corps implemented a policy of suppressing and punishing protected EEO activity and that such policy establishes a common factual scenario that would relate to both the allegations of plaintiffs Lane and Perry. However, while plaintiffs claim in their opposition brief that this Peace Corps policy is evidenced by plaintiff Lane's attempts to communicate with the Director and Shirley Everest to file an EEO complaint, nowhere in plaintiffs' complaint are such claims asserted. On the contrary, paragraphs 9 through 165, and 215 through 220 of plaintiff's complaint relate exclusively to plaintiff Lane's claims that he applied for numerous jobs with the Peace Corp, that his qualifications for these jobs were excellent, and that instead of hiring him, these jobs were given to less qualified women, with no

9

prior EEO activity.  Indeed, in plaintiff Lane's summarizing paragraph in Counts I and II of the complaint, plaintiff Lane claims that defendant discriminated on the basis of sex and retaliated against Lane "by repeatedly rejecting his applications for employment despite his being the best-qualified candidate" and "refus[ing] to select Plaintiff Lane for any position for several years."  See Plaintiffs' Complaint at ¶¶ 217, 219.

Similarly, while plaintiffs now attempt to show in their opposition brief that the gravamen of plaintiff Perry's claims is her failed attempts to enter the EEO process, plaintiffs' complaint belies this contention as it instead focuses on Perry's claims that she was denied a career ladder promotion, a non-competitive promotional appointment to a GS-12 level, that she was suspended indefinitely without pay, and that she resigned under duress as a result of defendant's retaliatory actions.  See Plaintiffs' Complaint at ¶¶192- 214; 221-227.

Moreover, although plaintiffs now claim that they will be offering admissible evidence at trial as to the Peace Corps' alleged policy to deny plaintiffs the ability to enter the EEO process, it is not disputed that both plaintiffs Lane and Perry were able to file EEO complaints and that these complaints were investigated and litigated before an EEOC Administrative Judge.  It is also instructive to note that nowhere in plaintiffs' complaint does either plaintiff Lane or Perry seek any relief for alleged difficulties that they had in filing EEO complaints.

In addition, even had plaintiffs Lane and Perry asserted these allegations in their complaint, they would not be sufficient to warrant joinder of these disparate claims.  As discussed in greater detail in defendant's motion, plaintiffs Lane and Perry do not share similar positions or status vis-à-vis the Peace Corps, their allegations do not arise out of the same transaction or occurrence, their claims do not involve the same individuals, the types of alleged discriminatory

actions are totally distinct, and they do not even allege the same type of discrimination.

Specifically, it is not disputed that plaintiff Lane is a white male who applied for 19 positions with the Peace Corps, almost entirely in the Office of Human Resources, and who asserts that he was not selected for these 19 positions notwithstanding his superior qualifications. See Plaintiffs' Complaint at ¶¶165, 218-220. Nor is it disputed that plaintiff Lane identified in the complaint 17 individuals, nearly all in the Office of Human Resources, as having participated in these discriminatory selections whether by interviewing plaintiff Lane, serving on a panel to rate and rank applicants, or making the eventual selection for the position at issue. See Plaintiffs' Complaint at ¶¶87, 91, 102, 105 119, 128, 140, 144, 149, 160 and 163.

On the other hand, plaintiff Perry was a black female Peace Corps employee who worked for the Peace Corps EEO Office and who claims that her supervisor in the Agency's EEO Office, Shirley Everest, rescinded a previously provided workplace accommodation, denied her training opportunities, issued her a bogus letter of counseling and admonishment, denied legitimate leave requests, changed her assignments, modified her work hours and removed credit hours from her timesheet, declined to promote her, forbid her from attending a Women's History Month Commemoration, denied her request to participate in a maxi-flex work schedule, suspended her for five days improperly, indefinitely suspended her and forced her resignation. See Plaintiffs' Complaint at ¶¶166-214. Moreover, it is undisputed that the primary alleged discriminating official claimed by plaintiff Perry was her supervisor, Shirley Everest, who is allegedly responsible for nearly every action described above. *Id.*

Plaintiffs' citation to *M.K. v. Tenet*, 216 F.R.D. 133 (D.D.C. 2002), as supportive of their argument is misplaced. In *Tenet*, six plaintiffs filed suit claiming that the defendant Central

11

Intelligence Agency willfully and intentionally failed to maintain accurate, timely and complete records relating to these plaintiffs in their files, thus failing to comply with the Privacy Act. The Court found that each plaintiff alleged a common claim under the Privacy Act that defendant maintained records about the plaintiffs in unauthorized systems of records, and failed to employ proper safeguards for records in violation of the Privacy Act, and concluded that severing these claims was not appropriate.

