**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HERMAN EUGENE LANE, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1414 (EGS) |
| ) | |
| RONALD TSCHETTER,[1] ) | |
| Director of the U.S. Peace Corps ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiffs Herman Eugene Lane and Rachel Perry bring this
employment discrimination action against defendant in his
official capacity as Director of the U.S. Peace Corps.  Pending
before the Court is Defendant's Motion for Partial Dismissal of
Counts I and II and Full Dismissal of Count IV and to Sever
Claims of Plaintiffs Lane and Perry.  After consideration of the
motion, the response and reply thereto, the applicable law, and
the entire record, the Court **GRANTS IN PART AND DENIES IN PART**
defendant's motion.  Specifically, upon conversion of defendant's
motion to dismiss into a motion for summary judgment, the Court
**GRANTS** summary judgment to defendant on 13 of Lane's 19 claims in

---

[1] Ronald Tschetter, Director of the U.S. Peace Corps, has
been automatically substituted for his predecessor pursuant to
Fed. R. Civ. P. 25(d)(1).

Counts I and II[2] of the Complaint and on Perry's claims of retaliatory indefinite suspension without pay prior to July 2, 2004 and constructive termination in Count IV; **DENIES** summary judgment to defendant on Perry's claim of retaliatory indefinite suspension without pay after July 2, 2004 in Count IV; and **DENIES WITHOUT PREJUDICE** to reconsideration at a later time severance of plaintiffs' claims.

I.    **BACKGROUND**

Plaintiffs Lane and Perry allege that defendant has violated Title VII on four counts:  1) retaliatory failure to select Lane for employment, 2) failure to select Lane for employment on account of his sex, 3) retaliatory failure to promote Perry, and 4) retaliatory indefinite suspension without pay and constructive termination of Perry.  In particular, the Complaint alleges that Lane, a former Peace Corps employee, applied for 19 job openings with the Peace Corps between 2002 and 2005 but was never selected to fill any of those positions on account of his sex and prior EEO activity.[3]  Perry, on the other hand, was already employed by the Peace Corps when she allegedly experienced retaliation for

_____

[2] The Court grants defendant summary judgment as to the following 13 job openings for which Lane applied:  PC2-094, PC2-133, PC3-071w, PC3-102w, PC3-230, PC3-278, PC3-280, PC4-115w, PC4-149, PC4-201, PC5-047, PC5-135, and PC4-149w.

[3] Lane's formal EEO charge identifies 46 job openings for which Lane applied but was never selected.  However, because plaintiffs' Complaint refers to only 19 of these openings, the remaining 27 openings are not properly before this Court.

engaging in protected EEO activities, including opposing "discrimination and other unlawful personnel practices . . . deterring selection of . . . several applicants and complainants, including . . . Herman Eugene Lane." Compl. ¶ 167.

Defendant filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to exhaust administrative remedies and for severance pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure. Specifically, defendant argues that: 1) Counts I and II should be partially dismissed because Lane failed to initiate contact with an EEO counselor within 45 days of the alleged discrimination for 13 of the 19 job openings, 2) Count IV should be fully dismissed because Perry did not allege retaliatory indefinite suspension without pay or constructive termination in her EEO charge, and 3) the claims of Lane and Perry should be severed because they are distinct and dissimilar. Defendant then filed his answer, which also asserts failure to exhaust administrative remedies as an affirmative defense. Plaintiffs later filed their opposition to defendant's motion, which concedes that 12 of the 13 job openings should be dismissed for Lane's Counts I and II. Defendant's motion and plaintiffs' opposition both rely on materials outside of the pleadings, such as affidavits and letters attached as exhibits to the motion and opposition.

