**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**Herman Eugene Lane,**                   )
                                          )
                                          )
            **Plaintiffs,**               )
                                          )        **Civil Action No. 05-cv-1414 (EGS)**
        **v.**                            )
                                          )
**Aaron Williams,**                       )
                                          )
            **Defendant.**                )
_____)

<u>**SUR-REPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S SUMMARY JUDGMENT MOTION AND STATEMENT OF
MATERIAL FACTS**</u>

**Introduction: Summary Judgment Must Be Denied
Because Defendant Has Failed Even To _Attempt_
To Disprove Plaintiff's Direct Evidence**

Defendant cannot obtain summary judgment here for the simple reason that

Plaintiff submitted direct evidence in opposition, which, if believed by the jury, would

render Defendant liable for the discrimination and retaliation.  In its extensive briefings,

Defendant studiously declines to take up this baseline issue at all, rendering Plaintiff's

submissions on the subject as to both law and fact undisputed.  Under the applicable

authorities, Defendant will have to try to convince the jury that Plaintiff's witnesses are

all lying as to Defendant's admissions of retaliatory animus and intent, or show at trial

that it would have still rejected Lane's applications over and over again, even absent that

motive.  Notwithstanding the fact that Defendant's summary judgment dreams end

right there, the following is Plaintiff's Sur-Reply Opposition to Defendant's specifically-

enumerated Reply contentions.

**Plaintiff's Statement of Material Facts Meets The Standard For A**
**Statement of Genuine Issues Required By Local Rule 7.1**

Defendant contends that Plaintiff failed to comply with the elements of Local

Rule 7.1(h), so that "The Material Facts Submitted by Defendant Should Be Deemed

Admitted."  That contention is meritless and must be rejected.  Local Rule 7.1(h) requires

that:

> An opposition to such a motion shall be accompanied by a separate
> concise statement of genuine issues setting forth all material facts as to
> which it is contended there exists a genuine issue necessary to be
> litigated, which shall include references to the parts of the record relied
> on to support the statement.  Each such motion and opposition must also
> contain or be accompanied by a memorandum of points and authorities
> and proposed order as required by LCvR 7(a), (b) and (c).

Plaintiff Lane complied with this requirement in this case.  Thus, on February

17, 2010, he filed an *Opposition to Defendant's Motion for Summary Judgment (Document*

*36)*.  That *Opposition* brief was accompanied under the same ECF docket number, by a

separate *Statement of Material Facts* setting forth all the material facts as to which there is

a genuine issue necessary to be litigated.  It is undisputed that in all but less than 1% of

its paragraphs, that *Statement of Material Facts* cited to the specific record evidence relied

upon in support.

It is correct that a court may treat one party's Statement of Facts as

uncontroverted, when the opponent fails to produce a Statement of Facts (see Qatar

Nat'l Bank v. Winmar, Inc., 650 F. Supp. 2d 1, 3 (D.D.C. 2009) or where the counter-

statement fails to include sufficient record references (see Diggs v. Potter, 2010 US Dist.

Lexis 31485, 1-2 (D.D.C. March 31, 2010).  Here, however, as we show below, Plaintiff

originally supported over 99% of the facts he set forth in his Statement of Material Facts

with record references. Defendant herein attempts to create the misimpression that

Plaintiff's supplementary Opposition to Defendant's Statement of Material Facts is in fact Plaintiff's primary Statement of Material Facts, when Plaintiff's actual Statement, containing over 1000 paragraphs was also timely submitted.  Defendant then takes the supplementary document and contends that it, too, requires specific references even though Plaintiff has opposed the same defense contentions through his primary Statement of Material Facts.  This sleight of hand must fail, first because the primary document is sufficient, and second, because any deficiency in the second document is easily corrected, as we show below.

There is no authority, and Defendant cites none, for Defendant's proposition set forth here, that even when over 99% of Plaintiff's factual citations are supported by record references and when Defendant does not dispute the truth of the other less-than one percent (as Defendant does not here), the proponent's alleged facts should be deemed admitted or the opponent's Statement should be stricken.  <u>SEC v. Banner Fund Int'l</u>, 211 F.3d 602, 616 (D.C. Cir. 2000), for instance, is inapposite.  There, the plaintiff did not cite to specific parts of the record, but cited to his own complaint instead.   That case's primary authority for the "deem admitted" sanction pursuant to Local Rule 7(h)(1) is an earlier case in which a plaintiff filed a Statement of Facts that failed to include page numbers in its deposition citations, and otherwise relied almost solely on the affidavit of a witness who had no first-hand knowledge of the subject matter contained in the affidavit.  <u>Waterhouse v. District of Columbia</u>, 124 F. Supp. 2d 1, 4 (D.D.C. 2000). It would be laughable to suggest that this record bears any resemblance to those identified in the above-cited cases.  In any case, for the purpose of clarity, Plaintiff is concurrently filing a corrected *Plaintiff's Opposition To Defendant's Statement Of Material*

*Facts*, which keeps the facts exactly intact as in the original, but adds some

supplementary record references.[1]

### The Length of Plaintiff's Statement of Material Facts Does Not Warrant Striking It Or Deeming Facts As Admitted; The Length Is Entirely Appropriate

Although it is undisputed that Defendant consented to Plaintiff's Motion to

Enlarge the Page Limitation, Defendant now seeks to retroactively retract or limit that

consent by suggesting that the document somehow violates Local Rule 7, merely

because of its length.  As stated in Plaintiff's Consent Motion to Enlarge the Page

Limitation, Plaintiff stated that there "are seven separate non-selections directly at issue,

each of which has its own set of facts. There are also many more that involve similar

issues and witnesses, highly relevant on the issue of pretext, and which counsel must

raise before the Court."

