UNITED STATES DISTRICT COURT
DISTRICT OF THE DISTRICT OF COLUMBIA

-------------------------------------------------------

|                                                       |   |                              |
| :---------------------------------------------------- | - | :--------------------------- |
|                                                       | : |                              |
| HERMAN  E. LANE,                                      | : | Case No. 1:05-cv-01414       |
|                                                       | : |                              |
|                 Plaintiff                             | : |                              |
|                                                       | : |                              |
| vs.                                                   | : | Opinion and Order            |
|                                                       | : | [Resolving Docs. 31, 37]     |
| GADDI VASQUEZ, DIRECTOR OF THE                        | : |                              |
| UNITED STATES PEACE CORPS,                            | : |                              |
|                                                       | : |                              |
|                 Defendant.                            | : |                              |
|                                                       | : |                              |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE[1/]:

     In this  sex discrimination case, Plaintiff Herman Lane says that he was denied employment with the Peace Corps on the basis of his sex, and, that when he complained, the Peace Corps retaliated against him.  He sues the Director of the Peace Corps in the Director's official capacity. He does not sue the Director in his individual capacity.

     The Director now moves for summary judgment.  He says that Lane fails to show that he was substantially more qualified for the positions that he was denied or that the Corps sufficiently deviated from its hiring processes to raise an inference of discrimination.  He also says that there is insufficient evidence of retaliation.  In response, Lane says that women fill a very large number of the positions for which he applied.  He argues this raises an implication of discrimination.  He also says that Peace Corps officials said that he would never be hired because of his EEO activity.

     While Vasquez's summary judgment motion was pending, Lane filed a motion for default judgment.  Alternatively, Lane asks for an adverse inference and attorneys' fees.  In support of his

---

[1/]The Honorable James S. Gwin of the United States District Judge for the Northern District of Ohio, sitting by designation.

Case No. 1:05-CV-1414
Gwin, J.

request for an adverse inference, Lane says that the Peace Corps destroyed documents related to the hiring process for positions he was denied.  The Peace Corps says that some of these documents did not exist, and that, even if they did exist, they could not save Lane's claims.

Because Lane has failed to show that he was either substantially more qualified for the positions that he was denied or that the Peace Corps sufficiently deviated from its hiring process, the Court **GRANTS** Defendant's motion for summary judgment on Count Two, Lane's sex discrimination claim.  But, because Lane puts forward sufficient evidence of retaliation in the form of comments by Peace Corps officials, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment on Count I, Lane's retaliation claim.  Further, the Court **DENIES** Lane's motion for default judgment, adverse inference, and monetary sanctions against Defendant for spoliation of evidence.

## I. Factual Background

In 2005, Lane and co-plaintiff Rachel Perry filed this action.  Lane claimed nineteen separate violations of Title VII of the Civil Rights Act of 1964.  Co-plaintiff Perry said that she was fired for complaining of Lane's mistreatment.[2]  In 2007, the Court dismissed claims based on thirteen of the nineteen incidents because Lane failed to exhaust administrative remedies.[3]  In 2008, Perry and the Corps settled their dispute.[4]  Lane then filed an amended complaint setting out his remaining

---

[2]Doc. 1.

[3]Doc. 15.

[4]Docs. 23, 24.

Case No. 1:05-CV-1414
Gwin, J.

claims.[5/]

With his remaining claims, Lane says in Count One that Defendant retaliated against him for complaining to the Equal Employment Opportunity Commission (EEOC) by not selecting him for eight positions.[6/]  In Count Two, Lane says that he was not selected for the eight positions because he is a man.[7/]  The Court summarizes the facts relevant to Lane's remaining claims.

In government agencies like the Peace Corps, employees are hired through a standardized process.[8/]  When a position opens up, the Peace Corps announces the vacancy through the Peace Corps' website.  The vacancy announcement gives an identification number, and includes a job description, as well as mandatory and desired qualifications that applicants should possess, generally referred to as Knowledge, Skills, and Abilities (KSAs).[9/]  Based on an applicant's responses to the mandatory KSAs, the applicant may be rated minimally qualified for the position.[10/]  Once the minimally qualified candidates are determined, a crediting plan is created.[11/]  The crediting plan rates the minimally qualified candidates' responses and is used to determine who are the most qualified

---

[5/]Doc. 27.

[6/]*Id.* at 22:¶202.

[7/]*Id.* at 22:¶205.

[8/]Doc. 40-1.

[9/]*Id.* at ¶4.

[10/]*Id.* at ¶5; Doc. 40-3.

[11/]*Id.*

Case No. 1:05-CV-1414
Gwin, J.

applicants that will be interviewed.[12/]  The most qualified applicants are then interviewed and one

is hired.

      Lane volunteered for the Peace Corps.  From 1986-1989, Lane worked for the  agency as a

Human Resources Specialist.[13/]  Following his time with the Peace Corps, Lane went on to work at

the Department of Commerce, National Oceanographic and Atmospheric Administration, and

Federal Aviation Administration.[14/]  Overall, he has over twenty years of experience as a personnel

specialist or "personnelist."[15/]  Lane cited these qualifications in numerous applications to the Peace

Corps.

      On November 5, 2002 Lane applied for "Lead Human Resources Specialist" under posting

PC3-020.[16/]  The Peace Corps ultimately selected Wynelle Myers.[17/]  The Defendant says that Myers

was more qualified than Lane.[18/]  Lane disputes this and says that he was more qualified than Myers,

and that the Peace Corps' Office of Human Resources Managment ("HRM") violated its hiring

policy by not automatically disqualifying Myers from consideration because she did not respond to

---

[12/]*Id.*

[13/]Doc. 36-1; Doc. 36-3 at 2.

[14/]Doc. 36-3 at 2-3.

[15/]Doc. 36-1 at 2:¶8.

[16/]Doc. 36 at 142; Doc. 36-74.

[17/]*Id.*; Doc. 36-75.

[18/]Doc. 31 at 9-10.

Case No. 1:05-CV-1414
Gwin, J.

the KSAs in her application.[19]

On November 7, 2002, Lane applied for "Supervisory Human Resource Specialist" under posting PC3-006.[20]  The Peace Corps selected Odessa White.  The Defendant says that Ms. White had more recent and relevant experience than Lane.[21]  Responding to the Defendant's argument, Lane says that the Defendant wrongfully relied on recency of experience in making the selection, and that the Peace Corps impermissibly eliminated Lane from PC3-006 based on his interview performance in PC3-020.[22]

On November 7, 2002, Lane applied for the Supervisory Human Resource Specialist position in Labor and Employee relations under posting PC3-007.[23]  The Peace Corps selected Phnesha Barnes.[24]  The Defendant says that Ms. Barnes had greater experience in managing a labor and employee relations office.[25]  In response, Lane says that the Defendant never produced the real crediting plan for this position.  He also says Defendant improperly rated him in regards to that crediting plan.[26]

---

[19] Doc. 36 at 48.

[20] Doc. 36 at 142; Doc. 36-72.

[21] Doc. 31 at 20.

[22] Doc. 36 at 41.

[23] *Id*. at 142; Doc. 36-73.

[24] Doc. 31 at 39.

[25] *Id.*

[26] Doc. 36 at 55.

Case No. 1:05-CV-1414
Gwin, J.