In this case, plaintiffs Lane and Perry are not alleging common claims that relate to both of them; plaintiff Lane alleges that he was not selected for numerous positions in the Office of Human Resources, and plaintiff Perry claims that she was subjected to adverse treatment and eventually suspended and terminated by her supervisor in the Agency's EEO Office.

*Holhbein v. Heritage Mutual Ins. Co.*, 106 F.R.D. 73 (E.D. Wis. 1985) is similarly inapposite as it involved allegations of several plaintiffs that defendant employer's representatives contacted each one of the plaintiff employees concerning executive employment positions and in each case made material misrepresentations of fact and failed to disclose material information regarding the executive positions during the course of each plaintiffs' interview. Accordingly, the Wisconsin court found sufficient similarities to deny severance. There are simply no such similarities in the instant case.

Plaintiffs' contention that these disparate claims are linked by their common difficulties in entering the EEO process is analogous to the arguments rejected by U.S. District Judge Emmet G. Sullivan in *Lucas v. Barreto*, 2005 U.S. Dist. LEXIS 4248 (D.D.C. March 16, 2005.) In *Lucas*, eight current and former employees of the Small Business Administration's Office of Certification and Eligibility sought joinder of separate complaints of employment discrimination, contending

that "the common thread tying plaintiffs' disparate Title VII claims together appear[ed] to be the Agency's failure to act on plaintiffs' various EEO complaints within the 180 days required by law." *Id.* at * 5.  Judge Sullivan found this argument unpersuasive, noting that "if such shared experiences were sufficient to justify joinder, every SBA employee who filed an EEO complaint and did not receive an agency's decision within 180 days could be joined in the case as a co-plaintiff." *Id.*

Another relevant precedent is the Court's decision in *Williams v. Mumford*, 1973 U.S. Dist. LEXIS 12222 (D.D.C. August 20, 1973), which granted defendants' motion to sever Title VII claims by two individual plaintiffs where one plaintiff alleged that he was denied a promotion because of his race, and the other plaintiff alleged that he was terminated because of his race.  The Court in *Williams* found that the claims of these individual plaintiffs were "unique in their nature" and thus, severance was warranted. *Id.* at * 13.  See also *Hussain v. TCF Bank*, 2004 U.S. Dist LEXIS 12035 (N.D.Ill. June 29, 2004) (granting motion to sever Title VII claims of three employees against some of the same supervisors during a similar period where one plaintiff alleged being denied a promotion, while another plaintiff claimed constructive resignation); *Morris v. Northrup Grumman Corp.*, 37 F. Supp. 2d 556 (E.D.N.Y. 1999) (finding that Title VII claims by one plaintiff of failure to promote and a second plaintiff of unlawful termination even where both were based upon racial discrimination were sufficiently different such that prejudice would occur if these cases were tried together.)

Plaintiffs Lane and Perry are alleging dissimilar and distinct employment actions; Lane is alleging failure to hire, and Perry is claiming various adverse actions culminating in suspension and constructive termination.  Their allegations are made against different individuals in different

offices, with Lane claiming discrimination by the Office of Human Resources, and Perry alleging retaliation by her supervisor in the Agency's EEO Office.  Their grounds are even different, as Lane claims primarily gender discrimination, and Perry claims retaliation.  The only common thread in plaintiffs' complaint is a couple of references to plaintiff Perry allegedly opposing the Agency's decision not to hire plaintiff Lane along with numerous other alleged personnel practices.  However, there is no question that the gravamen of plaintiffs' claims are distinct and dissimilar employment actions precipitated by different individuals in different offices and on different bases and accordingly, these claims are "unique in their nature" and should be severed.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that its motion be granted in its entirety.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

RHONDA C. FIELDS
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-6970

OF COUNSEL:

H. DAVID KOTZ
U.S. Peace Corps