## II.  LEGAL STANDARD FOR DISMISSAL UNDER 12(b)(6) AND CONVERSION TO SUMMARY JUDGMENT

A 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To survive a 12(b)(6) motion, a complaint must present "enough facts to state a claim to relief that is plausible on its face" and allege facts that rise "above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007).  While the Court gives plaintiffs the benefit of all inferences that can be derived from the facts alleged in the complaint and presumes plaintiffs' factual allegations to be true, the Court need not accept any unsupported legal conclusions cast in the form of factual allegations. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  If the parties submit materials that are not sufficiently incorporated in the complaint and the Court does not exclude them, this has the effect of converting the 12(b)(6) motion into a motion for summary judgment. *See Yates v. Dist. of*

*Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003); *see also N.Y. State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110, 114 n.6 (D.D.C. 2003) (concluding that review of an FTC opinion letter in deciding a 12(b)(6) motion without converting it to a motion for summary judgment was proper, but only because all substantive content of the letter was incorporated in the complaint, the portions of the letter not in the complaint were being reviewed solely for contextual value, the letter was central to plaintiffs' claims, and its authenticity was undisputed).

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-movant, raises no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden of showing the absence of any genuine dispute of material fact by identifying relevant portions of the pleadings and the evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While the Court must regard the non-movant's statements as true and construe all inferences in the non-movant's favor, the non-movant must support its position with something more than "a scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). The Court will grant summary judgment if the non-movant fails to proffer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## III. SUMMARY JUDGMENT ANALYSIS

In this case, defendant's 12(b)(6) motion and plaintiffs' opposition both refer extensively to materials outside of the pleadings.  Although some of these documents are mentioned in the complaint, none of the content from the documents is sufficiently incorporated in the complaint to justify not converting defendant's motion into one for summary judgment.  Moreover, timely exhaustion of administrative remedies in a Title VII case is an affirmative defense that defendant has the burden of pleading in his answer, so summary judgment rather than dismissal is the appropriate procedural device for analyzing whether there was timely administrative exhaustion.  *See  Howard v. Gutierrez*, 474 F. Supp. 2d 41, 49 (D.D.C. 2007); *Carroll v. England*, 321 F. Supp. 2d 58, 65 (D.D.C. 2004); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  Accordingly, the Court converts defendant's motion to dismiss for failure to state a claim into a motion for summary judgment.[4]  Because there is no genuine issue of material fact in this case, the only question remaining for

---

[4] When converting a 12(b)(6) motion into one for summary judgment, the Court must give all parties a "reasonable opportunity to present all material made pertinent to such a motion [for summary judgment]."  Fed. R. Civ. P. 12(b).  Because all parties in this case have already essentially treated defendant's motion as one for summary judgment by relying on letters and affidavits in their arguments, both plaintiffs and defendant have already had a reasonable opportunity to present pertinent evidence in accordance with Fed. R. Civ. P. 12(b).  *See Colbert v. Potter*, 471 F.3d 158, 168 (D.C. Cir. 2006).

the Court is whether defendant is entitled to judgment as a matter of law.

### A.    Lane's claims

In the first part of his motion, defendant argues that Lane did not exhaust administrative remedies for 13 of the 19 job openings mentioned in the complaint because he failed to initiate contact with an EEO counselor regarding those claims within 45 days of the alleged discriminatory conduct. *See* 29 C.F.R. § 1614.105(a)(1).  Because defendant argues that only 13 of the 19 job openings were not timely exhausted, the other six job openings remain to be litigated.  Plaintiffs' opposition does not address 12 of the 13 job openings that defendant argues were unexhausted, so the Court accordingly grants summary judgment to defendant on those 12 conceded claims.  *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by a defendant, a court may treat those arguments that a plaintiff failed to address as conceded.").  As for the remaining job opening, PC2-133, Lane argues that his letter to the Director of the U.S. Peace Corps sent less than 45 days after rejection from that position is tantamount to timely initiating contact with an EEO counselor for that claim.[5]

---

[5] Lane also notes that Shirley Everest, manager of the Peace Corps EEO office, told him in March 2003 that the EEO counseling process was only for current Peace Corps employees.  However,

After a careful review of the letter in question, the Court finds that Lane failed to exhaust administrative remedies by not initiating contact with an EEO counselor within 45 days after Lane received a notice of non-selection for the position. To determine whether a plaintiff has initiated contact with an EEO counselor, the Court must decide whether the plaintiff has expressed an intent to begin the EEO process to a person sufficiently related to that process. *Cox v. Rumsfeld*, No. 02-C-500-C, 2003 WL 21691044, at *6-7 (W.D. Wis. June 19, 2003) (examining the EEOC's definition of "initiate contact"). Because Lane's letter to the Director of the U.S. Peace Corps expressed no intent to engage in the EEO process, Lane did not timely initiate contact with an EEO counselor in accordance with 29 C.F.R. § 1614.105(a)(1).