This is a very fact-intensive case.  In Plaintiff's Motion for Default Judgment and

Defendant's Opposition thereto, each party indicates that over 13,000 pages of

documents have been produced in this case.  Hence, if Defendant was concerned about

the length of Plaintiff's Statement of Facts, it should have addressed this issue at the time

Plaintiff sought consent for enlargement.  Defendant appears to have raised this hyper-

technical objection belatedly because it lacks serious arguments on the merits.

### Defendant's Attempt To Obfuscate, By Treating Plaintiff's Opposition To Defendant's Statement of Facts As His Filing Under Rule 7.1(h), When Lane Also Filed His Own Statement of Material Facts, Fails

Plaintiff fulfilled the requirements of Local Rule 7(h)(1) when, in Document 36,

he submitted *Plaintiff's Statement Of Material Facts In Dispute, In Opposition To Defendant's*

*Motion For Summary Judgment*.  That document is the second of three separate documents

---

[1]     As Defendant recently replaced some of his filings with corrected versions, he cannot credibly object.

ECF-filed as Document 36.  As required by Local Rule 7(h)(1), that Statement contains references to parts of the record relied on in support of the statement. Yet, Defendant's lead argument on Reply (Document 42-1 at 1-4) is that Plaintiff's *Opposition to Defendant's Statement of Material Facts* (Document 36 at 255-305), a supplementary document presented for the Court's convenience and the **third** of the three documents, fails to meet the requirements for a statement of genuine issues as required by the Local Rule and Fed. R. Civ. P. 56.  The argument is bizarre, since a mere three pages later, Defendant admits that Plaintiff's *Statement of Material Facts* is in fact present.

### Plaintiff Provides Supplementary Record References

Defendant pointed out examples in which Plaintiff's *Opposition to Defendant's Statement of Material Facts* (Document 36 at 255-305), where Plaintiff identifies a fact alleged by the defense, then simply states that the fact is disputed.  Although the record references for the disputes are available by reading Plaintiff's Statement of Material Facts, for the Court's (and Defendant's) convenience, Plaintiff now provides additional references to his Statement of Material Facts, for the following specifically-enumerated defense-alleged facts, in Attachment 1 hereto, his Opposition to Defendant's Statement of Material Facts.  With this supplementation, Plaintiff has provided complete record references twice-over, in his own Statement of Material Facts, and in opposing Defendant's Statement.  Accordingly, there is no basis for deeming any facts as admitted or striking Plaintiff's filings.

### Defendant Offers Five Specific Contentions About Plaintiff's Statement Of Material Facts, To Support Striking It, All Of Which May Be Discounted As Frivolous

Defendant (Document 42-1 at 4) claims that Plaintiff's Statement of Material Facts (Document 36, after the Brief) should be stricken, first stating that Plaintiff failed to

select only facts which are material to the outcome of the litigation.  In an ironic demonstration of just how powerful Plaintiff's case really is, Defendant is able to find only a single citation in all of Plaintiff's lengthy Statement of Material Facts, to supposedly support of his contention that Plaintiff's factual representations are too comprehensive. Moreover, even Defendant's sole citation is telling as to Defendant's blind hatred of Mr. Lane; the only fact that Defendant claims renders Lane's Statement of Material Facts too comprehensive, is the undisputed fact "that Lane loves the Peace Corps[,]" as Defendant's key actors apparently do not.  This argument lacks even a scintilla of merit so it should be rejected outright.

Defendant (Brf. at 4) alleges that Plaintiff failed to provide record references to support the following facts:

19.     Janet Brown became the Director of Human Resource Management at the Peace Corps in March 2002.

72.     During the relevant period, Lane has been rejected repeatedly in his applications for Human Resources positions, despite easily meeting the qualifications required for the positions.

73.     Lane applied for positions as a supervisor that required past supervisory experience. These included PC4-081, for which Sheila Clark was selected, PC3-006, for which Odessa White was chosen, and PC3-007, for which Phnesha Barnes was selected.

78.     Accordingly, Lane should have been fully credited as having the experience and ability to supervise.

119.     In the Report of Investigation, the Investigator found that the workforce profile was heavily skewed toward women. (this is a conclusion from the facts brought forward in the next few fact statements.

124.     Every selectee for whom Lane was passed over was female, including White, Myers, Barnes, Garnish, Clark, Smith, except one.

125.     The decision makers who carried out the discriminatory scheme against Lane were all female: Everest, Brown, Pearson, Lavelle and White.

157.    Indeed, there is no evidence that Everest did anything to investigate Lane's 2002 letter to Vasquez, which she saw prior to late 2004.

518. However, as shown with regard to PC3-077, which was the exact same position as this, Jezek did qualify Lane for the job a few months earlier.