On February 12, 2003,  Lane applied for "Employee and Labor Relations Specialist" under posting PC3-077.[27/]  The position was cancelled on March 24, 2003.[28/]  The Defendant says that the position was cancelled before any candidates were interviewed to afford the newly appointed supervisor the opportunity to select the individual who would be on her staff.[29/]  Lane says he was never provided with requested information to verify that no other candidates were interviewed.[30/]

Lane protested his continuing non-hires.  In 2002, Plaintiff Lane wrote to Defendant Vasquez saying that he had not been hired because he is "a Republican, white, male, of Southern Anglo-Saxon ancestry, and older than the typical Peace Corps employee."[31/]  In July, 2003, Lane filed a formal complaint with the EEOC.[32/]  He listed forty-six positions for which he had applied and not been hired.[33/]  Lane says that, far from rectifying the situation, the Peace Corps retaliated against him for his EEOC activity.  Specifically, he says that Deputy Director of Human Resources Cathy Pearson actively engaged in concocting non-discriminatory reasons for not hiring him in an effort to make his non-selections "not look like reprisal."[34/]  As part of the discriminatory cover-up, Lane

---

[27/] Doc. 36 at 155; Doc. 36-22 at 8

[28/] *Id.*

[29/] Doc. 31 at 40.

[30/] Doc. 36 at 81.

[31/] Doc. 36-16.

[32/] Doc. 36 at 138; Doc. 36-62.

[33/] Doc. 36 at 138; Doc. 36-62.

[34/] Doc. 36 at 2.

Case No. 1:05-CV-1414
Gwin, J.

says that the Peace Corps changed hiring processes to make Lane appear unqualified.

Nonetheless, undeterred, on February 23, 2004, Lane applied for "Chief of Classification and Staffing" under posting PC4-081.[35/] The Peace Corps ultimately selected Sheila Clark.[36/] The Defendant says that Clark was the best qualified applicant for the position.[37/] In response to this argument, Lane says that Clark received lower ratings on the paper applications, and should not have even been selected for an interview.[38/] He says that the Peace Corps denied his application in retaliation for his EEOC activity.[39/]

In March, 2005, Lane again applied for "Chief of Classification and Staffing" under posting PC5-147.[40/] The Peace Corps selected Kathleen Harris.[41/] The Defendant says that Ms. Harris was more qualified and had more recent experience in classification and staffing.[42/] In response to this defense, Lane says that he was more qualified than Clark. He says that at the conclusion of the interview, one of the panelists said "go get [Deputy Human Resources Director] Catherine [Pearson]

---

[35/]Doc. 31 at 23.

[36/]*Id.*

[37/]*Id.*

[38/]Doc. 36 at 72.

[39/]Doc. 36 at 75.

[40/]Doc. 36 at 91, 233; Doc. 31 at 28-29.  Lane offers a web of barely intelligible citations in support of this claim, however as the material fact is not disputed, the Court does not inquire further.

[41/]*Id.*

[42/]Doc. 31 at 29.

Case No. 1:05-CV-1414
Gwin, J.

so we can talk." [43]   Lane says that a jury could infer discrimination and retaliation from this comment.[44]

In March, 2007, Lane  applied once again for "Chief of Classification and Staffing" under posting DPC7-A0051.[45]  On February 8, 2008 the position was cancelled, and was later re-advertised under posting DPC8-A0051.[46]   The Defendant says that it cancelled DPC7-A0051 because the candidate roster contained a military veteran who was entitled to be hired unless he was unqualified.[47]   The position was then cancelled when the Defendant determined that while regulations entitled the veteran to the position, his job performance indicated that he could not perform the work required.[48]  Lane says that a new roster of candidates should have been generated, and the Peace Corps declined to do so because it knew Lane would be rated qualified.[49]  Lane says that these actions show discriminatory and retaliatory animus.[50]

Finally, on September 10, 2007, Lane applied for "Deputy Director of Human Resource Management" under posting DPC7-A0187.[51]   The Peace Corps selected Nancy Barnett for the

---

[43]/Doc. 36 at 92.

[44]/*Id.*

[45]/*Id.* at 234.

[46]/*Id.*; Doc. 31 at 31.

[47]/Doc. 31 at 30.

[48]/*Id.*

[49]/Doc. 36 at 92-93.

[50]/Doc. 36 at 97.

[51]/*Id.* at 291; Doc. 31-1 at 32-33.

-8-

Case No. 1:05-CV-1414
Gwin, J.

position.[52/]   The Defendant says that Lane's application was unimpressive and the application did

not directly answer the questions asked.[53/]   In response, Lane says that during the selection process,

the Defendant asked the Peace Corps General Counsel if Lane should be interviewed, given his past

EEOC complaints.[54/]   He says that a jury could infer retaliatory intent from this conversation.

Lane also argues that HRM is statistically disproportionate in the amount of women hired

compared to men.  He provides evidence that in 2002, 81.5% of the work force was female, and in

2003, that number increased to 87.5%.[55/]   The Court considers Lane's claims.

## II. Legal Standards

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."[56/]   The moving

party bears the "initial responsibility of informing the district court of the basis for [its] motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue

---

[52/]Doc. 31-1 at 32-33.

[53/]Doc. 31 at 35.

[54/]Doc. 36 at 94.

[55/]Doc. 36 at 20.

[56/]Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

-9-

Case No. 1:05-CV-1414
Gwin, J.

of material fact."[57]   In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." [58]

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.[59]   To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.[60]   "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."[61]   Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*' "[62]

**B. Sex Discrimination**

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be unlawful for an employer

---

[57] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[58] *Id.* at 324 (internal citations omitted).

[59] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[60] *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

[61] *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).

[62] *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

Case No. 1:05-CV-1414
Gwin, J.

to hire or discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."[63]   The *McDonnell Douglass* burden-shifting framework applies when a plaintiff relies upon indirect or circumstantial evidence of employment discrimination.[64] Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.[65]   After a plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision at issue.[66]

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the Plaintiff's prima facie case becomes irrelevant.[67]   The inquiry becomes: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex or national origin?"[68]

A plaintiff may show that a defendant's legitimate, non-discriminatory reason is pretextual in many ways.  Relevant to this case, the plaintiff may show that he is substantially more qualified than the candidate ultimately hired or that the defendant modified the hiring process to avoid selecting the plaintiff.

---

[63]42 U.S.C. § 2000e-2(a)(1).

[64]*See Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

[65]*Id.*

[66]*Id.*

[67]*Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

[68]*Id.*

Case No. 1:05-CV-1414
Gwin, J.

### 1. Substantially Greater Qualification

When a defendant's explanation for not hiring the plaintiff is that another person was more qualified, the plaintiff must show that the qualification gap between the plaintiff and selectee is "inherently indicative of discrimination."[69]  This disparity of qualification is evidence when the plaintiff is "markedly more qualified," "substantially more qualified," or "significantly better qualified" than the successful candidate.[70]  When the qualifications between plaintiff and selectee are close, the Court "must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of comparison of the qualifications alone."[71]  The plaintiff must offer more than "speculations and allegation to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment."[72]

### 2. Flawed Hiring Process

Inconsistencies or irregularities in an employer's established hiring policies may also support a finding of discrimination.[73]  "[T]he adherence to or departure from internal hiring procedures is a factor that the trier of fact may deem probative and choose to consider in determining the true

---

[69]/*See Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007).

[70]/*Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012).

[71]/*Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc).

[72]/*Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999).

[73]/*See Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010).