In his letter to the Director, Lane wrote that he believed he was being discriminated against during the Peace Corps hiring process. Relying solely on *Lloyd v. Chao*, 240 F. Supp. 2d 1, 3 (D.D.C. 2002), as authority for his proposition that contacting a management official about discriminatory acts is tantamount to initiating contact with an EEO counselor, Lane argues that the letter he sent to the Director 44 days after the rejection of him for the PC2-133 job opening fulfills the requirement of

---

because this exchange took place more than 45 days after the alleged discrimination related to PC2-133, it is irrelevant to the Court's analysis.

initiating contact with an EEO counselor within 45 days. Defendant's reply notes that the only judge in this district who has commented on *Lloyd* has rejected it as "contrary to the great weight of authority on the issue." *See Carter v. Greenspan*, 304 F. Supp. 2d 13, 24 n.10 (D.D.C. 2004). However, the authority cited in *Carter* deals with whether complaints to management will equitably toll or extend the 45-day deadline -- an issue that is distinct from whether complaints to management have the effect of initiating EEO contact. *See id.* at 23. As a result, the Court looks outside of this district for authority that provides a detailed analysis of what constitutes initiation of contact with an EEO counselor.

*Cox* thoroughly discusses how the EEOC and different courts, including the *Lloyd* court, have defined "initiate contact with an EEO counselor." *Cox*, 2003 WL 21691044, at *6-7. Understanding the EEOC's interpretation of "initiate contact" is critical because "[w]hen a regulation is ambiguous, as it is in this case, courts should defer to an agency's interpretation of its own regulation." *Id.* at *7 (citing *Christensen v. Harris County*, 529 U.S. 576 (2000)). Accordingly, the *Cox* court analyzed several EEOC decisions and determined that the correct inquiry is "whether plaintiff expressed his intent to begin the EEO process to an individual who was sufficiently related to that process." *Id.* at *6-7.

9

In this case, the Director of the U.S. Peace Corps has
ultimate responsibility for that agency's EEO functions, so he is
sufficiently related to the agency's EEO process and thus meets
one half of the standard set forth in *Cox*.  However, because
Lane's letter expressed no intent to begin the EEO process, the
letter fails to meet the other half of the standard.  Although
one portion of the letter does accuse the Peace Corps of
discriminating against Lane during the application process for
"nearly 40 jobs," the letter never identifies PC2-133 or any
other specific job opening.  Letter from Gene Lane to Gaddi
Vasquez (Nov. 5, 2002), Pls.' Ex. 2.  Reading Lane's letter as a
whole, the Court finds that the letter is an attempt by Lane to
rely on the Director's good offices to get a job with the Peace
Corps rather than the demonstration of an intent to begin the EEO
process, particularly since Lane tells the Director to "be
cautious . . . with whom you share this letter, because I do not
want to be retaliated against for expressing my beliefs."  *Id.*;
*see also* Def.'s Reply at 2-3.  Lane had enclosed an application
for employment in his correspondence with the hope that the
Director would use his powerful position in the agency to hire
Lane.  If Lane's intent in writing the letter had been to begin
the EEO process, he would have also included more information on
the alleged acts of discrimination, such as who was hired instead
of Lane and/or which specific job openings Lane had applied for,

like he did when he contacted an EEO counselor in March 2003.  In sum, because Lane's letter to the Director does not express an intent to begin the EEO process, Lane has failed to timely exhaust administrative remedies for PC2-133.  The Court therefore grants summary judgment to defendant on that claim in addition to the 12 other claims that Lane has conceded.