519.    Because Defendant destroyed the documents, it is impossible to know whether or not Defendant's alleged dispositive issue, demonstrated experience in calculating retirements, was applied fairly to other applicants as it was to Lane.

520.    Indeed, it is known that Mr. Rucker, who was rated qualified for the position under PC3-136, also did not show that he calculated retirements, but was rated qualified anyway.

521.    Thus, it is highly likely that Defendant qualified candidates under PC3-180 who did not show that they calculated retirements, and or who had similar or less experience than Lane in the area of benefits.

Defendant does not contest the **truth** of any of these 12 facts. Defendant's

contention that Plaintiff's entire Statement of Material Facts should be stricken

because of a failure to include record references as to less than 1% of the facts

cited there, all of which are **undisputed** facts, is disingenuous in the extreme.

Most of these statements, on their face, are clearly summary statements, designed

to draw conclusions from other facts set forth in the Statement of Material Facts,

which are typically found in the paragraphs just before the conclusory statement.

The Court should not strike the strike Plaintiff's Statement based on this defense

argument, for which no authority whatsoever was cited.

Defendant (Document 42-1 at 5) alleges that certain references in the record do

not support the statements for which they have been presented.   The references either

did provide the requisite support originally, or do now in light of a minor correction or

the addition of Plaintiff's earlier Errata filing (Document 45-1).  All instances cited by

Defendant are now treated in the following table:

| Paragraph Contested By Defendant | Discussion in Plaintiff's Statement of Material Facts | Plaintiff's Response |
|---|---|---|
| ¶286-88 ("pages cited are not in the exhibit") | "Recently, Pearson was Everest's guest for a few days at Pearson's home in North Carolina. Exhibit 27 at 168-169." | See Errata Attachment A (Document 45-1) at 168-169 |
| ¶287 ("pages cited are not in the exhibit") | "Pearson attempted to cover this fact up during her Deposition. Exh. 27 at 164." | See Errata Attachment A (Document 45-1) at 164 |
| ¶288 ("pages cited are not in the exhibit") | "Incredibly, Everest denies having ever discussed with Ms. Pearson, Mr. Lane's contentions that deserved to be hired by HR. Exhibit 29 at 96-97." | Pl's  Exhibit 29 at 96-97 |
| ¶ 291 (calendar entry for October 22 cited for alleged occurrence on October 3.) | "October 3 was a senior staff meeting. Exhibit 50." | See Pl's Exhibit 50 (The exhibit is a calendar entry for October 2, not October 22 as falsely alleged by Defendant, and the fact that the meeting occurred on October 2 rather than October 3 is immaterial). |
| ¶368 (alleges that "Myers submitted an application without responding to the required [KSAs]." "Plaintiff cited to Exhibit 46 at pages 52-54; that exhibit is a one page document with numbers and a signature. The other citation is to Exhibit 4 ¶43. That paragraph says nothing about what was in the Myers | "Myers submitted an application without responding to the required knowledges, skills and abilities. Exhibit 46 (Jackson) at 52-54; Exhibit 4 ¶ 43." | See Errata Attachment B (Document 45-2) at 52-54. |

| application"). | | |
|---|---|---|
| ¶405 (contention that there is no transcript of testimony submitted); | "Sheran Jackson, who the Defendant appointed a year later to rate Lane's application for the more senior position of Classification and Staffing Director, was asked her Deposition to rate Lane's application for the Myers position against the crediting plan for that position, as Pearson had. Exhibit 46." | See Errata Exhibit B (Document 45-2) at 50-64. |
| ¶ 406 (cites to Jackson Deposition Exhibits 8, 9, but only exhibit 9 included); | See Exhibit 46 (Jackson Deposition Exhibits 8, 9). | See Errata B, Crediting Plan Exhibit (Jackson Dep. Exh. 8) (11th page of Errata B) |
| ¶ 510 (states "The position was not cancelled on account of budgetary reasons. Exhibit 96." Exhibit 96 is simply Lane's application and does not support Plaintiff's statement.") | "The position was not cancelled on account of budgetary reasons. Exhibit 96." | See Document 45-95, which is our Exhibit 96 as re-numbered by the ECF system. Defendant could have easily discovered this by looking at the Table of Exhibits (at p. 3), that Plaintiff supplied to him. |
| ¶ 568 (statement pertains to signing a selection sheet, but cited exhibit 41is a note made by Lane | "On February 22, 2003, Jezek signed on the selection sheet that Defendant decided to cancel the announcement rather than select Lane. Exhibit 41." | See Exhibit 90 at 257. |

As there are no unsupported statements as Defendant has argued, this defense

argument for striking the Statement of Material Facts is entirely unavailing.