Case No. 1:05-CV-1414
Gwin, J.

motivation behind the hiring decision of the prospective employer."[74]  When the alleged deviation

involves modifying job criteria, the change must be "so irregular or inconsistent with [the

employer's] established policies as to make its hiring decision unworthy of belief."[75]

**C. Retaliation**

United States Code, title 42, section 2000e-3(a) states that "[i]t shall be an unlawful

employment practice for an employer to discriminate against any of his employees or applicants for

employment . . . because he has opposed any practice made an unlawful employment practice by this

[Act], or because he has made a charge."  To succeed with a retaliation claim, plaintiffs must prove

that retaliation was the "but-for" cause of the adverse employment action.[76]  The *McDonnell*

*Douglas* framework applies to retaliation claims as well. To make out a prima facie case, a plaintiff

must show that (1) he engaged in activity protected by Title VII; (2) the employer took an adverse

employment action against the plaintiff; and (3) the adverse action was causally related to the

exercise of the plaintiff's rights.[77]

A plaintiff may prove causal relation either through direct evidence or by circumstantial

evidence, such as temporal proximity between the protected activity and the adverse employment

action.  Direct evidence is "expressions by the decision maker that are evidence of discriminatory

---

[74]/*Johnson v. Lehman*, 679 F.2d 918 (D.C. Cir. 1982).

[75]/*Porter*, 606 F.3d at 816.

[76]/*Univ. of Tex. Sw. Med. Cent. v. Nassar*, No. 12-484, 2013 WL 3155234 at *14 (U.S. June 24, 2013). Lane's
briefs heavily rely on the presumption that plaintiffs can prove retaliation claims through a mixed-motive analysis. While
the circuit courts were split on this issue, the Supreme Court recently resolved the dispute and adopted the "but-for" test.

[77]/*Holcomb*, 433 F.3d at 903.

Case No. 1:05-CV-1414
Gwin, J.

or retaliatory intent."[78]  Such evidence must establish a connection between the decision maker's statements and the adverse employment decision.[79]  On the other hand, to rely on temporal proximity to prove causal relation, the temporal proximity must be "very close"—generally less than three months.[80]  And when the defendant gives a non-discriminatory reason for his actions, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine."[81]

Ultimately, "whether a plaintiff attempts to prove a case of retaliation through direct evidence or circumstantial evidence under the *McDonnell Douglas* framework, the . . . question remains whether it was more likely than not that retaliation was the actual motive for the employer's actions."[82]

### III. Analysis

**A. Sex Discrimination**

In Count Two, Lane says that Defendant discriminated against him on account of his sex when he was not hired on eight separate occasions.  In each case, the Defendant claims a legitimate, non-discriminatory reason.  In support of his claims, Lane says that the statistical makeup of HRM is evidence of sex discrimination against men.  Lane says that in 2002, 81.25 % of HRM employees

---

[78] *Hampton v. Vilsack*, 760 F. Supp. 2d 38, 49 (D.D.C. 2011).

[79] *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 655 (D.D.C. 1997).

[80] *See Clark Cnty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

[81] *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir.2007).

[82] *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).

Case No. 1:05-CV-1414
Gwin, J.

were female[83/] and in 2003, that number grew to 87.5%.[84/]  Statistical evidence is relevant to the discrimination question when the evidence demonstrates a disparity in gender composition between the pool of qualified applicants and those being selected for positions.[85/]  But, here, Lane presents no evidence showing that the pool of qualified applicants had a statistically higher rate of male applicants than the rate of males holding the HRM positions.  Accordingly, evidence is insufficient to show that the employer's non-discriminatory explanation is a pretext.

*1.  PC3-020*

In 2003, Lane applied to be Lead Human Resources Specialist under posting PC3-020.  The Peace Corps selected Wynelle Myers.  Plaintiff Lane says that this choice discriminated against him because he was a male. Defendant says that Myers was more qualified because she had more recent experience in personnel management and had greater knowledge of payroll and personnel automated systems.[86/]  Lane offers two arguments to show this non-discriminatory reason is pretextual.  First, he says that he was substantially more qualified because he had greater experience in personnel management.[87/]  Second, Lane says that HRM violated its policy by not automatically disqualifying Myers from consideration because she did not respond to the KSAs in her application.[88/]

---

[83/]Doc. 36 at 20.

[84/]*Id.*

[85/]*See Horvath v. Thompson*, 329 F. Supp. 2d 1, 11 (D.D.C. 2004).

[86/] Doc. 31 at 6.

[87/]Doc. 36 at 48.

[88/]*Id.*

-15-

Case No. 1:05-CV-1414
Gwin, J.

First, Lane does not present sufficient evidence to prove he was substantially more qualified

then Myers.  The decision between Myers and Lane is a close one.  While Lane had a greater length

of experience, Myers had more recent and relevant experience, particularly with automated

systems.[89]  Plaintiff Lane had no corresponding expertise.  Where the decision is close, the Court

"must assume that a reasonable juror . . . would not usually infer discrimination on the basis of a

comparison of qualifications alone."[90]  That the KSAs did not list experience with automated

systems as a qualification does not alter this analysis.  Employers are not bound to follow a

mechanistic check-list of requirements when making hiring decisions.[91]  The Peace Corps could

value knowledge of automated programs over other qualifications.

Second, Lane also fails to show sufficient deviation from the typical hiring process to raise

an inference of discrimination.  While Myers did not respond to the KSAs, she did submit

"supplemental information."[92]  Monica Jezek, the hiring specialist who considered Myers's

application, stated that this "supplemental information" responded to the KSAs.[93]  Lane offers no

evidence to contradict this testimony and raise a triable issue.  Accordingly, the Peace Corps did not

deviate so greatly from its established hiring policy as to make its explanation for hiring Myers

---

[89] Doc. 31 at 11.

[90] *Aka*, 156 F.3d at 1296.

[91] *See Jackson*, 496 F.3d at 709; *see also Aka*, 156 F.3d at 1297 n. 15 (holding that "[r]easonable employers do not limit their evaluations of applicants to a mechanistic checkoff of qualifications required by the written job descriptions.  Obviously, they will take additional credentials into account, if those credentials would prove useful in performing the job.").

[92] Doc. 40 at 7.

[93] *Id.*

Case No. 1:05-CV-1414
Gwin, J.

"unworthy of belief."[94/]

### 2. PC3-006

Lane next says that the Peace Corps discriminated against him in 2003 when it did not interview him for Supervisory Human Resource Specialist under posting PC3-006. Deputy Director of Human Resources Cathy Pearson selected the qualified candidates for interview, and eventually, the Peace Corps hired Odessa White.[95/]  The Defendant Peace Corps says that White had more recent, relevant experience.[96/]  Responding, Lane says that a jury could nonetheless find discriminatory intent for three reasons.  First, he says that Pearson impermissibly denied him an interview.  He says Pearson had just interviewed him for PC3-020 and concluded he didn't have relevant experience.  He argues that reliance upon information and impressions obtained in earlier interviews is a substantial deviation from the hiring procedure.[97/]  Second, he says that White received a poor employer reference making her substantially less qualified than him.[98/]  Finally, he says that the Peace Corps unjustly relied on recency of experience to screen out Lane—again an arguable deviation from the typical hiring practice.[99/]

Again, Lane fails to overcome the defendant's legitimate, non-discriminatory reasons.  First,

---

[94/]*See Porter, 606 F.3d at 819.*

[95/]Doc. 31 at 15.