**B.   Perry's claims**

Defendant also argues that Perry's claim of retaliatory indefinite suspension without pay was unexhausted because 1) the complaint alleges that the suspension began in May 2004, making Perry's initiation of EEO contact in August 2004 untimely and 2) Perry's August 2004 EEO contact encompassed only "the July 2, 2004 decision to terminate [Perry]," not "being suspended or placed on leave without pay starting July 2, 2004."  Def.'s Mot. at 12.  Additionally, defendant contends that Perry's claim of constructive termination (i.e., her February 2005 resignation) was never raised administratively.  Plaintiffs' opposition concedes that the allegations of unpaid indefinite suspension prior to July 2, 2004 are not actionable but maintains that the suspension after July 2, 2004 and the constructive termination are actionable because they are foreseeable and logical consequences of the allegations in Perry's EEO charge.  For the following reasons, the Court finds that only the retaliatory indefinite suspension without pay occurring after July 2 was

11

raised administratively and grants summary judgment to defendant on the remainder of Count IV.

### 1.    Retaliatory Indefinite Suspension Without Pay

Retaliatory indefinite suspension without pay starting on July 2 was a foreseeable and logical consequence of the July 2 decision to terminate Perry enumerated in her EEO charge, and the portion of Perry's suspension claim occurring after July 2 therefore survives summary judgment. While a plaintiff is required to provide some specificity in his EEO charge, "the administrative charge requirement should not be construed to place a heavy technical burden on [plaintiffs]." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). To satisfy the exhaustion requirement, the EEO charge must "fairly embrace" the allegations in plaintiff's complaint. *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997). "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Park*, 71 F.3d at 907 (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

For example, in *Marshall*, the plaintiff's EEO charge mentioned only the employer's failure to allow plaintiff to apply for a particular job, which prevented recovery on her claims of failure to accommodate her disability by transferring her to that

12

same job and wrongful termination because those two claims were not administratively exhausted. 130 F.3d at 1098. The court noted, however, that "[if plaintiff's] termination were properly before us, it might well bring in its train the question whether [the employer] had a duty to take action short of termination by accommodating [plaintiff's] disability-driven limitations in her former job." *Id.* at 1099. The *Marshall* court thus illustrated that an administrative investigation reasonably expected to follow a charge of plaintiff's termination would have exposed an underlying failure to accommodate plaintiff's disability and that both claims would be administratively exhausted as a result. *Id.*

Similarly, Perry's EEO charge raised her July 2, 2004 "[t]ermination from Agency pending review by the Foreign Service Grievance Board" and clearly notes "retaliation" as a basis for her charge. *See* Letter from Rachel Perry to Gaddi Vasquez (Aug. 11, 2004), Def.'s Ex. 5 at 1. An administrative investigation reasonably expected to follow this charge would expose the retaliatory indefinite suspension without pay naturally arising from the July 2 decision to terminate Perry. Defendant illustrates his recognition that Perry's EEO charge encompasses her claim of indefinite suspension without pay by pointing out that, when an Agency decides to terminate an employee, the Agency must place the employee on suspension without pay pending the Foreign Service Grievance Board hearing. *See* Def.'s Mot. at 5;

Def.'s Reply at 8.  Therefore, because Perry's allegation of retaliatory indefinite suspension without pay would be reasonably expected to surface during an investigation of her EEO charge regarding defendant's July 2 decision to terminate her, the Court denies summary judgment to defendant on Perry's claim of suspension occurring after July 2.  However, because Perry has conceded that her claim of suspension occurring before July 2 is not actionable, the Court grants summary judgment to defendant as to any suspension that occurred prior to July 2.

### 2.  Constructive Termination

Perry's February 2005 resignation, or "constructive termination," was not a foreseeable or logical consequence of the allegations in Perry's EEO charge.  As a result, Perry's claim of constructive termination does not survive summary judgment. Perry's August 2004 EEO charge does not "fairly embrace" an allegation of constructive termination occurring six months later in February 2005, and an administrative investigation of the Agency's July 2 decision to terminate Perry would not have exposed Perry's claim of constructive termination.  *See Marshall*, 130 F.3d at 1098; *Park*, 71 F.3d at 907.