### Defendant's Contention That Plaintiff's Statement of Material Facts Should Be Stricken For Failing To Provide Sufficient Pin Cites Is Unavailing

Defendant (Document 42-1 at 5) contends that Plaintiff failed to provide

sufficient pin cites in his Statement of Material Facts.  The following table provides

Defendant's specific contentions and Plaintiff's response.

| Defendant's Contention As To Missing Pin Cites | Plaintiff's Response |
|---|---|
| Plaintiff's citations to Exhibit 125 | Plaintiff's Table of Exhibits shows that 18 references to Exhibit 125 are to the Application and KSAs of Ms. Barnes under announcement PC3-007, which is an exhibit of 11 pages.  When citing to this Exhibit for the absence of any responsive information, Plaintiff cites to the entire document where it would be impossible to provide a more specific pin cite to show such absence. |
| Plaintiff's citation to Exhibit 90 | Pl's Exhibit 90 contains documents produced by Defendant pursuant to a FOIA request.  The relevant fact, SMF ¶ 477 states "However, Defendant has never produced the complete file; rather it produced just two redacted pages. Exhibit 90."  SMF ¶  477 asserts what was *NOT* produced, so again, there is no pin cite that could demonstrate that.  In an abundance of helfpfulness, Plaintiff cited to the Exhibit where the documents would have been responsive, had Defendant produced them. Defendant's request that the pleading be stricken on this account is desperation worthy of ridicule. |
| Plaintiff cites to thirty pages of Pearson's 2004 deposition, pages 134-184, twice without any pin cite. | The following two facts were presented without more narrowed pin cites because the statements were intended to describe testimony occurring over the course of the entire 30 pages:

683. Because Pearson failed to recognize the missing half of her crediting plan, or purposefully obscured it, it is unknown whether Pearson scored Lane and Barnes against the elements she testified that she used, or against the elements she did not testify to. Exhibit 19 at 134-184.

684. It is also unknown how Pearson scored the candidates against the other half of the crediting plan, and she could not be questioned on that. Exhibit 102; Exhibit 19 at 134-184.
Again in this instance, a more specific pin site is simply not available.  The citations Plaintiff provides again show where a specific missing document might have belonged, but without the document there is no such pin cite available. |
| Plaintiff cites to exhibit 64, a 6 page affidavit for the proposition that two individuals were Interviewed on January 25, 2003. Review of the | Plaintiff admits that Exhibit 64 does not identify the date on which the interviews occurred, although it confirms that the interviews occurred.  Attachment 2 hereto is Defendant's interview notes from the Report of Investigation, which Defendant has had since 2003, and which indicate the dates and times of interviews of candidates White and Ross. |

| | |
|---|---|
| entire document reveals no date of interview for the two individuals in the document. See DX 64. | |

Based on the above, clearly, the pin cite issue clearly does not merit striking

Plaintiff's Statement of Material Facts.

**The Murphy Declaration Should Not Be Stricken; Defendant's Declaration of Octavia Richardson Is No More Based on Personal Knowledge Than Is Mr. Murphy's**

Defendant (Document 42-1 at 20) moves to strike the declaration of Mr. Murphy

(Pl's Exh. 4) "to the extent that it does not meet the requirements of F.R. Civ. P. Rule

56(e)(1)," arguing that aspects of the Declaration are not based upon personal

knowledge, and that Murphy has not been qualified as an expert.  The only specific

aspect of the Declaration with which Defendant takes issue, is Murphy's statement that

based on his familiarity with Lane, Lane could not have performed as miserably in

interviews as Defendant attempts to claim.  Murphy never claims to have been present

in the specific interviews in question, and since his testimony is based on his own

perceptions it is relevant and material and should not be stricken.

Although Mr. Murphy's technical knowledge of personnel policies within the

federal government is substantial and sophisticated (see See Exh. 4 ¶¶ 3-8), Plaintiff  is

not seeking to rely on him as an expert under Federal Rule of Evidence 702.  Every

assertion in his Declaration is either an assertion of his own perceptions, or is rationally

based on his perceptions.  Federal Rule 701 specifies that a lay witness is permitted to

offer opinion testimony if the opinion is rationally based on perceptions and not based

on scientific, technical or other specialized knowledge.

Murphy's affidavit makes very clear the basis of all assertions it makes. First, Murphy was Lane's supervisor during Lane's prior tenure at Peace Corps. ¶9. Thus, Murphy is in an excellent position to testify about Lane's experience, based on his personal observations of Lane's performance. These observations may be found in the Declaration between ¶ 9 and ¶ 30. Also, as a prior Director of International Personnel with the United States Peace Corps, he has personal knowledge of the policies and customs of the Peace Corps. Thus, most of the assertions between ¶ 31 and ¶ 91 consist of his asserting his perceptions of the rules applicable to selection of candidates in the Peace Corps. Having been the Director of International Personnel with the United States Peace Corps (see ¶7) for several years, he has intimate personal knowledge and experience with personnel practices within the Peace Corps. Accordingly, consistent with Federal Rule of Evidence 701, most of his affidavit consists of assertions as to his personal knowledge of Peace Corps policies and protocol, and any and all opinions he offers (¶38, 44, 47, 70-73, 75, 76, 85-92) are, consistent with Federal Rule of Evidence 701, rationally based on those perceptions, and not based on scientific, technical or other specialized knowledge.

Defendant's Motion to Strike contradicts Defendant's own efforts to rely on the Declaration of Octavia Richardson. If Murphy's Declaration is expert testimony, Richardson's most certainly is. Richardson, like Murphy, has not been involved in any of the selection processes for which Lane applied. She provides a Declaration in which she examines Lane's applications and opines as to why Lane was not selected. It is not clear from the text how her opinions are rationally based on her own perceptions rather than technical knowledge. Her job at Peace Corps is to be Chief of Labor and Employee Relations and Benefits in the Office of Human Resources, from January 2005 to present.