[96/]Doc. 31 at 20.

[97/]Doc. 36 at 41.

[98/]*Id.* at 42.

[99/]*Id.* at 43.

Case No. 1:05-CV-1414
Gwin, J.

as with PC3-020, the Defendant could credit recent experience over other factors.[100]  And, contrary to Lane's assertion, he presents no evidence that Pearson decided not to interview him for PC3-006 because she had just interviewed him for PC3-020.  To the contrary, the record shows that Lane had already been screened out of interview consideration for PC3-006 by the time he was interviewed for PC3-020.[101]  Second, White's poor employer reference does not sufficiently create the kind of disparity that shows inherent discrimination.[102]  And, more importantly, Lane never offers evidence that he was clearly more qualified than White.[103]  Where a party fails to make responsive arguments in its briefs, the court need not make the argument for the party.[104]

   *3.  PC3-007*

   Next, Lane says that the Peace Corps discriminated against him when it did not hire him as Supervisory Human Resource Specialist in Labor and Employee Relations.  On November 7, 2003, Lane applied for the position.[105]  Lane's application was rated against a crediting plan by Ms. Pearson.[106]  After considering Lane's application, Deputy Director Pearson concluded that Lane was

---

[100]*See Jackson*, 496 F.3d at 709.

[101]Doc. 36-64 at 3 ¶12; Doc. 36-65.

[102]See *Aka*, 156 F.3d at 1296

[103]*See* Doc. 36 at 41-46.

[104]*See Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997).

[105]Doc. 36 at 142; Doc. 36-72.

[106]Doc. 31 at 37.

Case No. 1:05-CV-1414
Gwin, J.

qualified to be interviewed, but ultimately selected Phnesha Barnes.[107/]

The Defendant offers two non-discriminatory reasons for the selection.  First, the Defendant says that Barnes "was currently managing a labor and employee relations office and . . . had developed an overall employee and labor relations program."  Second, the Peace Corps says that based on what it knew of Lane's current position, he would have "had to study to even find out what the employee relations people did."[108/]

Lane offers no evidence to rebut Defendant's nondiscriminatory reason.[109/]  While Lane does contest the crediting plan used to select interviewees,[110/] testimony indicates that the crediting plan is only used to screen out the most qualified candidates for interview.[111/]  And Lane was in fact interviewed.[112/]  Thus any defects in the crediting plan had no bearing on his non-selection.

### 4. PC3-077

Lane next says that the Peace Corps discriminated against him when the Peace Corps neither interviewed nor hired Lane for the position of Employee and Labor Relations Specialist.  The

---

[107/] *Id.*

[108/] Doc. 31 at 39.

[109/] Doc. 40 at 15.  Instead, Lane attacks the crediting plan as fake.  He says that the crediting plan produced during discovery could not be the real crediting plan for this position because it only contains three of the eight KSAs listed in the vacancy announcement.  But testimony by the Personnel Specialist that created this crediting plan indicates that it is not necessary to include all of the KSAs from the vacancy announcement in the crediting plan; only the desired KSAs are used to screen out the most qualified applicants for interview.  Lane does not contest this testimony so as to raise a triable issue.  Accordingly, a jury could not conclude that the proffered plan was fake, much less that it was concocted to justify his non-hire.

[110/] Doc. 36 at 58.

[111/] Doc. 40-1 at 4.

[112/] Doc. 36 at 54.

-19-

Case No. 1:05-CV-1414
Gwin, J.

position was initially posted as PC3-077, but later cancelled and re-advertised as PC3-136, PC3-180,

and PC3-278.  Lane applied, but was not selected, for each of the re-advertised positions.[113]  He says

the Defendant's conduct in repeatedly cancelling the re-advertised positions is evidence of

discrimination as to PC3-077.[114]  Lane notes that he was rated qualified for the PC3-077, but says

he was never interviewed because he was a man.  The Defendant says that the position was cancelled

to afford the position's newly appointed supervisor an opportunity to participate in selecting the

individual who would be on her staff.[115]

Lane again presents nothing more than speculation that the position was cancelled to

discriminate against him because he is a man.  Lane says that he was never given verification that

no other candidates were interviewed.[116]  Therefore, he cannot know whether the position was

cancelled in an effort to avoid hiring him if he were found to be the most qualified candidate.[117]

Assuming *arguendo* that some documents were destroyed, their destruction would not infer

that the positions were cancelled to avoid hiring a man.  Defendant's proffered reason for cancelling

the position was to give time to the newly-appointed supervisor in selecting who would be working

beneath her.  Lane presents no evidence rebutting this explanation.  The application of an adverse

inference would not alter this determination because Lane fails to present evidence of discriminatory

---

[113]Doc. 36 at 81-85.

[114]Doc. 36 at 81.

[115]Doc. 31 at 40

[116]Doc. 36 at 81.

[117]Doc. 36 at 86

Case No. 1:05-CV-1414
Gwin, J.

intent.[118]

### 5. PC4-081

Lane next says that in 2004 he was unlawfully denied the position of Chief of Classification and Staffing listed under posting PC4-081.  Lane and six other applicants were interviewed by a panel.  Pearson, the selecting official, eventually hired Sheila Clark.[119]  Defendant Peace Corps says that Clark was the most qualified candidate.[120]  To rebut this, Lane says that Clark received lower ratings on the paper applications, and should not have even been selected for an interview.

Again, Lane does not cite sufficient evidence to permit a jury to infer discrimination.  Lane offers only one conclusory sentence regarding his qualifications: "Lane was well qualified for the Classification & Staffing Chief position."[121]  Again, Lane "must support his allegations of superior qualifications with facts in the record; a mere unsubstantiated allegation of superior qualifications creates no genuine issue of fact."[122]  And Lane's argument that Defendant gave too much weight to Clark's good interview performance is equally unavailing.[123]  An employer may select "a candidate

---

[118]/*See Smith v. Napolitano*, 626 F. Supp. 2d 81, 102 (D.D.C. 2009) (holding that "even if the court were to draw the adverse inference suggested by the plaintiff, it would not alter the court's determination absent some evidence of discriminatory intent); *see also von Muhlenbrock v. Billington*, 579 F. Supp. 2d 39, 45 (D.D.C. 2008) (observing that "destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence-or utterly inadequate evidence-in support of a given claim to survive summary judgment on that claim").

[119]/Doc. 31 at 20.

[120]/*Id.* at 26; Doc. 40 at 20.

[121]/Doc. 36 at 76

[122]/*Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).

[123]/Doc. 36 at 74.

Case No. 1:05-CV-1414
Gwin, J.

who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview."[124] Purely subjective explanations should be scrutinized only when the plaintiff otherwise is "significantly better qualified."[125] Since, here, Lane offers no such evidence, a jury could not find discriminatory intent against Lane.

Lane also says that the hiring process was deeply flawed because, initially, the Defendant declined to interview Clark, but then added her to the slate of interviews later in the selection process—after Lane and another woman were recommended for interview.[126] The Defendant says that HRM policies/regulations/statute permit adding a third interviewee when only two candidates initially qualified.[127] Lane does not rebut this testimony. And, more importantly, Lane fails to show how the addition of Clark to the interview roster evinces discriminatory intent against men. Indeed the other woman initially selected for an interview was also adversely affected by Clark's addition. Accordingly, any deviation was not so grave as to raise an inference of sex discrimination.