For instance, the *Marshall* court held that the plaintiff's allegation in her EEO charge that her employer failed to allow her to apply for a new position did not encompass the subsequent wrongful termination claim that plaintiff raised in her

14

complaint.  *Marshall*, 130 F.3d at 1098.  The court noted that the plaintiff could have administratively exhausted her wrongful termination claim by simply amending her original EEO charge. *Id.*  Similarly, the court in *Mianegaz v. Hyatt Corp.*, 319 F. Supp. 2d 13, 17 (D.D.C. 2004), held that plaintiff's EEO charge mentioning only suspensions did not "fairly embrace" a claim of subsequent termination.  The court noted that "it would be curious if not clairvoyant for [plaintiff's] EEOC complaint to actually reference his termination, given the fact that he filed it some ten months before his eventual discharge."  *Id.*

Like in *Marshall* and *Mianegaz*, Perry failed to administratively exhaust her claim of constructive termination and should have amended her EEO charge after she resigned in February 2005 to include such a claim.  Perry asserts that constructive discharge was part of [her EEO charge] because discharge . . . was in fact accomplished through the notice [of termination on July 2]."  Pls.' Opp'n at 5.  However, this assertion is incorrect because, although Perry's *suspension* was accomplished through defendant's July 2004 notice of termination, Perry's alleged *discharge* from the Agency was not accomplished until she submitted her resignation letter seven months later. Because Perry resigned long after she submitted her EEO charge and because her February 2005 resignation would not likely fall within the scope of an investigation reasonably expected follow

15

Perry's August 2004 EEO charge, the Court grants summary judgment
to defendant on Perry's claim of constructive termination.

## IV.    SEVERANCE ANALYSIS

Defendant has also moved to sever the claims of plaintiffs
Lane and Perry, arguing that plaintiffs' claims are distinct and
dissimilar and fail to meet the requirements for permissive
joinder.  Plaintiffs must meet two prerequisites to join their
claims in a single lawsuit:  1) the right to relief asserted by
each plaintiff must arise from the same transaction or occurrence
or series of transactions or occurrences and 2) any question of
law or fact common to each plaintiff must arise in the action.
Fed. R. Civ. P. 20(a).  "The purpose of [this rule] is to promote
trial convenience and expedite the final resolution of disputes."
*M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002).

When parties are misjoined, the Court has broad discretion
to sever the parties "at any stage of the action and on such
terms as are just."  Fed. R. Civ. P. 21; *see also United States
v. Bridgeman*, 523 F.2d 1099, 1107 (D.C. Cir. 1975); *Jonas v.
Conrath*, 149 F.R.D. 520, 523 (S.D. W. Va. 1993).  Although Rule
21 does not define the basis for misjoinder, courts generally
consider parties to be misjoined when the two prerequisites from
Rule 20(a) are not met.  *Disparate v. Corporate Executive Bd.*,
223 F.R.D. 7, 12 (D.D.C. 2004).  Courts should be mindful,
however, that "the impulse is toward entertaining the broadest

16

possible scope of action consistent with fairness to the parties," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966), and that the two prerequisites of Rule 20(a) "are to be liberally construed in the interest of convenience and judicial economy. . . . in a manner that will secure the just, speedy, and inexpensive determination of th[e] action," *Jonas*, 149 F.R.D. at 523 (internal quotation marks and citations omitted). In addition to these two prerequisites, "the court should consider whether an order under Rule 21 would prejudice any party, or would result in undue delay." *M.K.*, 216 F.R.D. at 138 (internal quotation marks and citations omitted).

The Court finds consideration of severance in this case to be premature. The discovery schedule has not yet been set. Keeping the parties joined for the time being promotes more efficient case management and discovery. The Court finds no prejudice or inconvenience to any parties and no undue delay by postponing its consideration of the severance issue. Moreover, plaintiffs have alleged at least some commonality of fact in the claims of Lane and Perry, so the record should be developed during discovery to determine whether plaintiffs meet both prerequisites under Rule 20(a). The Court therefore denies severance without prejudice to reconsideration after the record has been further developed.

17

## V.    CONCLUSION

For the foregoing reasons, the Court finds that 1) summary judgment in favor of defendant is appropriate as to all claims contested in defendant's motion except for Perry's claim of retaliatory indefinite suspension without pay occurring after July 2, 2004, and 2) consideration of severance is inappropriate at this time.  The Court therefore **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Partial Dismissal of Counts I and II and Full Dismissal of Count IV and to Sever Claims of Plaintiffs Lane and Perry.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**    **Emmet G. Sullivan**
            **United States District Judge**
            **July 10, 2007**