She adds that throughout her tenure, she has been the sole person responsible for Labor and Employee Relations issues.  However, it is unclear what personal knowledge she draws from to evaluate Lane's application.

For the most part, Richardson's Declaration is an assertion as to why she would not have hired Mr. Lane.  As she never examined his application in the course of her employment, she is not commenting in any way about her own experiences in her position at Peace Corps.  Furthermore, she says nothing whatsoever about how her conclusions about Lane's application come from her own experience with a specific hiring process. By contrast, Murphy's affidavit relates to his personal knowledge, not his personal judgment.  Although Murphy draws conclusions from his experiences, the essence of his affidavit is his  knowledge of the hiring process at Peace Corps, with a focus towards what he understood to be appropriate and inappropriate bases to make employment decisions.  Murphy is careful not to opine without specifying precisely how his personal experience with Peace Corps leads to the conclusions he draws. Therefore, his Declaration is not that of an expert, but that of a lay witness.

### Plaintiff's Contention That He Was Retaliatorily Rejected Repeatedly For Employee Relations Chief In 2004-2005, Is Undisputed

Defendant offers no evidence or argument at all to rebut Lane's argument that, using Vacancy Nos. PC4-115, PC4-149, PC4-201, PC5-047, And PC5-135, Defendant retaliated against Lane by repeatedly canceling the vacancy for Employee Relations Chief and re-announcing it, rejecting Lane despite his outstanding qualifications under repeated announcements.  Defendant offers no explanation whatsoever for canceling the four announcements.  It claims in opposing Lane's Motion for Default Judgment, that Richardson was the selectee under PC5-135. However, Defendant has not produced the

selection  file, thereby highlighting its spoliation and impeding Lane's ability to fairly

compare his qualifications with Richardson's. As Defendant fails to even offer an

argument as to the other four announcements, summary judgment must be denied.

### Defendant Has Failed To Present Sufficiently Persuasive Evidence That Lane Was Not Denied Selection Under PC3-006 As Retaliation For His Protected Activity Or As Sex Discrimination, And Has Failed To Rebut The Evidence That Its Explanations of Its Actions On This Selection Were Pretextual

Defendant (Brf. at 12) asserts that there is no record support for the contention

that Plaintiff was not selected for interview for Classification and Staffing Branch Chief

in 2003 because of its interview and subsequent non-selection of him for processing

Center team leader, but the evidence that Pearson said specifically that such *was* the

reason is right where we already said it was, at Pl's Exh. 27 at 137 ln 8-22, as cited in our

Statement of Material Facts.  See Also Pl's Exhibit 64 (Pearson Affidavit) ¶ 12.

Defendant makes no attempt to rebut the facts and argument marshaled in

support of Lane's contention that White was a beneficiary of favoritism, so that is

undisputed.

Defendant (Brf. at 11) asserts that it wishes to rest on the argument that Pearson

chose not to interview Lane because he lacked sufficiently recent experience.  However,

in his initial brief, Document 36 at 43-44, Lane showed conclusively that the "recency"

argument is contrary to the Peace Corps' past practice, was never mentioned on the

vacancy announcement, crediting plan, or in any other document, and was not

communicated to panelists as a selection criterion. Defendant does not- because it

cannot—even attempt to rebut this determinative argument.  Defendant's contention

(Brf. at 11), that Plaintiff Lane has failed to rebut Defendant's recency argument is

laughably wrong.

Defendant's (Brf. at 12) contention that the crediting plan for this position consisted of only the desired applications, while dubious in fact, only bolster's Lane's claims.  Selectee White's experience in resolving complex problems, writing and speaking, obviously could not hold a candle to Lane's, so the idea that Lane was not even worthy of an interview strains credulity exceptionally.

Defendant (Brf. at 13) claims that there is no evidence that Pearson lied on her memo in stating that all referred applicants were interviewed except for one who declined.  See Pl's Exh. 83.  Pearson's statement there was indeed a lie, because Lane *was* referred to her for possible selection, but was *not* interviewed.  It was Pearson herself who decided not to interview him.  Pl's Exhibit 64 at 1; SMF ¶ 425-426. Defendant finesses this fact by using the passive tense in his Reply, but Pearson admitted in her Affidavit that she – not some anonymous third party-- made the interview decisions. Pl's Exhibit 64 at 1; SMF ¶ 425-426. Lane made the roster, but Pearson decided not to interview him.  The finder of fact should read the memo, Plaintiff's Exhibit 83, and consider whether the memo informs the reader that Lane was referred but not interviewed.  The only possible answer to that question is that it does not. It is a fact, therefore, that Pearson lied.  She fails to offer an alibi as to her motive, which the Court should infer was to cover it up her refusal to interview a candidate who was far better qualified than her eventual selectee, but who was protesting discrimination and retaliation by the Defendant at the time.

Defendant's claim that it is impossible to infer the possibility of preselection and favoritism from selection of White despite a "would not re-hire" reference from White's most recent employer, together with a longstanding relationship between White and Ms. Lavelle, is counter-rational.  Defendant does not even attempt to explain why this

15

warning from White's prior employer was not heeded, so the inference that White was treated far better than Lane was is an easy one for any fact-finder to make.  Considering Pearson's admitted biases against Lane, summary judgment would be inappropriate as to this issue.