*6. PC5-147*

Lane next says that the Peace Corps discriminated against him in 2005, when he was not chosen to be the Chief of Classification and Staffing. Lane was again recommended for interview, but the Peace Corps eventually hired Kathleen Harris.[128] The Defendant again says that Ms. Harris

---

[124]*Aka*, 156 F.3d at 1294.

[125]*Id.*

[126]Doc. 36 at 72.

[127]Doc. 40 at 19. The Office of Personnel Management Handbook indicates that three eligible candidates should always be forwarded to the selecting official for interview. Doc. 42-3.

[128]Doc. 31 at 29.

Case No. 1:05-CV-1414
Gwin, J.

was more qualified and had more recent experience in classification and staffing.

Lane again responds with a single conclusory sentence: "Harris, a female candidate . . . was selected for the position, even though Lane's credentials in Classification & Staffing were stronger than Harris', considering his varied experiences that she lacked."[129/]  And, again, such "speculations and allegations" are insufficient to raise a genuine dispute of material fact.[130/]

Lane also says that at the conclusion of the interview, one of the interview panelists said that it was time to go get Pearson to talk about the selection.[131/]  He says that a jury could imply discrimination from this statement.  But this statement is hardly discriminatory.

### 7. DPC7-A0051/DPC8-A0051

Lane next alleges that the Peace Corps discriminated against him when it did not hire him as Chief of Classification and Staffing.  In 2007, Lane applied for the position under posting DPC7-A0051.  In July, 2007 and before the Peace Corps made a selection, Pearson left HRM and Patricia Connelly took over as the Agency's Director of HRM—the hiring decision-maker.[132/]  When Connelly took over, the roster for DPC7-A0051 contained only one name, Ramberto Torruella.  Torruella, who was already employed at HRM, received a substantial preference because he was a military veteran.[133/]  Under applicable regulations, unless Tourella was unqualified, he was entitled

---

[129/] *Id.*

[130/] *Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999).

[131/] Doc. 36 at 92.

[132/] Doc. 31 at 30.

[133/] *Id.*

Case No. 1:05-CV-1414
Gwin, J.

to be first considered and first hired.[134]   Connelly observed Torruella's performance for a few

months and determined that he would not be qualified for the position.[135]   Connelly eventually

cancelled the position, and re-advertised it under posting DPC8-A0051.  She then hired Estrella

Alam.

Lane says that Pearson, who was still in charge when the position was announced, knew that

if she did not select the veteran and instead generated a new roster of candidates, Lane's name would

surely be on it and he would have been rated qualified.[136]   But Lane lacks the personal knowledge

necessary to make this assertion.  And Connelly's decision to cancel and re-list the position in itself

does not imply discrimination.  She had no duty to generate a new roster of candidates when she

decided to cancel the position.  Finally, Lane does not even attempt to rebut the Peace Corps's

proffered reason for hiring Alam–that Alam was more qualified.[137]   In sum, no sufficient evidence

suggests that the decision to cancel the position was carried out with an intent to discriminate against

Lane, or that the decision to hire Alam was motivated by discriminatory intent.

*8.  DPC7-A0187*

Finally, Lane says that he was also the victim of discrimination in 2007 when he applied to

be Deputy Director of HRM, the position that Pearson was vacating.  Lane was among the top six

candidates recommended for interview.  But after the interviews, the Peace Corps selected Nancy

---

[134]*Id.*; See the Agency's Foreign Service Vetaran's Preference

[135]*Id.*

[136]Doc. 36 at 92-93

[137]Doc. 31 at 31.

Case No. 1:05-CV-1414
Gwin, J.

Barnett to fill the position.  The Defendant Peace Corps says that the interview panel found Lane unimpressive,[138] and that Barnett was better qualified.[139]  Again, Lane does not attempt to rebut the Defendant's explanation.  Instead, Lane relies upon the fact that  Connelly called the Peace Corps General Counsel to ask advise on whether to interview Lane.

Lane argues that the call shows that Connelly sought to discriminate against him because of his gender.  But that she called for advice regarding dealing with Lane (who had already filed a large number of discrimination claims) supports a finding that Connelly knew of Lane's protected activity.  But without more, the call does not establish that Connelly's non-discriminatory explanation is pretextual.  Where no evidence of discriminatory intent exists, summary judgment is proper.

**B. Retaliation**

In Count One, Lane alleges that  beginning in 2002, when he wrote to then-Director Vasquez complaining about discrimination, the Peace Corps retaliated against him by ensuring that he would never be hired.[140]  Following the 2002 letter, Lane contacted the Peace Corps to speak with EEO counselors, and subsequently filed a formal EEOC complaint in 2003.[141]  Lane says that in response to these activities, Deputy Director Pearson stated that Lane would never be hired.[142]  Lane indeed applied for numerous positions with the Peace Corps and was never hired.  The Peace Corps denies

---

[138] *Id.* at 34-35.  Panelists testified that Lane's application was written in bullet-points, rather than in narrative form. Further, he rambled through the interview, not directly responding to the questions aksed. Doc. 31 at 35-36.

[139] Doc. 40 at 29.

[140] Doc. 36 at 26.

[141] Doc. 36 at 25.

[142] Doc. 36 at 9.

Case No. 1:05-CV-1414
Gwin, J.

retaliating against Lane, and asserts legitimate, non-discriminatory reasons for each of Lane's non-selections.   For the following reasons, the Court finds that Lane fails to present evidence of retaliatory intent with regards to all but two of his non-selections.

　　*1. PC3-020, PC3-006, PC3-007, and PC3-077*

　　On November 5, 2002, Lane wrote to then-Director Vasquez alleging discrimination in the hiring process of two previous non-selections. He claimed to Vasquez that he had not been hired because he is "a Republican, white, male, of Southern Anglo-Saxon ancestry, and older than the typical Peace Corps employee."[143]   Two days later, and on November 7, 2002, Lane applied for positions PC3-020, PC3-006, and PC3-007.  On February 12, 2003, Lane also applied for PC3-077. Lane says that he was not selected for each of these positions because of HRM's retaliation against him for the letter to Director Vasquez.[144]

　　Lane cannot show a dispute as to retaliatory motive because he never shows that the person who made the employment decisions, Pearson, knew about the letter.  Pearson says that she did not.[145]  Lane contests this assertion, but ultimately offers little more than speculation.  Lane first cites Shirley Everest's deposition as support for his claim that the letter would have been forwarded to Pearson's office.[146]  But Ms. Everest's testimony reveals that she had no personal knowledge of the

---

[143]/Doc. 36-16.

[144]/Doc. 36 at 45.

[145]/Doc. 36-19 at 35.

[146]/*Id.*

Case No. 1:05-CV-1414
Gwin, J.

letter ever being received or forwarded to Pearson.[147]   And, more importantly, Lane offers nothing

more than speculation that Pearson herself knew about the letter or Lane's protected activity at the

time the non-selections were made.[148]

Lane next says that he called the Peace Corps EEO office on March 5, 2003 to get a list of

EEO counselors within the Peace Corps.[149]   He says that Shirley Everest, Director of Peace Corps

EEO office, was friends with Pearson.   With his complaint to the EEO office and with some

friendship between the director of the EEO office and Pearson, Lane speculates that Everest would

have told Pearson about Lane's phone call and protected activity.[150]   But such speculation is not

evidence.   In short, Lane's assertions require one inferential leap too many.   Plaintiffs opposing

summary judgment must present more than "speculations and allegations" to create a genuine issue

of fact.[151]

   *2. PC4-081*

Lane next says that he was not hired as Classifications and Staffing Chief, advertised as PC4-

081, because of his EEO activity.   Lane interviewed for the position on March 15, 2004, but did not

receive a second-round interview.   As evidence of retaliation, Lane points to a December 22, 2003,

conversation between Peace Corps Deputy Director Pearson and EEO Counselor Rachel Perry.