### Defendant Has Failed To Present Sufficiently Persuasive Evidence That Lane Was Not Denied Selection Under PC3-020 As Retaliation For His Protected Activity Or As Sex Discrimination, And Has Failed To Rebut The Evidence That Its Explanations of Its Actions On This Selection Were Pretextual

Defendant ignores completely Lane's argument in Document 36 at 48 (initial brief), that selectee Wynelle Myers had no experience with staffing or classification whatsoever and therefore could not possibly satisfy Mandatory KSA No. 1 under this vacancy announcement. Accordingly, *it is undisputed that Myers lacked the necessary qualifications for the number 1 criterion for qualification*.

Defendant, through Jezek, claims that contrary to Lane's argument, Myers actually did address the KSA's such that her candidacy was not dead on arrival for failing to do so. Myers did not really do so, however.  See Pl's Exh. 76; sj def's exhibit PC3-020 at 2-3.  Despite Defendant's lame contention to the contrary (Document 42-1 at 7), Myers' application simply never mentioned any experience in the area of Mandatory KSA No. 1, obviously because she had none.

Defendant completely ignores Lane's argument at 48-49 of the initial brief (Document 36), that Pearson scored Myers against the crediting plan on an Element as deserving of the highest possible point value, in an area that Myers showed no experience in whatsoever.  Accordingly, that it happened is undisputed.

With Myers' application in front of her, Sheran Jackson testified that she could not rate Myers against the crediting plan because Myers had not addressed the KSA's.

Pl's Exhibit 46; Plaintiff's Errata (Docket 45-2) Attachment B at 54.  Defendant now

claims that Myers did address them, but at a minimum, Jackson's testimony that Myers

did not actually do so easily raises a material issue of fact that would preclude summary

judgment.  A candidate may only be rated if she addressed the elements of the crediting

plan. Plaintiff's Errata (Docket 45-2) Attachment B (Jackson testimony) at 50-53.

Defendant does not attempt to justify Pearson's falsification of government

documents in her zeal against Lane in the rating and ranking process.  Instead

Defendant (Brf. at 7) claims that the falsification does not matter-- essentially, no harm,

no foul—because Lane was referred for possible selection under PC3-020 despite

Pearson's completely dishonest actions. Defendant pretends to miss the whole point:

this evidence is important because it further contributes to the fact finder's

understanding that Pearson used falsifications and lies in support of her crusade against

Lane. Nor do Defendant's (Reply at 8) contentions that Pearson truthfully critiqued

other candidates' applications justify Pearson's lies regarding Lane's.  A review of

Defendant's counsel's arguments could be summarized as that Pearson's treatment of

Lane was non-retaliatory because Pearson truthfully criticized other candidates, even

though she untruthfully rated the successful selectee and lied outrageously about Lane

himself.  Obviously, that's not much of an argument for Defendant.

Defendant (Document 42-1 at 6-10) never even attempts to address the fact that

its litigation representations are that it was seeking a candidate for a position that is

completely different from what its vacancy announcement (PC3-020) and crediting plan

reflect.  Instead, Defendant's Reply goes on about the "desired" qualifications for the

position while continuing to pretend that the "*required*" qualifications, which Ms. Myers

could not meet, just do not exist. However, the vacancy announcement speaks for itself,

and Defendant refuses to address it. Defendant cannot wish away this conflict, and its continued insistence on trying to do so without reference to the actual facts further highlights that what is at issue here is Defendant's attempt to cover up its unlawful conduct.  This is no more obvious than in Defendant's failure to respond to the argument at p. 52 of Lane's initial brief (Document 36) citing SMF ¶ 374-377, which points out how in her EEO Affidavit, Pearson pretended to paraphrase from the announcement as to the duties of the position, while completely changing the meaning of duty after duty by adding her own self-serving language to the actual text. On this record, summary judgment for Defendant is impossible.

Defendant (Document 42-1 at 14) claims that Lane "cites to nothing" to support the contention that Pearson knew about Lane's letter of protest to Vasquez.  However, in his initial brief (Document 36 at 25), Lane notes that "Shirley Everest testified that such a letter *would* have been assigned to the appropriate department, which in this case could only be Pearson's HRM.  SMF ¶ 348."  Pearson's department, Human Resources Management, is obviously that department, first, because it is the department accused of the specific misconduct, and second, because it is the Human Resources Department, which is responsible for staffing throughout the Agency.  Asserting that Lane "cites to nothing" does not make it so, and summary judgment must be denied as to PC3-020.

### Defendant Has Failed To Present Sufficiently Persuasive Evidence That Lane Was Not Denied Selection Under PC3-007 As Retaliation For His Protected Activity Or Sex Discrimination, And Has Failed To Rebut The Evidence That Its Explanations of Its Actions On This Selection Were Pretextual

Defendant repeatedly applies the wrong standard to questions of relative qualifications. Where, as here, there is direct evidence of retaliatory motive, Defendant cannot obtain summary judgment because if the jury credits Plaintiff's witnesses,

Defendant cannot prevail. Defendant cannot rebut this as a matter of law, but still nitpicks against Plaintiff's claims as if this were a run of the mill inferential discrimination case.   At p. 16, Defendant does just this as to PC3-007, pretending that Lane must prove he was vastly more qualified than Barnes, implicitly importing a standard from <u>McDonnell-Douglas</u> cases that does not apply here. As a matter of law, if Defendant denied Lane selection because of his sex or protected activity, he is entitled to relief unless Defendant can prove that it still would not have selected him even absent the unlawful motive.