---

[147] *Id.*

[148] *See Breeden*, 532 U.S. at 273 (to establish causation, employer *must have knowledge* of plaintiff's protected
activity and an adverse employment actions must have been taken very closely following the protected activity).

[149] Doc. 36 at 46

[150] Doc. 36-17 at 3.

[151] *Brown*, 199 F.3d at 458.

Case No. 1:05-CV-1414
Gwin, J.

According to Perry, during the conversation, Pearson said, "we are running out of reasons not to hire [Lane]." Perry responded, "we're spending so much time and energy and resources coming up with reasons not to hire this man because he filed an EEO complaint. If he's qualified, why don't you just hire him?" Pearson then responded, "no that will never happen. He's never going to work here."[152] Perry also states in her affidavit that on another occasion, Pearson told her that HRM Director Janet Brown said that Lane had filed an EEO complaint and was not to be hired.[153] Lane says that Pearson's statements are direct evidence of retaliation.

Against this evidence, the Peace Corps says that Pearson was not the decision maker and that other officials—not Pearson—eliminated Lane from consideration for the position. Moreover, the Peace Corps argues that there is no evidence that Pearson influenced the interview panel.[154] The Defendant also says that these were mere stray remarks, and cites *Beeck v. Federal Express Corp.* for the proposition that "stray remarks, even by decision makers, unrelated to the hiring process are not direct evidence."[155]

Pearson's comment that Lane filed an EEO complaint and would never be hired is direct evidence of retaliation. If Lane could establish that Pearson participated in the challenged

---

[152]Doc. 36-21 at 70.

[153]Doc. 36-43 at 17. Perry does not offer a date for when Brown's alleged comment was made. Further, she stated in her deposition that she believes it may have been Phnesha Barnes, not Pearson, who told her about the Janet Brown comment. Barnes was not hired until March 21, 2003. Lane filed his official EEO complaint on July 3, 2003. Brown's statements must have occurred after the latter date.

[154]Doc. 31 at 44.

[155]81 F. Supp. 2d 48, 53-54 (D.D.C. 1992).

Case No. 1:05-CV-1414
Gwin, J.

employment decisions, he would show direct evidence of retaliation.[156]   Though not directly in reference to Lane's specific non-selection for PC4-081, retaliatory "statements in discussions about the agency's hiring practices certainly create a nexus between those statements and a later hiring decision."[157]

While the Peace Corps says that Pearson was not the deciding official that eliminated Lane from contention, "[i]t does not matter that [Pearson] [was] not the deciding official in Plaintiff's non-selection, because [she] certainly had ample opportunity to influence the decider's opinion."[158] Indeed, Pearson testified in her deposition that she discussed the selection process for PC4-081 with Sylvia Lavelle, who sat on the interview panel that eliminated Lane from consideration.[159]

For these same reasons, Pearson's statements are distinguishable from the those at issue in *Beeck*. *Beeck* involved discriminatory statements made by co-workers not in reference to any employment decision.[160]  Unlike *Beeck,* Pearson's comment could allow a jury to infer that Pearson sought to influence decision-makers not to hire Lane because of his EEO activity.  Accordingly, Lane has raised a genuine issue of material fact that warrants a jury determination.

*3. PC5-147*

---

[156]*See Vance v. Chao*, 496 F. Supp. 2d 182, 186 (D.D.C. 2007); *Kalekiristos,* 958 F. Supp. at 665.

[157]*Pederson v. Mills*, 636 F. Supp. 2d 78, 85 (D.D.C. 2009) (denying summary judgment where plaintiff presented evidence that the interviewers for a position expressed concerns at various times about the old age of many of the employees in the particular department being recruited for).

[158]*Id.* (citing *Griffin v. Wash. Convention Ctr.*, 142 F.3d 1308, 1310 (D.C. Cir. 1998)).

[159]Doc. 36-19 at 32:207.

[160]*Beeck*, 81 F. Supp. 2d at 53

Case No. 1:05-CV-1414
Gwin, J.

Lane says that this retaliation continued in 2005 when he applied for Chief of Classification and Staffing, listed as PC5-147. On May 2, 2005, Lane interviewed for the position—almost two years after Lane's last EEO activity . In April, 2005, the Peace Corps selected Kathleen Harris.[161]

As to this claim, the Defendant again responds that Pearson was not the selecting official, so her comments are irrelevant. Further, the Defendant says that Pearson's comments are not direct evidence because a jury would have to infer that her comments still applied to this much later non-selection. Lane responds that Pearson was the selecting official and that "never" means never.

The temporal distance between Lane's non-selection and his protected activity is too long to raise a presumption of retaliation based only on temporal proximity.[162] Yet Pearson's comments from 2003 are still relevant to this non-selection: A hiring decision eighteen months following the statement is well within the time frame delimited by "never." And Pearson testified that she discussed Lane with Gil Smith,[163] who sat on the panel that eliminated Lane from consideration for PC5-147.[164] From this, a jury could infer that Pearson sought to influence Smith not to select Lane.[165] Pearson's statement, in conjunction with Lane's repeated non-selection for positions that he was at least minimally qualified, is sufficient evidence for a reasonable jury to find sufficient

---

[161] Doc. 31 at 29.

[162] See *Breeden*, 532 U.S. at 273 (Temporal distance between protected activity and adverse employment action generally must be less than three months.).

[163] Doc. 31-19 at 32:208

[164] Doc. 31 at 29.

[165] See *Griffin*, 142 F.3d at 1310 (holding that evidence of a subordinate's bias is relevant where the ultimate decision-maker is not insulated from the subordinate's influence).

Case No. 1:05-CV-1414
Gwin, J.

nexus between the comments and Lane's non-selection.[166] Therefore, Lane has presented sufficient

evidence for a reasonable jury to discredit Defendant's proffered explanation as pretext.

### 4. DPC7-A0051

Finally, Lane says that the Peace Corps retaliated when it cancelled the Chief of

Classification and Staffing position listed as DPC7-A0051.  In March, 2007 Lane says that he

applied for the position.[167]   On July 16, 2007, Lane says that he filed an EEOC complaint

specifically regarding this position.[168]  On July 22, 2007, Connelly took over for Pearson as Deputy

Director of HRM, the decision-maker for DPC7-A0051.[169]  On September 24, 2007 Lane applied

for DPC7-A0187.[170]   Upon seeing Lane's application for that position, Connelly called agency

counsel to ask if she should interview him.[171]  Then on February 8, 2008, without interviewing Lane,

Connelly cancelled DPC7-A0051.[172]   The position was subsequently re-advertised as DPC8-

A0051.[173]  Lane insists that the cancellation of DPC7-A0051 was motivated by retaliation, and cites

---

[166]Lane also says that Pearson was summoned at the conclusion of Lane's interview to discuss the selection. While supported only by his own testimony, a jury could credit Lane's testimony as credible and infer that Pearson influenced the hiring decision with her bias against Lane. Doc. 36 at 92.