Defendant (Document 42-1 at 16) argues that Plaintiff did not show that Pearson's falsified ratings of Lane were prejudicial. Defendant ignores the fact that the ratings further demonstrate Pearson's manifest animus against Lane.

Defendant (Reply at 16) mischaracterizes Defendant's overly generous crediting of Barnes' application by raising the spectre of the dreaded "speculation".  The true speculation, however, was Defendant's own retaliatory assumption that Barnes was more experienced than her actual accomplishments showed. Thus, Defendant was unable to rebut Lane's showing (Document 36 at 62) that it rated Barnes more highly than Lane on training, even though Barnes had conducted a single four-hour supervisory training course perhaps once per month over less than sixteen months. SMF ¶ 799. By contrast, Lane had not only taught training programs, but also developed and managed them. SMF ¶ 850. Accordingly, Lane's argument is undisputed fact, not unsupported speculation.  As we argued (Document 36 at 64),  Barnes' application evidences absolutely no supervisory experience whatsoever, but she still was scored at the 10 point level, while Lane, who had been a supervisor, was scored only at the three. Defendant did not rebut Lane's contention that this shows overly generous rating of

Barnes and retaliatory unfair underrating of Lane, so it is undisputed.  Similarly, as Lane

shows at p. 65 of his initial brief, Barnes showed no experience speaking on

classification, staffing or pay management policy, whatsoever. SMF ¶ 783.  She was

scored at 10 points, while Lane, who had the experience, was scored at just three.  Again,

this was not mere "speculation" but rather a careful and accurate review of Defendant's

own official documentation, and Defendant, having failed to rebut it, implicitly concedes

its essential truth.

Defendant (Document 42-1 at 17) attempts to misconstrue the fact that Lane

worked in positions that involved both employee relations and other elements, not

solely employee relations, to suggest that he lacked the qualifications to work in ER. But

Defendant's personnel officers (though not Pearson, of course) repeatedly rated Lane

qualified in that area, and Pearson herself claimed that was Lane's strongest area-- when

it suited her retaliatory motives to make that claim. See Document 36 at 23-24.

Defendant points out that Lane had not developed an entire program by himself, while

simply declining to address the fact that Barnes had not done so either.  See Document

36 at 69.

There is a material dispute of fact requiring trial, that the crediting plan for

recruitment PC3-007 is incomplete.  Sheran Jackson was appointed by Defendant to

participate in the selection process on numerous occasions.  Plaintiff's Errata (Docket 45-

2) Attachment B (Jackson testimony) at 36.  Jackson testified that she believed that the

PC3-007 Crediting Plan was incomplete.  Plaintiff's Errata (Docket 45-2) Attachment B

(Jackson testimony) at 59-60.  Jackson testified point blank that her experience is that the

crediting plan elements would match the elements in the vacancy announcement.   This

makes sense since the candidates would then get an opportunity to address each of the

elements, and since the Peace Corps would not be counter-intuitively discounting its "mandatory" elements in favor of its merely "desirable" ones, as Jezek surprisingly now claims.  Plaintiff's Errata (Docket 45-2) Attachment B (Jackson testimony) at 60-62.  The evidence of record is that as to recruitment PC3-020 at exactly the same time, Defendant *did* mirror the crediting plan elements with all the vacancy announcement elements, not just the desirable qualifications.  See Plaintiff's Exhibit 80 and compare with Defendant's Exhibit PC3-020 at 2-3.  Therefore, Defendant's contention that it never does so is false.

As to crediting plan points, the plan is in the record and shows the point levels at which candidates should be scored based on their varying levels of credential. Pl's Exhibit 119.  Def's Reply at 15 takes Lane to task for allegedly not proving that the point levels at which candidates are to be scored based on their qualifications are set out in the crediting plan.  This defense argument underscores the absence of a serious defense case. Every crediting plan in evidence in this case sets forth its scoring levels, including the plan Defendant disputedly claims was used under this announcement. See Pl's Exhibit 119.  Defendant's counsel well knows this, so Defendant never contends that Plaintiff's representation of the facts is incorrect, but instead limits its argument to the contention that Plaintiff has failed to sufficiently back up his statement of the obvious with proof from the record, because there was a typo or other error in the record reference provided.  Since Defendant offers no explanation of why Pearson and Sheed used improper scoring levels in rating and ranking for PC3-007, the jury should infer that there is no justification available, and that their conduct was part and parcel of their pillaging of the merit promotion process. Smmary judgment must be denied.

**Defendant Has Failed To Present Sufficiently Persuasive Evidence
That Lane Was Not Denied Selection Under PC3-077, PC3-136, PC3-180 and PC3-278,
As Retaliation For His Protected Activity Or Sex Discrimination,
And Has Failed To Rebut The Evidence That
Its Explanations of Its Actions On This Selection Were Pretextual**

Defendant has also failed to sufficiently explain its failure to select Lane for the

HR Specialist position in 2003 represented by the announcement numbers: PC3-077,

PC3-136, PC3-180 and PC3-278.  To avoid duplication, Plaintiff respectfully requests that

the Court incorporate by reference for his Sur-Reply, his Motion for Default Judgment

Reply argument on this subject, which sets forth all the necessary points, filed

simultaneously today, at pp. 9-11.