[167]Doc. 36 at 92.  Lane does not cite evidence aside from his own deposition that he did so.

[168]*Id.* at 95. Lane does not cite evidence aside from his own deposition that he did so.

[169]Doc. 36-155 at 3.

[170]Doc. 31 at 34.

[171]Doc. 36 at 94.

[172]Doc. 36 at 239.

[173]Doc. 31 at 31.

Case No. 1:05-CV-1414
Gwin, J.

Connelly's call to Peace Corps counsel as the proof.[174]  Connelly says that she did not know that

Lane had applied for DPC7-A0051 when she cancelled the position.[175]

As an initial matter, Pearson's statements about Lane are not relevant to this non-selection,

as she retired several months before the position was cancelled.  Second, while Lane suggests that

Connelly knew Lane was an applicant for this position and cancelled the position for this reason, he

does not explain why she did not cancel the position until almost seven months after the filing of his

most recent EEO complaint.  This temporal distance is too great to infer causal connection between

the protected activity and Lane's non-selection. And Lane presents no other direct evidence of

retaliation for this non-selection, Lane fails to present sufficient evidence from which a reasonable

jury could find the Defendant's legitimate, non-discriminatory reason unworthy of belief.

In sum, Lane fails to raise a genuine issue of material fact for all the non-selections, except

PC4-081 and PC5-147.  Lane presents sufficient evidence for a jury to infer that Lane was denied

selection for PC4-081 and PC5-147 because of retaliation. Accordingly, summary judgment  for

PC4-081 and PC5-147 is inappropriate.

### IV. Motion for Default Judgment, or Adverse Inference and Attorneys' Fees

Lane separately moves for default judgment, or in the alternative, an adverse inference and

attorneys' fees based on the Defendant's alleged spoliation of evidence.  Lane says that documents

pertaining to his non-selections have either been destroyed or were never produced during discovery.

---

[174]/*Id.* at 96-97.

[175]/Doc. 36-155 at 65.

Case No. 1:05-CV-1414
Gwin, J.

He says that he first requested documents pertaining to his non-selections in April, 2003.[176]  He says that he continued to request documents throughout the course of his EEOC litigation and subsequent civil litigation.[177]  For its part, the Defendant says that he has produced at least 13,733 documents during the course of discovery.[178]  Nonetheless, Lane says that Defendant failed to preserve, or intentionally destroyed, key documents that it was obligated to preserve.

A party to litigation has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant . . . if it knew the destruction or alteration of those documents would prejudice [its opponent]."[179]  Courts have authority to punish parties who destroy evidence by, *inter alia*, instructing jurors to draw an adverse inference from the party's conduct.[180]

Lane says that Defendant routinely destroyed relevant documents and failed to produce other documents upon request during discovery.[181]  He says that for each non-selection, Defendant was obligated to preserve documents related to the selection process.  Because he was never provided with all the requested documents, Lane says that he is prejudiced from proving his claims.[182]  As a result, Lane says that default judgment is appropriate, or, in the alternative, that the court should rule

---

[176]Doc. 37 at 3.

[177]*Id.* at 5-6.

[178]Doc. 41 at 1.

[179]*Shepherd v. American Broad. Cos, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

[180]*See Id.*

[181]Doc. 37 at 1

[182]*Id.*

Case No. 1:05-CV-1414
Gwin, J.

that an adverse inference can be drawn that the documents would have revealed discriminatory and retaliatory animus.[183] Lane also seeks attorneys' fees and costs.[184] The Defendant says that it was under no duty to preserve the documents Lane says were destroyed. Further, the Defendant says that Lane has not demonstrated how he was prejudiced or harmed by the missing documents.[185]

**A. Default Judgment**

Lane first says that the Defendant's actions warrant default judgment. "A district court may use its inherent power to enter a default judgment only if it finds, first, by clear and convincing evidence . . . .that the abusive behavior occurred; and second, that a lesser sanction would not sufficiently punish and deter the abusive conduct while allowing a full and fair trial on the merits."[186] Entry of default judgment as a sanction for destruction of records is a "drastic sanction that is merited only when less onerous methods . . . will be ineffective or obviously futile."[187]

First, Lane presents no clear and convincing evidence that abusive behavior occurred. Lane says that Defendant purposefully destroyed documents related to his non-selections that it was obligated to keep.[188] While Lane's allegations are supported by some evidence, including alleged statements by HRM officials that they shredded documents to avoid having documents

---

[183]/Doc. 37 at 26.

[184]/*Id.*

[185]/Doc. 41 at 3

[186]/*Shepherd*, 62 F.3d at 1472.

[187]/*Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998) (internal quotation marks omitted).

[188]/Doc. 37 at 4.

-34-

Case No. 1:05-CV-1414
Gwin, J.

subpoenaed[189], the Court finds that the evidence does not meet the clear and convincing standard.

Second, Lane fails to show why a lesser sanction, such as an adverse inference, would not

sufficiently punish and deter Defendant's behavior while allowing a full trial on the merits.

Accordingly, the Court finds that default judgment would be an abuse of its inherent powers to

sanctions.

## B. Adverse Inference

Second, Lane says that Defendant's actions warrant an adverse inference. To qualify for such

an instruction,

> the requesting party must show that (1) the party having control over the evidence
> had an obligation to preserve it when it was destroyed or altered; (2) the destruction
> or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was
> destroyed or altered was "relevant" to the claims or defenses of the party that sought
> the discovery of the spoliated evidence, to the extent that a reasonable factfinder
> could conclude that the lost evidence would have supported the claims or defense of
> the party that sought it.[190]

And, critically, Lane must so show that "a preponderance of the evidence establishes that a party's

misconduct has tainted the evidentiary resolution of the issue."[191]

Lane says that the Defendant's conduct prejudiced four actionable claims by the destruction

of documents. He says that the Peace Corps destroyed documents in violation of its own document

retention policy, which obligated the Peace Corps to preserve selection process documents for two

---

[189]/Doc. 36-10 at ¶26.

[190]/*Bolger v. District of Columbia*, 608 F. Supp. 2d 10, 30 (D.D.C. 2009).

[191]/*Shepherd,* 62 F.3d at 1472.

Case No. 1:05-CV-1414
Gwin, J.

years after a selection is made.[192]  Lane further points to ten instances of spoliation in "evidentiary

recruitment actions"—non-actionable claims before the Court.  Lane says that his treatment in these

other ten situations shows discriminatory animus—animus from which a jury could infer

discrimination in his remaining eight claims.  The Court addresses Lane's actionable claims.

### 1. PC3-006

Lane says that the Defendant never produced the crediting plan for PC3-006.  Lane says that

this evidence was relevant to show that he was qualified under the elements of the plan and should

have been interviewed and hired. The Defendant says that the crediting plan has been on file and

available from the Defendant's Office of American Diversity Programs since 2003.[193]  Lane does

not prove the contrary by preponderance of the evidence.  Accordingly, Lane fails to present

evidence that any documents were destroyed. Therefore, Lane fails to satisfy the first element

necessary to grant an adverse inference instruction.

### 2. PC3-007

Lane says the Defendant failed to produce the real crediting plan and score sheets of the

applicants for PC3-007.  He says the crediting plan that was produced only contained three KSAs,

while the vacancy announcement contained eight. Lane says that crediting plans are to contain each

element listed in the vacancy announcement.  Lane thus disputes the authenticity of the crediting plan

that the defendant produced.  "To satisfy the requirement of authenticating or identifying an item of

---

[192]/Doc. 37 at 5.; Peace Corps Manual 620, Section 7.5.