**Defendant Has Failed To Present Sufficiently Persuasive Evidence
That Lane Was Not Denied Selection Under PC4-081
As Retaliation For His Protected Activity Or Sex Discrimination,
And Has Failed To Rebut The Evidence
That Its Explanations of Its Actions On This Selection Were Pretextual**

Unable to rebut Lane's principal initial brief arguments regarding the PC4-081

selection process, Defendant does not even try.  The undisputed facts are that the

selectee was not even recommended for interview by the rating panel, and that

Defendant bases its alleged justification for selecting Clark over Lane on her alleged

interview performance and supposedly outstanding credentials that she forgot to list on

her application.  However, as we showed in our initial brief at 73, it was *Lane's*

application that demonstrated experience in leading HR personnel in recruitment,

training HR personnel in recruitment, delivering presentations, supervising employees,

developing position descriptions, and applying strong research skills. SMF ¶ 59-92, 944-

956.  It is undisputed that Clark's application was *silent on all these supposedly*

*necessary qualifications*.  SMF ¶ 959.

Defendant (Brf. at 19) maintains that its interview panel was "independent" and did not recommend selection of Lane.  However, it was **_Pearson_** who made the selection both of who would be interviewed and who would be selected (See SMF ¶ 960, 970), and Pearson contradicts herself as to whom and how many candidates she interviewed.

Defendant did not even attempt to justify the outrageous "summary of interview" that the supposedly "independent" Lavelle admits as solely positive about Clark and solely negative about Lane.  SMF ¶ 934.  Defendant fails to try to square this unremitting negativity about Lane with his numerical superiority on the Merit Promotion Rating Sheets.  See ¶ 937-940.  Interviewer Sheed laughably testified that his preference for Clark was formed in large part because of Clark's "extensive supervisory experience."  Exhibit 68 (Sheed) at 97-98. SMF ¶ 952.

Defendant contends that it was not irregular for its panelists to go outside the numerical benchmarks prescribed on the crediting plan.  However, each benchmark is to have an assigned point value under Peace Corps policy.  Pl's Exh. 33 (Peace Corps Manual).  Exhibit 119, the crediting plan, shows that.  Defendant has failed to explain its irregularities, and does not even come close to providing the requisite clear and convincing evidence, failing even to disprove the existence of pretext evidence as to this recruitment process.

### Defendant Has Completely Failed To Credibly Critique The Evidence That Defendant Retaliated Against Lane By Canceling Announcement No. PC5-147

Defendant fails to rebut the evidence of record (argued at Document 36 at 90-91) that Pearson participated in this selection process for Classification and Staffing Branch Chief. Defendant set forth its usual pretexts that Lane lacked "recency" of experience, without substantiating just what it was that he lacked knowledge of.  It is undisputed at

this point that neither Mr. Smith nor Mr. Kreamer individually accepts responsibility for the decision.  Neither Kramer nor Smith explains why Lane's experience was sufficiently recent to be ranked equally with Harris by Jackson, and to be offered a Classification & Staffing position at the FP-4 level on December 20, 2004, but was insufficiently recent for the FP-3 level Classification & Staffing job a few months later. The combination of this evidence, Plaintiff's extensive evidence of retaliatory animus directed against Lane, and the direct evidence of Pearson's illicit motive, precludes summary judgment for Defendant on this issue.

### Defendant Has Completely Failed To Credibly Critique The Evidence That Defendant Retaliated Against Lane By Canceling Announcement DPC7-A0051

In Document 36 at 92-97, Lane laid out a careful, completely substantiated case as to how Defendant continued its policy of retaliation against him in the instance of Announcement DPC7-A0051, again for Employee Relations Chief.  He showed there that Pearson purposefully declined to select him for that position, and that when the new HR Director took over, she too declined to select him while knowing about his ongoing case against Defendant, then re-posted the position and selected someone else. All the while, Defendant falsely attempts to obfuscate its knowledge of Lane's case against it and of his pending application.   Defendant offers no rebuttal to the argument, instead simply re-hashing its recitation of irrelevant facts as to why it did not wish to select another candidate for the position, and how the eventual selectee (after the unlawful cancelation and re-announcement) was well-qualified (which Lane has never disputed).  For the reasons set forth in Lane's initial brief and discussed as well in his Default Judgment Reply, filed simultaneously, summary judgment must be denied as to this defense contention.

**CONCLUSION**

As we showed previously, and in view of the facts and argument set forth both in Opposition to Defendant's Motion for Summary Judgment and in this Sur-Reply, and Plaintiff's Motion for Default Judgment and his Reply thereon, Defendant has no case for summary judgment.  The instant Motion should be denied.

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC

/s/

_____
Leizer Z. Goldsmith
Counsel for Plaintiff Herman Eugene Lane
5335 Wisconsin Ave. NW Ste 440
Washington, D.C. 20036
202-895-1506 (phone)
202-318-0798 (fax)