[193]/Doc. 41 at 4.

-36-

Case No. 1:05-CV-1414
Gwin, J.

evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[194]  Here, personnel specialist Monica Jezek says that crediting plans are not required to contain every element listed in the vacancy announcement, only the desired elements are necessary.[195]  The crediting plan for PC3-007 contained each of the three desired elements from the vacancy announcement.[196]  This evidence is sufficient to authenticate the document, and thus imply that no evidence was destroyed.  While Lane is free to impeach this assertion at trial, it does not warrant an inference that evidence was destroyed, and, thus Lane cannot satisfy the first condition to warrant an adverse inference.[197]

### 3.  PC3-077

Lane next says that the Defendant destroyed records related to the cancellation of PC3-077. He says that he sought candidate applications, results and records of the interview process, and records of who had authority to cancel the listing.[198]  Lane says that these documents could show that other less-qualified candidates were interviewed or offered the position before cancellation, but that the  Defendant then cancelled the position rather than hiring the more-qualified Lane.

The Defendant says that it cancelled the position to afford the newly-appointed supervisor time to select who would be working beneath her.  Assuming *arguendo* that an adverse inference is

---

[194]Fed. R. Evid. 901.

[195]Doc. 40-1 at 2:6

[196]*Id.*

[197]*Mahaffey v. Mariott Int'l, Inc.*, 898 F. Supp. 2d. 54, 63 (D.D.C. 2012).

[198]Doc. 37 at 8.

Case No. 1:05-CV-1414
Gwin, J.

granted, the inference is not strong enough to rebut the Defendant's legitimate, non-discriminatory reason for cancelling the position. As discussed earlier, Lane presents no evidence of discriminatory or retaliatory intent with regards to PC3-077 as to rebut the proffered explanation. Thus, an adverse inference would not alter the Court's prior determinations.[199/] Accordingly, the determination that summary judgment is appropriate on both counts does not change, and the Defendant's purported misconduct cannot be said to taint the resolution of an evidentiary issue.

### 4. DPC7-A0051

Lane also says that he requested, but never received, documents related to the application and interview process for DPC7-A0051 before it was cancelled.[200/] Absent these documents, he says, he cannot "directly show[] that he was singularly the best qualified candidate, or one of a small such group."[201/] Responding to Lane's request for an adverse inference regarding DPC7-A0051, the Defendant says that it cancelled this position because the military veteran preference would have required hiring a veteran who was not qualified.

Lane's argument that the documents are relevant to his claims hinges on the presumption that Defendant was obligated to consider other candidates who also applied for DPC7-A0051 once HRM decided not to hire the veteran. But Lane presents no evidence to support the argument that

---

[199/] *See Smith v. Napolitano*, 626 F. Supp. 2d 81(D.D.C. 2009) (holding that "even if the court were to draw the adverse inference suggested by the plaintiff, it would not alter the court's determination absent some evidence of discriminatory intent); *see also von Muhlenbrock v. Billington*, 579 F. Supp. 2d 39, 45 (D.D.C. 2008) (observing that "destruction of evidence, standing alone, is [not] enough to allow a party who has produced no evidence-or utterly inadequate evidence-in support of a given claim to survive summary judgment on that claim").

[200/] Doc. 37 at 17.

[201/] *Id.*

Case No. 1:05-CV-1414
Gwin, J.

Defendant needed to go back to other applicants after deciding that the unqualified veteran would not be hired. And documents showing Lane's superior qualifications over other applicants could not overcome this fact. As such, an adverse inference here is not strong enough to rebut the Defendant's legitimate, nondiscriminatory reason for cancelling the position, and, again the Defendant's purported misconduct cannot be said to taint the resolution of an evidentiary issue.

**B. Evidentiary Recruitment Actions**

Lane also says that the Defendant destroyed evidence related to ten non-hire scenarios that this Court has determined are not actionable. Lane cannot recover on these claims directly because they fall outside the applicable statute of limitations. Nonetheless, Title VII permits "an employee [to use] the prior acts as background evidence in support of a timely claim" so long as the new claim is based on "independently discriminatory [acts] and charges addressing those acts are themselves timely filed."[202]  In other words, the older claims may show a continuing pattern or practice.

Lane asks the Court to consider the factual circumstances of his non-actionable claims as providing evidence of discrimination and retaliation for his actionable claims. He says that the Defendant admittedly destroyed documents it was obligated to preserve.

At this time, this Court cannot determine whether any of this document loss or destruction is relevant to the claims that remain for trial. Instead, the Court will consider whether such evidence is admissible at the time of trial. There is no independent basis on which to grant damages for spoliation in non-actionable claims.

_____

[202]/ *Ellision v. Napolitano*, 901 F. Supp. 2d 118, 128 (D.D.C. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Case No. 1:05-CV-1414
Gwin, J.

**C. Attorneys' Fees**

Finally, Lane asks for attorneys' fees associated with the preparation of his motion for default judgment.  Generally, if a "victim demonstrates that [another party] destroyed discoverable material it knew or should have known was relevant to pending, imminent, or reasonably foreseeable litigation, courts award the victim its attorney's fees and costs on the sanctions motion."[203/] Attorneys' fees are punitive sanctions.[204/]   Punitive sanctions require clear and convincing evidence.[205/]  Furthermore, generally, where issue-related sanctions, such as an adverse inference, are unwarranted, it follows that punitive sanctions should not be issued.[206/]

The Court also denies Lane's motion for attorneys' fees.  First, as explained earlier, the Court denied Lane an adverse inference instruction on PC3-006 and PC3-007.  Accordingly, punitive sanctions are inappropriate.  Second, as to PC3-077 and DPC7-A0051, Lane does not present clear and convincing evidence that the documents he seeks were either relevant to his claims, or, for that matter, that they existed.  Without clear and convincing evidence that other candidates other than Lane interviewed for the positions before they were cancelled, the applications themselves bear no relevance to Lane's claims of discrimination and retaliation.  Accordingly, Lane presents no clear and convincing evidence of sanctionable conduct in PC3-077 and DPC7-A0051 to warrant punitive

---

[203/] *Zi Chen v. Dist. of Columbia*, 839 F. Supp. 2d 7, 17 (D.D.C. 2011).

[204/] *Shepherd*, 62 F.3d at 1477.

[205/] *Id.*

[206/] *Clarke v. Wash. Metro. Area Transit Auth.*, 904 F. Supp. 2d 11, 21 (D.D.C. 2012) (citing *Shepherd*, 62 F.3d at 1477).

Case No. 1:05-CV-1414
Gwin, J.

sanctions.

The Court also declines at this time to grant attorneys' fees based on spoliation of evidence in non-actionable claims before the Court. No court appears to have addressed this issue. If the Court ultimately finds that evidence of non-actionable claims becomes admissible, the Plaintiff may renew his request for fees associated with any non-production or destruction of this evidence.

### V. Conclusion

For the reasons stated, the Court GRANTS the Defendant's motion for summary judgment on Count II; DENIES summary judgment as to PC4-081 and PC5-147 of Count I, and DENIES the Plaintiff's motion for default judgment, or in the alternative, adverse inference and attorneys' fees.

IT IS SO ORDERED.

Dated: July 12, 2013                        s/      *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE